SHARTSIS FRIESE LLP
ERICK C. HOWARD (Bar #214107)
ehoward@sflaw.com
JOSEPH V. MAUCH (Bar #253693)
jmauch@sflaw.com
FELICIA A. DRAPER (Bar #242668)
fdraper@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone:    (415) 421-6500
Facsimile:    (415) 421-2922

Attorneys for Defendants
SIMPSON STRONG-TIE COMPANY, INC. and
SIMPSON MANUFACTURING COMPANY, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CARY W. COOPER, TERRI G. COOPER, FERNANDINA BEACH, LLC, SIMON NGUYEN, & THOAI DOAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIMPSON STRONG-TIE COMPANY, INCORPORATED, a California corporation; SIMPSON MANUFACTURING COMPANY, INCORPORATED, a Delaware corporation; and DOES 1 through 200, inclusive,<br><br>Defendants. | Case No. 3:19-cv-07901-TSH<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:        June 11, 2020<br>Time:       10:00 a.m.<br>Dept.:       Courtroom G<br>Judge:      Hon. Thomas S. Hixson |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

**SHARTSIS FRIESE LLP**
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.   The Parties ............................................................................................... 2

    B.   The Original Complaint ........................................................................... 3

    C.   Simpson's Actual Representations And Warnings Regarding Corrosion ............ 4

    D.   The First Motion To Dismiss .................................................................. 6

    E.   The First Amended Complaint ................................................................ 7

    F.   The Second Motion To Dismiss .............................................................. 7

    G.   The First Rule 11 Letter .......................................................................... 8

    H.   Plaintiffs' Response To The First Rule 11 Letter .................................... 9

    I.   The Second Rule 11 Letter And Plaintiffs' Counsels' Failure To Cure The Violation .................................................................................. 9

III.  LEGAL STANDARD ......................................................................................... 10

IV.   ARGUMENT ...................................................................................................... 11

    A.   Plaintiffs' Allegations Regarding The Corrosion Warnings Lack Evidentiary Support And Appear Designed To Harass And Deceive ................ 12

    B.   Plaintiffs' Allegation That The Products Are Not Integrated In The Structure Of Their Homes Lack Evidentiary Support And Appear Designed To Harass And Deceive ........................................................... 13

    C.   Plaintiffs Assert Causes Of Action That Are Not Warranted By Existing Law ........................................................................................... 14

        1.   The Florida Plaintiffs Continue To Assert Warranty Claims That Are Not Allowed Under California Law ...................................... 15

        2.   Plaintiffs Continue To Assert A Breach of "Implied Warranty Of Fitness" Claim That Is Not Allowed Under California Or Florida Law .......................................................................................... 16

        3.   Plaintiff Fernandina Continues To Assert An Unwarranted Claim Under The CLRA ............................................................... 17

    D.   Plaintiffs' Counsel Should Be Sanctioned For Their Conduct ............... 17

V.    CONCLUSION ................................................................................................... 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL CASES

*Blair v. Mercedes-Benz of N. Am., Inc.*,
  914 F.2d 261 (9th Cir. 1990) ................................................................17

*Bristow v. Lycoming Engines*,
  2007 U.S. Dist. LEXIS 45811 (E.D. Cal. Jun. 14, 2007) ..............................18

*Brown v. Royal Power Mgmt., Inc.*,
  2012 U.S. Dist. LEXIS 12245 (N.D. Cal. Feb. 1, 2012) ..............................19

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ................................................................10

*Cooter & Gell v. Hartymarx Corp.*,
  496 U.S. 384 (1990)................................................................................10

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017) ............................................................................18

*H.P.D. Consolidation, Inc. v. Pina*,
  2017 U.S. Dist. LEXIS 39930 (N.D. Cal. Mar. 20, 2017)............................19

*Judin v. United States*,
  110 F.3d 780 (Fed. Cir. 1997)..................................................................10

*Raylon, LLC v. Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012)................................................................10

*Snyder v. Tamko Bldg. Prods.*,
  2019 U.S. Dist. LEXIS 169378 (E.D. Cal. Sep. 30, 2019)..........................16

*Soares v. Lorono*,
  2014 U.S. Dist. LEXIS 24674 (N.D. Cal. Feb. 25, 2014) ..........................17

### STATE CASES

*Am. Suzuki Motor Corp. v. Super. Ct.*,
  37 Cal. App. 4th 1291 (1995) ..................................................................18

*Atkinson v. Elk Corp.*,
  109 Cal. App. 4th 739 (2003) ..................................................................16

*Cummins, Inc. v. Super. Ct.*,
  36 Cal. 4th 478 (2005) ............................................................................16

- ii -

DEFENDANTS' MPA ISO MOTION FOR SANCTIONS
PURSUANT TO RULE 11 OF THE FRCP

*Moye Farms v. Alico Plant World*,
   2010 Fla. Cir. LEXIS 2373 (Fla. Cir. Ct. May 17, 2010) .......................................................18

**RULES**

FEDERAL RULE OF CIVIL PROCEDURE 11 ............................................................................... passim

**STATE STATUTES**

Cal. Civ. Code § 1761 ..............................................................................................................18

Cal. Civ. Code § 1791 ..............................................................................................................17

Cal. Civ. Code § 1792.1 ...........................................................................................................18

Cal. Civ. Code § 1793.2 ...........................................................................................................16

Cal. Civ. Code § 1794 ..............................................................................................................17

California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) .................4, 6, 8, 18

California Song-Beverly Act (Cal. Civ. Code §§ 1790, *et seq.*).............................................6

California Unfair Competition Law (Cal. Bus. & Prof. §§ 17200, *et seq.*) .....................4, 8

FLA. STAT. § 672.315 .................................................................................................................18

Florida Deceptive and Unfair Trade Practices Act (FLA. STAT. § 501.201, *et seq.*) .................4, 8

**OTHER AUTHORITIES**

FEDERAL RULE OF CIVIL PROCEDURE 11
   advisory committee notes to 1993 amendment....................................................................10

2004 Cal. Legis. Serv. Ch. 331 ................................................................................................16

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- iii -

I.     **INTRODUCTION**

The First Amended Complaint ("FAC") in this action lacks legal and evidentiary support, and Plaintiffs' counsel violated their obligations under Rule 11 of the Federal Rules of Civil Procedure by filing it. Plaintiffs' counsels' conduct is particularly egregious given that the original Complaint in this matter also lacked any evidentiary or legal support, and Simpson attempted to resolve the issue informally with Plaintiffs' without invoking the Rule 11 sanctions procedure. Although Plaintiffs voluntarily withdrew the original Complaint, the FAC contains many of the same demonstrably false assertions and unsupportable statements of the original Complaint, and includes new ones.

The original Complaint alleged that Defendants, who manufacture structural steel building products, misled Plaintiffs by failing to provide any warning that those products might suffer premature corrosion, and, in fact, represented that the products would last the life of a home. Defendants warned Plaintiffs' counsel that they had violated Rule 11 by making such assertions since Defendants provided extensive corrosion warnings, and expressly disclaimed the ability to predict the useful life of the products due to a host of variables outside their control. Defendants also brought a motion to dismiss the original Complaint identifying numerous other deficiencies with the pleading.

Rather than dismiss the action or defend the original Complaint, Plaintiffs filed the FAC. While the FAC acknowledges that Defendants provide corrosion warnings, it contains numerous false and unsupportable factual contentions and legal assertions, including:

(1) Allegations—repeated from the Complaint—that Defendants represent that products will last the life of the home, even though Defendants expressly state they can give no such assurance;

(2) Allegations—repeated from the Complaint—that that Defendants' limited warranty disclaimer fails to mention the warranty of fitness (and is thereby unenforceable), even though the warranty of fitness is expressly disclaimed;

(3) New allegations that repair and/or replacement of the Products will not cause damage to Plaintiffs' homes—in an attempt to avoid the economic loss rule—which allegations lack

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

factual support and contradict other existing allegations that such damage will, in fact, occur; and

(4) Allegations—repeated from the Complaint—that the out-of-state Plaintiffs can assert California-based warranty and statutory claims that well-settled case law makes clear they cannot bring.

All of the above-referenced allegations appear to be solely in service of harassing Defendants, deceiving the Court, and surviving a motion to dismiss, in spite of the fact they are all demonstrably unsupportable. Plaintiffs' counsels' insistence on asserting demonstrably false factual allegations and pursuing unsupportable and unwarranted legal claims mandates issuance of sanctions pursuant to Rule 11. Such sanctions should take the form of reimbursing Defendants their reasonable attorneys' fees in responding to the FAC, including the preparation and filing of this Motion and Defendants' Motion to Dismiss the FAC, and any other sanction the Court believes appropriate to deter future violation of the Plaintiffs' counsels' obligations pursuant to Rule 11.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendants Simpson Strong-Tie Company Inc. and Simpson Manufacturing Co., Inc. (jointly "Simpson" or "Defendants") manufacture, advertise, sell, and distribute structural steel building products throughout the United States, including various products installed in the foundations, framing, and doors of homes and other buildings in order to help secure the structure in the event of a high-wind event or earthquake. FAC ¶ 1. Simpson has its principal place of business in Pleasanton, California. *Id*. ¶¶ 10-11.

Plaintiffs Cary W. Cooper and Terri G. Cooper (the "Coopers") are Georgia residents who own a home in Port St. Joe, Florida. *Id*. ¶ 7. Plaintiff Fernandina Beach, LLC ("Fernandina" and, collectively with the Coopers, the "Florida Plaintiffs") is a Florida limited liability company that owns a home located in Fernandina Beach, Florida. *Id*. ¶ 8. Plaintiffs Simon Nguyen ("Nguyen") and Thoai Doan ("Doan") (collectively, the "California Plaintiffs") are California residents who own a home in San Jacinto, California. *Id*. ¶ 20.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.   <u>The Original Complaint</u>

On December 2, 2019, the Florida Plaintiffs—the Coopers and Fernandina—filed a Complaint against Simpson on behalf of a nationwide class of individuals who own residential structures constructed with Simpson's "Product." *See generally* ECF No. 1 (Complaint). The Florida Plaintiffs alleged that, when they bought their homes, the homes already contained the "Products" and that the Products are suffering from "premature corrosion." *Id*. ¶ 14. The Coopers further allege that the home suffered severe damage in a hurricane that allegedly struck in 2019, and that such damage was due to Simpson's "Product" (discussed below) suffering "premature corrosion."[1] *Id.*

The central allegation of the Complaint, repeated throughout, was that Simpson never warned that "the Product is subject to premature corrosion, rusting, failure, deterioration, and disintegration (the 'Defect')." *Id*. ¶ 30. Specifically, the Complaint alleged that Simpson failed in its duty to "disclose facts concerning the inability of the Product to withstand environmental factors that cause premature corrosion . . . ." *Id.* ¶ 123. The Complaint also asserted that

> Defendants' Product description did not limit the expected useful life of the product. The Product was described in such a way that a reasonable consumer would expect the Product to last the entire life of a home and that the Product was capable of resisting corrosion and protecting against strong winds and seismic activity for the entire life of the home.

*Id*. ¶ 92 (footnote omitted). Likewise, the Complaint alleged, based only on speculative "information and belief" allegations, or unsupported conclusory allegations, that Simpson knowingly misleads the public as to the Product's performance capabilities:

> Plaintiffs are informed and believe that Defendants consistently have represented, and continue to represent, that the Product is durable, good quality, and will secure and stabilize structures, without disclosing the Defect. These representations were published in product catalogs and manuals, as well as on the Defendants' website, and foreseeably repeated, as Defendants intended, by developers, builders, and others involved in the development, building and sale of homes. Defendants made the published representations and failed to disclose the

---

[1] The only reported hurricane to hit the Florida Gulf Coast in 2019 where Port St. Joe is located was in July, prior to when the Coopers allege they purchased their home in August. *See* ECF No. 18 (Request for Judicial Notice), Ex. G. Simpson raised this issue in its first Motion to Dismiss, discussed below, but, like most of the issues with the Complaint, Plaintiffs failed to address it.

DEFENDANTS' MPA ISO MOTION FOR SANCTIONS
PURSUANT TO RULE 11 OF THE FRCP

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

> Defect, knowing and intending that the representations and omission would be repeated to third parties, including consumers who purchased the structures.

*Id*. ¶ 35.

> Simpson knew that the Product would prematurely corrode. Simpson never adequately warned consumers that the Product would prematurely corrode, weaken, and fail when installed in the foundation, framing, and doors of homes.

*Id*. ¶ 37.

Based on the foregoing allegations of an absence of corrosion warnings, the Florida Plaintiffs asserted (1) violation of California's Consumers Legal Remedies Act ("CLRA") (*id*. ¶¶ 58-63); (2) violation of California's Unfair Competition Law, section 17200 of the California Business and Professions Code ("UCL"), based on "unlawful business practice" (*id*. ¶¶ 64-68); (3) violation of the UCL based on "unfair business practice" (*id*. ¶¶ 69-74); (4) violation of Florida's Deceptive and Unfair Trade Practices Act ("DUTPA") (*id*. ¶¶ 75-87); (5) breach of express warranty (*id*. ¶¶ 88-95); (6) breach of implied warranty of fitness (*id*. ¶¶ 96-103); (7) breach of implied warranty of merchantability (*id*. ¶¶ 104-111); (8) negligence (*id*. ¶¶ 112-120); and (9) fraud (*id*. ¶¶ 121-127).

### C.    Simpson's Actual Representations And Warnings Regarding Corrosion

Contrary to Plaintiffs' allegations, the very Simpson literature relied upon and incorporated by reference into the Complaint dispositively contradicts the accusation that Simpson failed to "disclose facts concerning the inability of the Product to withstand environmental factors that cause premature corrosion."

Simpson's High Wind-Resistant Construction Application Guide (the "Wind-Resistance Guide"), cited repeatedly in the Complaint (*see* ECF No. 1 ¶¶ 24, 25, 30, 55, 92), contains an entire section entitled "Corrosion Information," spanning four full pages, discussing in detail issues relating to corrosion of the Product. *See* ECF No. 18, Ex. A at 9-12. Among numerous other recommendations and warnings, the Wind-Resistance Guide provides the following, under the section entitled "Understanding the Corrosion Issue":

> <u>Many environments and materials can cause corrosion</u>, including ocean salt air, fire retardants, fumes, fertilizers, preservative-treated wood, de-icing salts, dissimilar metals and more. <u>Metal connectors, fasteners and anchors could</u>

- 4 -

corrode and lose load-carrying capacity when installed in corrosive environments or when installed in contact with corrosive materials.

The many variables present in a building environment make it impossible to accurately predict if, or when, corrosion will begin or reach a critical level. This relative uncertainty makes it crucial that specifiers and users are knowledgeable of the potential risks and select a product suitable for the intended use. It is also prudent that regular maintenance and periodic inspections are performed, especially for outdoor applications.

It is common to see some corrosion in outdoor applications. Even stainless steel can corrode. The presence of some corrosion does not mean that load capacity has been affected or that failure is imminent. If significant corrosion is apparent or suspected, then the framing members, fasteners and connectors should be inspected by a qualified engineer or qualified inspector. Replacement of affected components may be appropriate.

*Id.* at 11 (emphasis added). The Wind-Resistance Guide also explains in detail how different variables—including the degree of moisture in the environment, the type of wood being used, and the construction techniques employed—may affect the rate of corrosion, as well as what types of products and product coatings should be used in different contexts to mitigate the effects of corrosion depending on these variables. *See, e.g.*, *id.* at 10 ("Corrosion Resistance Recommendations"), 12 ("Coatings Available"). For example, Simpson warns that "[o]utdoor environments are generally more corrosive to steel either because the moisture exposure is elevated (greater than 19%) and/or the treatment chemical retention level is higher than for interior service." *Id.* at 9. Simpson also warns that

[d]ue to the many variables involved, Simpson Strong-Tie cannot provide estimates of service life of connectors and fasteners. We suggest that all users and specifiers obtain recommendations on corrosion from the treated wood supplier or for the type of wood used. As long as Simpson Strong-Tie recommendations are followed, Simpson Strong-Tie stands behind its product performance and our standard warranty applies.

*Id.* (emphasis added) (citation omitted).

Plaintiffs also cite to and rely on Simpson's website as of August 5, 2001 (the "Website"), which also provides numerous corrosion-related warnings:

Connectors are steel and will corrode and lose load-carrying capacity if exposed to ocean salt air, corrosive fire-retardant chemicals, fertilizers, or other substances that adversely affect steel.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Simpson Strong-Tie® offers two additional coating options and stainless steel products to give you special corrosion-resistant NO-EQUAL quality. <u>In corrosive environments, especially for connectors that are not exposed to rain or periodic washing, deterioration will occur at a faster rate</u>. The service life of galvanized connectors in a temperate marine environment can be greatly improved by homeowner maintenance.

Fasteners of comparable material should be used to install the product. Contact your Simpson representative for product availability, ordering information and lead times.

ECF No. 18, Ex. B at 27 (emphasis added). (Simpson's disclosures regarding corrosion in the Wind-Resistance Guide and the Website are collectively referred to as the "Corrosion Warnings."). The Complaint did not acknowledge the existence of <u>any</u> of these warnings.

### D.   <u>The First Motion To Dismiss</u>

On February 4, 2020, Simpson filed a motion to dismiss the Complaint (the "First Motion"), asserting the following reasons, among others, why the Florida Plaintiffs' claims should be dismissed. ECF No. 17 (Memorandum of Points and Authorities in Support of First Motion).

First, Simpson moved to dismiss all claims in the Complaint on the ground that the claims lacked plausibility. *Id*. at 8-12. The claims were based on the premise that Simpson failed to provide corrosion-related warnings, but that assertion is directly contradicted by the Corrosion Warnings. *Id*. Second, Simpson argued that Fernandina lacked standing to pursue a CLRA violation claim because, as a limited liability company, it is not a "consumer." *Id*. at 22-23. Third, Simpson argued several grounds on which the Florida Plaintiffs' breach of express and implied warranty claims should be dismissed. *Id*. at 14-19. The claims failed because the Product is not a "consumer good" under California's Song-Beverly Act (Cal. Civ. Code §§ 1790, *et seq*.) (hereinafter, "SBA") (given that it is "so affixed to real property as to become a part thereof"), because the SBA applies only to goods sold in California (and the Complaint did not allege that the Products were purchased there), and, like Fernandina's CLRA violation claim, Fernandina's breach of warranty claims failed because it is a limited liability company and thus is not a "buyer" under the SBA. *Id*. at 15-18. Fourth, Simpson argued the Florida Plaintiffs' breach of implied warranty of fitness claim should be dismissed because they did not allege any particular

- 6 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1   purpose for the Products beyond the ordinary and customary purpose of securing wood-framed

2   structures in case of seismic and high-wind events. *Id*. at 18-19. Finally, Simpson proffered that

3   Florida's Economic Loss Rule barred the Florida Plaintiffs' tort claims because they had not

4   alleged the Product damaged "other property." *Id*. at 23-24.

5           **E.      The First Amended Complaint**

6           On February 25, 2020, Plaintiffs filed the FAC. ECF No. 28. The FAC contains all the

7   same flaws as the original complaint, and, in fact, has even less legal basis.[2]

8           Although the FAC finally acknowledges the existence of Simpson's Corrosion Warnings,

9   and incorporates them by reference by virtue of Plaintiffs' continued reliance on the Website and

10  Wind-Resistance Guide, Plaintiffs do not quote from, explain, or summarize the Corrosion

11  Warnings. *E.g.*, *id*. ¶¶ 2, 39-40. Instead, the FAC alleges that the Corrosion Warnings fail to

12  warn that Simpson's products may corrode even if selected and installed in accordance with

13  those warnings. *Id*. The FAC also alleges, as the Complaint did before it, the following regarding

14  Simpson's representations regarding the Products:

15          Defendants' Product description did not limit the expected useful life of the
        product. The Product was described in such a way that a reasonable consumer
16          would expect the Product to last the entire life of a home and that the Product was
        capable of resisting corrosion and protecting against strong winds and seismic
17          activity for the entire life of the home.

18  *Id*. ¶ 106 (footnote omitted).

19          The FAC also newly—and falsely—alleges that in 2017 Simpson's Senior Territory

20  Manager for Hawaii testified that "while certain home foundations should last 50 years, the

21  Product did not appear to be performing as it was designed." *Id*. ¶ 49. Other amendments in the

22  FAC likewise do not remedy Plaintiffs' claims. For example, the FAC adds the two California

23  Plaintiffs, removes the allegations that Simpson made affirmative misrepresentations, and alleges

24  that Plaintiffs are third-party beneficiaries of Simpson's warranty.

25          **F.      The Second Motion To Dismiss**

26          Simpson filed a motion to dismiss the FAC (the "Second Motion") on March 17, 2020.

27  ───────────────
28  [2] A redline comparing the FAC to the original Complaint is attached as Exhibit D to the Howard
    Declaration.

Case No.
3:19-cv-07901-TSH                    DEFENDANTS' MPA ISO MOTION FOR SANCTIONS
                                     PURSUANT TO RULE 11 OF THE FRCP

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    ECF No. 35. Simpson had to reassert in its Second Motion virtually all of the same arguments

2    already set forth in its First Motion, because the FAC was fundamentally the same as the

3    Complaint.[3] Relevant here, Simpson argued the following reasons why Plaintiffs' claims should

4    be dismissed.

5         Simpson again moved to dismiss all asserted claims on the ground that the claims lacked

6    plausibility. *Id*. at 9-13. In particular, Simpson argued that Plaintiffs' amendments to their

7    allegations—now admitting that Simpson issued Corrosion Warnings but contending that

8    Simpson failed to warn that the Products could corrode even if properly selected and installed—

9    did not cure the claims' implausibility, because Plaintiffs' allegations are still directly

10   contradicted by Simpson's warnings. *Id*. The Second Motion again argued that Fernandina, as a

11   limited liability company, cannot pursue claims for violation of the CLRA. *Id*. at 21-23. As for

12   Plaintiffs' breach of warranty claims, Simpson reasserted the same myriad arguments in the

13   Second Motion. *Id*. at 14-21. Relevant to this Motion, Simpson also again argued that the

14   Product is not a "consumer good" under the SBA, that the SBA applies only to goods sold in

15   California, and that Fernandina, as a limited liability company, is not a "buyer" under the SBA.

16   *Id*. And finally, Simpson argued the Plaintiffs' breach of implied warranty of fitness claim

17   should be dismissed because they did not allege any particular purpose for the Products and that

18   Florida's Economic Loss Rule barred the Florida Plaintiffs' tort claims. *Id*. at 23-24.

19        **G.    The First Rule 11 Letter**

20        On the same day that Simpson filed the First Motion, February 4, Simpson also sent a

21   letter to Plaintiffs' counsel raising Simpson's "serious concerns over unmistakable violations of

22   Rule 11" (the "First Rule 11 Letter"). Declaration of Erick C. Howard ("Howard Decl."), ¶ 2,

23   Ex. A. In particular, the First Rule 11 Letter advised that the premise of the Complaint that

24   Simpson never warned or warns that "the Product is subject to premature corrosion, rusting,

25   failure, deterioration, and disintegration" and that "Defendants' Product description did not limit

26

27   _____

3    The only argument Simpson omitted from the Second Motion was that Plaintiffs cannot
28   predicate their "unlawful" UCL claim on an alleged violation of Florida's DUTPA. But
     nothing in the FAC made this argument untenable; Simpson omitted it due to page limitations.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
3:19-cv-07901-TSH

DEFENDANTS' MPA ISO MOTION FOR SANCTIONS
PURSUANT TO RULE 11 OF THE FRCP

the expected useful life of the product" did not have any factual basis because Simpson provides extensive warnings regarding the fact that its products may suffer corrosion under a variety of conditions in literature that is cited and incorporated by reference in the Complaint, namely the Website and Wind-Resistance Guide discussed above. *Id.*, Ex. A at 2-4. The First Rule 11 Letter further advised that Simpson had already been forced to spend thousands of dollars in responding to the Complaint; that any effort by Plaintiffs to further this action based on the false premises set forth in the Complaint would only multiply the proceedings unreasonably and vexatiously; that Plaintiffs' counsel and their clients should mitigate the damages inflicted on Simpson by immediately dismissing this case with prejudice; and that refusing to do so would make Plaintiffs' counsel potentially liable for Rule 11 sanctions. *Id.* at 4.

### H.   Plaintiffs' Response To The First Rule 11 Letter

On March 12, 2020, Plaintiffs' counsel sent a letter (the "Response Letter") responding to the First Rule 11 Letter. Howard Decl., ¶ 3, Ex. B. The Response Letter asserted that the First Rule 11 Letter was baseless, that "Plaintiffs' complaint was not filed for an 'improper purpose,'" and that their claims are warranted by existing law and have evidentiary support. *Id.*, Ex. B at 1. The Response Letter then identifies five paragraphs—from the FAC, not the original Complaint—as "some examples of the evidentiary support." *Id.* at 1-2. The cited paragraphs include the allegations that Simpson failed to adequately disclose that the Product would prematurely corrode (FAC ¶¶ 51-53). Howard Decl., ¶ 3, Ex. B at 1-2.

### I.   The Second Rule 11 Letter And Plaintiffs' Counsels' Failure To Cure The Violation

Simpson served a copy of this Motion on Plaintiffs' counsel, along with a cover letter (the "Second Rule 11 Letter") on or about March 19, 2020.  *Id.*, ¶ 4, Ex. C. The Second Rule 11 Letter proposed that Simpson's counsel and Plaintiffs' counsel meet and confer regarding the issues identified in the letter.  Counsel for Plaintiffs responded to the Second Rule 11 Letter on March 31, 2020. *Id.* ¶ 5, Ex. D. Plaintiffs' counsel admitted that an allegation in the FAC concerning a Simpson employee's purported admission that the Product was not performing as designed was in error. *Id.* However, the response did not substantively address any other matters

- 9 -

DEFENDANTS' MPA ISO MOTION FOR SANCTIONS
PURSUANT TO RULE 11 OF THE FRCP

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    raised in the Second Rule 11 Letter.  *Id.*

2          The parties' counsel met and conferred by teleconference on April 3, 2020.  The parties

3    eventually agreed to stipulate to strike from the FAC the above-referenced allegation related to

4    the Simpson employee.  *Id.* ¶ 6. The Court granted the parties' stipulation to strike the allegation

5    on or about April 14, 2020. *See* ECF No. 40.[4]  During the teleconference, counsel for Simpson

6    invited Plaintiffs' counsel to provide more information regarding Plaintiffs' position on the other

7    matters raised in the Second Rule 11 Letter. Howard Decl., ¶ 6.  Plaintiffs' counsel declined to

8    do so.  Rather, Plaintiffs' counsel indicated that Plaintiffs might propose certain amendments to

9    the FAC in connection with their opposition to the Second Motion, but only vaguely described

10   one as relating to Simpson's channels of trade in the marketplace.   Nevertheless, due to the

11   possibility that Plaintiffs might seek to amend the FAC in a manner that would resolve the

12   issues, Simpson waited to file this sanctions motion.  However, Plaintiffs have not withdrawn the

13   objectionable allegations and claims nor provided any proper basis for them. *Id*. Simpson

14   therefore believes it necessary to bring this motion.

15   **III.    LEGAL STANDARD**

16         Rule 11 provides the following, in pertinent part:

17         By presenting to the court a pleading, written motion, or other paper—whether by
           signing, filing, submitting, or later advocating it—an attorney or unrepresented
18         party certifies that to the best of the person's knowledge, information, and belief,
           formed after an inquiry reasonable under the circumstances:
19
           (1) it is not being presented for any improper purpose, such as to harass, cause
20         unnecessary delay, or needlessly increase the cost of litigation;

21         (2) the claims, defenses, and other legal contentions are warranted by existing law
           or by a nonfrivolous argument for extending, modifying, or reversing existing law
22         or for establishing new law;

23         (3) the  factual  contentions  have  evidentiary  support  or,  if  specifically  so

24

25   [4]  The  version  of  this  motion  served  on  Plaintiffs  on  March  19,  2020,  included  argument
         concerning the allegation falsely attributing an admission to Simpson's employee. As that
26       allegation has been stricken from the FAC, Simpson modified this motion to remove such
         argument.  In addition, Simpson amended this Section II to include a discussion of the parties'
27       meet and confer efforts, and updated the amount of reasonable fees and costs incurred and
         sought.  In all other respects, the motion is identical to the version originally served on
28       Plaintiffs.

DEFENDANTS' MPA ISO MOTION FOR SANCTIONS
                        PURSUANT TO RULE 11 OF THE FRCP

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

FED. R. CIV. P. 11(b). Rule 11 further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1).

Rule 11 thus imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact and legally tenable. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *Cooter & Gell v. Hartymarx Corp.*, 496 U.S. 384, 405 (1990). In light of the above certifications, Rule 11 imposes an affirmative duty on lawyers to inquire into the facts and law before filing a pleading. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372 (Fed. Cir. 2012) (citing FED. R. CIV. P. 11 advisory committee notes to 1993 amendment). Rule 11 is aimed at curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay. *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (citing *Cooter & Gell*, 496 U.S. at 397-98).

## IV. __ARGUMENT__

Plaintiffs' counsel's conduct in filing the FAC constitutes a violation of Rule 11, especially since the First Rule 11 Letter and First Motion put them on notice of the fundamental deficiencies of Plaintiffs' claims. Plaintiffs' counsels' conduct is egregious and multiform. In particular, as discussed in detail below, (1) Plaintiffs' allegations regarding the Corrosion Warnings lack evidentiary support and appear designed to harass and deceive; (2) Plaintiffs' allegation that the Products are not integrated into the structure of their homes lacks evidentiary support and appear designed to harass and deceive; and (3) Plaintiffs assert causes of action that are not warranted by existing law. Given this conduct and the numerous opportunities that Plaintiffs have had to cure these issues, including in the FAC and after being served with this motion three weeks ago, Plaintiffs' counsel should be sanctioned and required to pay Simpson's reasonable attorney fees in responding to the FAC.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

A.  **Plaintiffs' Allegations Regarding The Corrosion Warnings Lack Evidentiary Support And Appear Designed To Harass And Deceive**

After the original Complaint baselessly alleged that Simpson provided no warnings regarding premature corrosion, Plaintiffs were forced to acknowledge the existence of the Corrosion Warnings (which, of course, were conspicuous in documents that Plaintiffs' counsel relied on and had in their possession) in the FAC. But Plaintiffs' new allegations are just as lacking in evidentiary support, harassing, and deceptive as Plaintiffs' prior allegations.

The FAC may finally acknowledge that Simpson has "Corrosion Warnings," but Plaintiffs allegations still disregard the content of the Corrosion Warnings. The FAC never quotes or even attempts to describe the content of the "Corrosion Warnings." The clear purpose in omitting any reference to the content of the Corrosion Warnings is to create the false impression that the Corrosion Warnings are limited and deficient and that Simpson suggests that the Products will "last the entire life of a home."

Simpson, of course, never suggests that its Products will last the entire life of a home and the Corrosion Warnings expressly state Simpson can provide no such assurance. Yet the FAC still alleges that

> Defendants' Product description did not limit the expected useful life of the product. The Product was described in such a way that a reasonable consumer would expect the Product to last the entire life of a home and that the Product was capable of resisting corrosion and protecting against strong winds and seismic activity for the entire life of the home.

ECF No. 28 ¶ 106 (footnote omitted). This allegation undeniably has no evidentiary support since Simpson provides corrosion warnings that expressly state

> [d]ue to the many variables involved, Simpson Strong-Tie <u>cannot</u> provide estimates of service life of connectors and fasteners.

*See* ECF No. 18, Ex. A at 9 (emphasis added); section II.C, *supra*. Simpson advised Plaintiffs and their counsel that the above-referenced allegation had no evidentiary support since it was contradicted by the above-referenced warning, in both the First Motion (ECF No. 17 at 9) and the First Rule 11 Letter (Howard Decl., ¶ 2, Ex. A at 2). Rather than dismiss their action or at least remove this false allegation, Plaintiffs' counsel included the exact same allegation in the

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    FAC, with no reference or acknowledgment of Simpson's express, contrary warning. ECF No.

2    28 ¶ 106.

3          The allegation regarding the Products lasting the life of the home is not the only example

4    of demonstrably false allegations carried over from the Complaint to the FAC. The FAC likewise

5    alleges that Defendants' limited warranty disclaimer is unenforceable principally because it

6    "failed to mentioned [sic] the express warranty of fitness." FAC ¶ 123. But Simpson's limited

7    warranty disclaimer expressly states: "This warranty is expressly in lieu of all other warranties,

8    expressed or implied, including warranties of merchantability or <u>fitness for a particular purpose</u>,

9    all such other warranties being hereby expressly excluded." ECF No. 18, Ex. B at 6. Simpson

10   again raised this issue in the First Motion. ECF No. 17 at 14.

11         In both these instances, Plaintiffs and their counsel failed to include the actual language

12   of Simpson's Corrosion Warnings and limited warranty in the FAC. Plaintiffs appear to have

13   purposefully omitted the actual language, which demonstrably contradicts the allegations, in

14   hopes of surviving a motion to dismiss, deceiving the Court, and forcing Simpson to spend time

15   and money addressing these unsupportable allegations during the course of the case. This

16   appears particularly to be the case because Simpson raised these issues in its First Rule 11 Letter

17   and First Motion. Plaintiffs appear determined to vexatiously increase the costs of litigation and

18   harass Simpson.  Rule 11 sanctions are appropriate for such misconduct.

19         **B.**      <u>**Plaintiffs' Allegation That The Products Are Not Integrated In The Structure**</u>
             <u>**Of Their Homes Lack Evidentiary Support And Appear Designed To Harass**</u>
20           <u>**And Deceive**</u>

21         Simpson argued in the First Motion that, under Florida law, the economic loss rule barred

22   Plaintiffs from asserting tort claims to recover losses resulting from the allegedly defective

23   Products other than losses resulting from (1) bodily injury or (2) physical damage to property

24   other than the defective product itself (*i.e.*, damage to "other property"), and that Plaintiffs'

25   homes were not considered "other property" because the Products were integrated with and

26   components of the homes. *See* ECF No. 18 at 23-24.

27         Faced with this undeniable law, Plaintiffs apparently attempted to plead around this issue

28   in the FAC by newly alleging that "[t]he Product is a distinct product and is not so integrated into

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 13 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1   the houses in which it is installed such that repairs necessarily include harm and damage to other

2   products and property including other components of the home, so the economic loss rule does

3   not apply." FAC ¶ 128. But this half-baked attempt fails. It is nonsensical and completely

4   lacking in evidentiary support to contend that the Product is not integrated into the structure of

5   the homes. As Simpson's literature referenced in the Complaint and FAC makes clear, and

6   Plaintiffs themselves contend, the Products are embedded, installed, and affixed to the structure

7   such that they are integral to the homes.[5] ECF No. 18, Ex. A at 16-68. And Plaintiffs admit as

8   much in the FAC when they allege that "repair and replacement of the Product . . . will

9   necessarily involve damage to other products" (*id*. ¶ 43), and that "Defendants are also

10  responsible for the damage resulting from the course of repairs to replace the Product in

11  Plaintiffs' homes" (*id*. ¶ 55). Plaintiffs must know that the FAC contradicts itself, but chose to

12  include diametrically opposed allegations in the apparent hope of avoiding dismissal of several

13  of their claims. Such conduct violates Rule 11.

14       **C.       Plaintiffs Assert Causes Of Action That Are Not Warranted By Existing Law**

15       Plaintiffs assert a number of claims in the FAC that are not warranted by existing law or

16  by a nonfrivolous argument for extending, modifying, or reversing existing law or for

17  establishing new law. Simpson has given the Plaintiffs more than one opportunity to withdraw

18  these claims, including after the filing of the First Motion, but Plaintiffs have failed to do so and

19  instead continue to assert these frivolous claims, requiring Simpson to expend time and money to

20  make these same arguments in its Second Motion.

21       To be clear, the issue here is not Plaintiffs taking the opposing side to Simpson on

22  difficult or complicated questions of law or fact that require the Court to parse allegations or

23  weigh competing precedent. Rather, the instances below represent Plaintiffs taking a position

24  that is wholly unsupported by clear, undisputed, black letter law, without any argument or

25  potential argument to the contrary, or to justify any change or extension of the law.

26

27  _____

    [5] The FAC alleges, for instance that the Product is "installed in various locations . . . including
    the foundation, framing, and doors . . . . When used in the foundation . . . the Product is placed in
28  wet concrete, and, after the concrete cures, bent over a sill plate. The straps are then nailed to the
    structure." ECF No. 1 ¶¶ 24-25; ECF No. 28 ¶¶ 25, 27.

1

2

1.   **The Florida Plaintiffs Continue To Assert Warranty Claims That Are Not Allowed Under California Law**

3

4

After the original Florida Plaintiffs—the Coopers and Fernandina—asserted claims for

5

breach of express and implied warranties against Simpson under California law, Simpson raised

6

three distinct and undisputable legal bases why the Coopers and Fernandina, whose homes are

7

located in Florida, did not meet the statutory requirements of California's SBA to bring those

8

claims. Instead of dropping those claims in the FAC, as they were required to do, Plaintiffs

9

reasserted those claims and added new Plaintiffs—Nguyen and Doan—with a home located in

10

California. While the California Plaintiffs may meet these statutory requirements, the Florida

Plaintiffs' warranty claims are still indisputably unjustified.

11

First, the Coopers and Fernandina may not bring warranty claims under California law

12

because the SBA applies only to goods that are sold in California. *See Cummins, Inc. v. Super.*

13

*Ct.*, 36 Cal. 4th 478, 487 (2005) (holding that the SBA does not apply unless the goods were

14

purchased in California). The Florida Plaintiffs cannot bring warranty claims under the SBA as

15

they purport to do because the Products allegedly in their homes were simply not purchased in

16

California.

17

Second, the Florida Plaintiffs cannot bring warranty claims under the SBA because the

18

Product is not a "consumer good" under the version of the SBA in effect in 1997 and 2004, the

19

years those Plaintiffs allege the Products were purchased and installed in their homes. *Atkinson v.*

20

*Elk Corp.*, 109 Cal. App. 4th 739, 752-757 (2003) (reasoning "consumer goods" under the SBA

21

were items that could be serviced or repaired at the buyer's home or removed and returned to the

22

manufacturer for service or repair, and finding that shingles did not meet this requirement);

23

*Snyder v. Tamko Bldg. Prods.*, 2019 U.S. Dist. LEXIS 169378, at *15 (E.D. Cal. Sep. 30, 2019)

24

(confirming that the version of the SBA operative until 2004 did not encompass "consumer

25

goods" that had "become so affixed to real property [as] to become a part thereof"); *see also* Cal.

26

Civ. Code § 1793.2; 2004 Cal. Legis. Serv. Ch. 331 (A.B. 2723).

27

The Products here are analogous to the shingles in *Snyder* and *Atkinson* because they are

28

"so affixed to real property [as] to become a part thereof." As Plaintiffs allege, and as discussed

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 15 -

above, the Product is "installed in various locations . . . including the foundation, framing, and doors . . . . When used in the foundation . . . the [Product is] placed in wet concrete, and, after the concrete cures, bent over a sill plate. The straps are then nailed to the structure." ECF No. 28 ¶¶ 25, 27; *see also* RJN Ex. A at 19-22. Such installation causes the Product to be affixed to Plaintiffs' homes such that removal would cause further damage. Thus, the Product is not a "consumer good" and the claim undeniably fails.

Third, Plaintiff Fernandina is a limited liability company and, as such, it is not a "buyer" under the SBA. The SBA protects "any buyer of consumer goods," and defines "buyer" as "any <u>individual</u> who buys consumer goods from a <u>person</u> engaged in the business of manufacturing, distributing, or selling consumer goods at retail." Cal. Civ. Code §§ 1791(b), 1794(a) (emphasis added). "Person" (*i.e.*, the seller) is defined as "any <u>individual</u>, partnership, corporation, <u>limited liability company</u>, association, or other legal entity that engages in any of these businesses." Cal. Civ. Code § 1791(b). (emphasis added). The SBA carefully distinguishes between "individuals" and entities, including "limited liability companies." *See Soares v. Lorono*, 2014 U.S. Dist. LEXIS 24674, at *15 (N.D. Cal. Feb. 25, 2014) (dismissing corporation's breach of warranty claims under the SBA for lack of standing, because corporation not an "individual" under the statute); *see also Blair v. Mercedes-Benz of N. Am., Inc.*, 914 F.2d 261 (9th Cir. 1990) (citing Cal. Civ. Code §§ 1780(b), 1794) (the SBA makes "a careful distinction between, on the one hand, consumers and buyers to whom standing is granted because they are individuals, and, on the other hand, other types of persons such as corporations . . . . which are not included in the statutory provisions granting standing to sue.") (internal quotations omitted). Despite the fact that Simpson cited this law in its First Motion, Fernandina continues to improperly assert warranty claims under the SBA in the FAC, which claims must be dismissed without leave to amend.

### 2. Plaintiffs Continue To Assert A Breach of "Implied Warranty Of Fitness" Claim That Is Not Allowed Under California Or Florida Law

Plaintiffs' cause of action for breach of the "implied warranty of fitness" is not warranted under the existing law or otherwise. Simpson explained in the First Motion how, under clear California and Florida law, the "particular purpose" for which a buyer is relying on the seller's

- 16 -

skill or judgment to furnish suitable goods must "differ[] from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 n.2 (1995) (holding there was no implied warranty of fitness for a particular purpose claim because no particular purpose was identified beyond the ordinary use of the product); *see* Cal. Civ. Code § 1792.1; FLA. STAT. § 672.315; *Moye Farms v. Alico Plant World*, 2010 Fla. Cir. LEXIS 2373, at *1-2 (Fla. Cir. Ct. May 17, 2010) (dismissing claim because it alleged no purpose for the pepper seeds at issue other than the ordinary purpose of growing peppers). Contrary to the law, Plaintiffs' cause of action for breach of the implied warranty of fitness in the Complaint failed to plead a particular purpose for the Products beyond the ordinary and customary purpose of securing wood-framed structures in case of seismic and high-wind events. With the opportunity to amend their claim in the FAC, Plaintiffs' ignored this black letter law regarding fitness for a particular purpose and pled their cause of action in the FAC just as they had before. ECF No. 28 ¶¶ 110-117.

### 3. Plaintiff Fernandina Continues To Assert An Unwarranted Claim Under The CLRA

Just as Fernandina's claim under the SBA is undeniably improper given its status as a limited liability company, so too is its claim under the CLRA. The CLRA excludes limited liability companies from the definition of "consumers" that can assert a claim. *See* Cal. Civ. Code § 1761(c), (d); *Bristow v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 45811, at *2, *4, *13-14 (E.D. Cal. Jun. 14, 2007) (corporate entity could not assert CLRA claim because the entity was not a "consumer"). Simpson raised this issue in the First Motion, but Fernandina ignored it and, without any legal or factual justification, continues to assert this improper claim in the FAC. Any argument otherwise is frivolous.

### D. Plaintiffs' Counsel Should Be Sanctioned For Their Conduct

Simpson seeks an order from this Court awarding Simpson the reasonable attorneys' fees

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1   and expenses it incurred in preparing this Motion and the Second Motion. *See Goodyear Tire &*

2   *Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (available sanctions under Rule 11 include

3   an award of reasonable attorneys' fees).

4          Such an award is proper here, where the FAC did not address the problems in the

5   Complaint—and, in some cases, exacerbated them. Plaintiffs' counsel are experienced attorneys

6   who nevertheless signed the FAC knowing it contained false allegations and baseless legal

7   claims. Simpson repeatedly put Plaintiffs' counsel on notice of the problems and deficiencies in

8   the Complaint and FAC, explaining that Plaintiffs' allegations were expressly contradicted by

9   cited documentation. Indeed, Simpson identified the problems with the Complaint in their First

10   Rule 11 Letter and their First Motion, and the problems with the FAC in their Second Motion

11   and Second Rule 11 Letter. *See H.P.D. Consolidation, Inc. v. Pina*, 2017 U.S. Dist. LEXIS

12   39930, at *3-4 (N.D. Cal. Mar. 20, 2017) (imposing sanctions on plaintiff that filed an amended

13   complaint after being put on notice by defendant that the complaint lacked evidentiary support);

14   *Brown v. Royal Power Mgmt., Inc.*, 2012 U.S. Dist. LEXIS 12245, at *9 (N.D. Cal. Feb. 1, 2012)

15   (imposing sanctions on plaintiff's counsel who "continued to make . . . factual assertions even

16   when confronted with evidence presented by Defendants that their assertions were wrong").

17   Moreover, Plaintiffs' improper allegations are not isolated and insignificant. The untrue factual

18   allegations "infect[] the entire pleading," given that the viability of each and every claim is

19   premised on the false allegations that Simpson did not provide sufficient warning that their

20   products may corrode under certain conditions (as alleged in the FAC). *See* FED. R. CIV. P. 11

21   advisory committee's notes to 1993 amendment.

22          Counsel who filed the original Complaint should have withdrawn the false allegations

23   and baseless claims. Instead, they recruited new counsel (and new California plaintiffs) and filed

24   an equally—if not more—baseless FAC.  Plaintiffs' violations of Rule 11 were motivated by

25   their effort to harass Simpson and deceive the Court with overreaching claims that Simpson

26   would have to spend substantial resources to defend. Such behavior should not be condoned.

27   Plaintiffs' refusal to withdraw the Complaint or the FAC, in the face of undisputed evidence that

28   the pleadings were based on untrue allegations of fact and baseless law, have unnecessarily

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 18 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    protracted this litigation and required Simpson and this Court to expend time and resources

2    bringing and considering this Motion and the related Second Motion. Simpson should be

3    awarded its reasonable attorney fees and costs incurred in connection with this Motion and the

4    Second Motion.

5         Simpson is requesting an award of $158,403.77, which amount is less than the total

6    attorney fees and costs incurred in connection with preparing this Motion and the Second Motion

7    as of the date of this filing. Howard Decl., ¶¶ 7-10. These fees and costs are reasonable and

8    justified given the nature and complexity of Plaintiffs' pleading and Simpson's two motions.

9    After filing its reply brief, Simpson will update this amount and, if necessary, submit evidentiary

10   support for these amounts.

11   **V.    CONCLUSION**

12        For the foregoing reasons, the Court should grant this Motion for Sanctions and require

13   Plaintiffs' counsel to pay Simpson's reasonable attorney fees and costs incurred in connection

14   with preparing this Motion and the Second Motion.

15

16   Dated:  May 1, 2020                          SHARTSIS FRIESE LLP

17

18                                               */s/ Erick C. Howard*
                                           By:      ERICK C. HOWARD

19                                         Attorneys for Defendants
20                                         SIMPSON STRONG-TIE COMPANY, INC. and
                                           SIMPSON MANUFACTURING COMPANY,
                                           INC.
21   8594914

22

23

24

25

26

27

28

Case No.                    DEFENDANTS' MPA ISO MOTION FOR SANCTIONS
3:19-cv-07901-TSH           PURSUANT TO RULE 11 OF THE FRCP