# Exhibit C



## SHARTSIS FRIESE LLP

One Maritime Plaza ♦ Eighteenth Floor
San Francisco, California 94111-3598

**Erick C. Howard**
ehoward@sflaw.com

March 19, 2020

***VIA EMAIL***

Michael F. Ram, Esq.
Robins Kaplan LLP
2440 West El Camino Real, Suite 100
Mountain View, CA 94040

Kevin E. Epps, Esq.
Epps, Holloway, Deloach & Hoipkemier, LLC
1220 Langford Drive, Building 200-101
Watkinsville, GA 30677

Graham Lippsmith, Esq.
Kasdan, Lippsmith Weber Turner LLP
500 S. Grand Avenue, Suite 1310
Los Angeles, CA 90071

Re:   *Cooper, et al. v. Simpson Strong-Tie Company, Inc. et al.*
      U.S District Court, Northern District of California No. 3:19-cv-0790-TSH

Dear Counsel:

We write to raise our serious concerns over what Simpson believes are unmistakable violations of Rule 11 of the Federal Rules of Civil Procedure based on the filing of the First Amended Complaint ("FAC") in the above-referenced action on behalf of Cary W. Cooper, Terri G. Cooper (the "Coopers"), Fernandina Beach, LLC ("Fernandina"), and Simon Nguyen & Thoai Doan (collectively, "Plaintiffs").

This letter serves as notice that Simpson Strong-Tie Company, Inc. and Simpson Manufacturing, Inc. (collectively "Simpson") reserve the right to seek all available relief based on your inclusion of wholly unsupportable factual contentions and unwarranted legal theories in the FAC, including attorney fees and expenses under Rule 11 and 28 U.S.C. § 1927, as well as common law claims for malicious prosecution.

Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact and

Michael F. Ram, Esq.
Kevin E. Epps, Esq.
Graham Lippsmith, Esq.
March 19, 2020
Page 2

legally tenable. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *Cooter & Gell v. Hartymarx Corp.*, 496 U.S. 384, 405 (1990). In light of the above certifications, Rule 11 imposes an affirmative duty on lawyers to inquire into the facts and law before filing a pleading. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372 (Fed. Cir. 2012), *citing* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 amendments).

   Rule 11 sanctions are appropriate if the allegations and other factual contentions entirely lack evidentiary support. *Stiglich v. Contra Costa County Bd. of Supervisors*, 1997 U.S. App. LEXIS 897 (9th Cir. 1997). "A claim is . . . factually baseless if it lacks factual foundation." *ICU Med., Inc. v. Alaris Med. Sys., Inc*., 2007 U.S. Dist. LEXIS 34467, at *3 (C.D. Cal. 2007); *Benedict v. Hewlett-Packard Co.*, 2014 U.S. Dist. LEXIS 7323, at *17-18 (N.D. Cal. Jan. 21, 2014); *see also H.P.D. Consolidation, Inc. v. Pina*, 2017 U.S. Dist. LEXIS 39930, at *3-4 (N.D. Cal. Mar. 20, 2017) (imposing sanctions on plaintiff that filed an amended complaint after being put on notice by defendant that the complaint lacked evidentiary support).

   For the reasons set forth more fully in the attached Motion for Rule 11 Sanctions, the following factual allegations and legal contentions set forth in the FAC lack any evidentiary support, exposing you to liability for the costs and attorney fees reasonably incurred by Simpson to address the meritless claims:

   (1) That FAC falsely asserts that Simpson's Senior Territory Manager for Hawaii and Pacific Region, Tim Waite, testified in 2017 that "while certain home foundations should last 50 years, the Product did not appear to be performing as it was designed." Mr. Waite never gave such testimony. As you are aware, a percipient witness adverse to Simpson, Bob Kayser of Gentry Homes, Ltd,. substantially gave that testimony in an arbitration proceeding, *Nishimura et al. v. Gentry Homes, Ltd. See* Arbitration Transcript at 1263:19-1264: 2, included herewith.

   (2) The FAC continues to contend that Simpson represents that its products will last the lifetime of a home, when its warnings, which are never cited in the FAC, expressly state it cannot give such assurance.

   (3) The FAC continues to assert that Simpson's disclaimer of the "implied warranty of fitness" is unenforceable because it is not mentioned in the limited warranty, even though it is expressly listed in the limited warranty.

   (4) In an attempt to avoid the impact of the economic loss rule, the FAC contradictorily asserts that Simpson's products at issue are not so integrated into the structure of Plaintiffs' homes such that repairs will cause harm to other products, while at the same time it alleges that repairs will necessarily cause such harm to other products. Even the most superficial inspection of Simpson parts installed in the interior of a building reveals even to the non-expert that repair or removal will damage the structure.

Michael F. Ram, Esq.
Kevin E. Epps, Esq.
Graham Lippsmith, Esq.
March 19, 2020
Page 3

     (5) The FAC continues to assert, without legal basis, that the out-of-state Plaintiffs can assert statutory and warranty claims based on California law;

     (6) The FAC continues to assert claims for breach of the "implied warranty of fitness" under California and Florida law, that are without legal basis.

     Simpson does not raise these issues lightly, particularly given the extraordinary events we all face in connection with the COVID-19 outbreak. However, the nature of the meritless allegations described above, and your past conduct, leaves Simpson no choice. You filed the original complaint asserting that Simpson provided no corrosion warnings at all, when that was clearly false. You implicitly acknowledged the falsity of the original complaint by filing the FAC. But your attempt to defend the original complaint in your March 12, 2020 letter missed the mark since the so-called "evidentiary support" you cited were merely conclusory, unsupported allegations of the FAC, including the false allegation concerning Tim Waite, discussed above. To put it another way, you were not able to justify the violations in the original complaint and we don't believe you will be able to justify the repeated and new violations in the FAC.

     That said, Simpson would prefer to resolve the above-referenced Rule 11 issues in the FAC without resort to motion practice. Accordingly, we are amenable to meeting and conferring with you on these issues to determine if they can be amicably resolved. Please advise if you and your clients are interested in doing so. Otherwise, Simpson is prepared to vindicate its rights. Simpson has already been forced to spend tens of thousands of dollars in responding to the Complaint and FAC, and will not hesitate to bring the attached Motion to prevent unreasonable and vexatious multiplication of these proceedings at its expense. If the issues set forth in the Motion cannot be resolved within 21 days of the service of this letter and motion, Simpson reserves the right to file the attached Motion per Fed. Rule Civ. Pro 11(c)(2). Nothing herein shall constitute a waiver of Simpson's rights or remedies, all of which are expressly reserved.

                              Very truly yours,

                              */s/ Erick C. Howard*

                              Erick C. Howard

8632140

```
 1              DISPUTE PREVENTION & RESOLUTION, INC.

 2                         STATE OF HAWAII

 3    THOMAS NISHIMURA, COLETTE     ) DPR NO. 16-0080-A
      NISHIMURA, individually and  )
 4    on Behalf of a Class of All  )
      Persons Similarly Situated,  )
 5                                 )
                 Plaintiffs,       )
 6                                 )
        vs.                        )
 7                                 )
      GENTRY HOMES, LTD., a        )
 8    Hawaii Domestic Profit       )
      Corporation; SIMPSON         )
 9    MANUFACTURING CO., INC., a   )
      Delaware Corporation;        )
10    SIMPSON STRONG-TIE COMPANY,  )
      INC., a California           )
11    Corporation; JOHN and JANE   )
      DOES 1-100; DOE              )
12    PARTNERSHIPS 1-100; DOE      )
      CORPORATIONS 1-100; DOE      )
13    GOVERNMENTAL AGENCIES        )
      1-100; and DOE ASSOCIATIONS  )
14    1-100,                       )
                                   )
15               Defendants.       )
                                   )
16

17                         **ARBITRATION**

18                          **VOLUME 6**

19        Taken at Dispute Prevention & Resolution,

20    1155 Pauahi Tower, 1003 Bishop Street, Honolulu,

21    Hawaii, commencing at 8:58 a.m. on Monday,

22    April 10, 2017.

23


24


25    BEFORE: JESSICA R. PERRY, RPR, CSR No. 404
```

**RALPH ROSENBERG COURT REPORTERS, INC.**
Honolulu, HI   (808) 524-2090

```
 1    APPEARANCES:

 2    ARBITRATION PANEL:

 3
              JUSTICE JAMES E. DUFFY, JR. (Ret)
 4            Dispute Prevention & Resolution
              Pauahi Tower
 5            1003 Bishop Street, Suite 1155
              Honolulu, Hawaii  96813
 6
                  - and -
 7
              MARK J. BENNETT, ESQ.
 8            Starn•O'Toole•Marcus & Fisher
              Pacific Guardian Center, Makai Tower
 9            733 Bishop Street, Suite 1900
              Honolulu, Hawaii  96813
10
                  - and -
11
              JAMES KAWASHIMA, ESQ.
12            James Kawashima, ALC
              Topa Financial Center, Bishop Street Tower
13            700 Bishop Street, Suite 1700
              Honolulu, Hawaii  96813
14
15    For Plaintiffs Thomas Nishimura, Colette Nishimura,
      individually and on Behalf of a Class of All Persons
16    Similarly Situated:

17
              KEN KASDAN, ESQ.
18            GRAHAM LIPPSMITH, ESQ.
              Kasdan LippSmith Weber Turner LLP
19            500 S. Grand Avenue, Suite 1310
              Los Angeles, California  90071
20
                  - and -
21
              MELVIN Y. AGENA, ESQ.
22            Law Offices of Melvin Y. Agena
              Harbor Court
23            55 Merchant Street, Suite 2010
              Honolulu, Hawaii  96813
24

25
```

```
 1    APPEARANCES, (Continued):

 2
      For Defendant Gentry Homes, Ltd.:
 3
                  RYAN H. ENGLE, ESQ.
 4                SARAH LOVE, ESQ.
                  JASON W. JUTZ, ESQ.
 5                Bays Lung Rose Holma
                  Topa Financial Center, Bishop Street Tower
 6                700 Bishop Street, Suite 900
                  Honolulu, Hawaii  96813
 7

 8    For Timothy Waite:

 9                KEVIN S.W. CHEE, ESQ.
                  Chee Markham & Feldman
10                2700 American Savings Bank Tower
                  1001 Bishop Street
11                Honolulu, Hawaii 96813

12

13    Also Present:

14                DON BELL

15

16

17

18

19

20

21

22

23

24

25
```

1          EXAMINATION INDEX

2                                                           PAGE

3   **WITNESS: TIMOTHY WAITE**

4        DIRECT BY MR. KASDAN.................... 1120

5        CROSS BY MR. ENGLE...................... 1211

6        REDIRECT BY MR. KASDAN.................. 1221

7   **WITNESS: ROBERT KAYSER**

8        DIRECT BY MR. KASDAN.................... 1225

9   **WITNESS: BURT WATANABE**

10       DIRECT BY MR. KASDAN.................... 1303

11       CROSS BY MS. LOVE....................... 1310

12       REDIRECT BY MR. KASDAN.................. 1311

13  **WITNESS: CRAIG LEONG**

14       DIRECT BY MR. LIPPSMITH................. 1312

15       CROSS BY MR. ENGLE...................... 1335

1  THE WITNESS: You're welcome. Thank you.
2  JUSTICE DUFFY: Well, we're about 11:20.
3  Is this a good time for a break?
4  MR. KASDAN: Is Mr. Kayser available?
5  MR. ENGLE: I assume he's here.
6  MR. KASDAN: If the next witness is
7  available, we can go right straight to him. Call
8  Mr. Robert Kayser.
9  JUSTICE DUFFY: We'll take a couple
10  minute break.
11  (Recess taken from 11:20 to 11:30.)
12  MR. KASDAN: Claimants call Mr. Robert
13  Kayser.
14  ROBERT KAYSER,
15  the witness hereinbefore named, being first duly
16  cautioned and sworn to testify the truth, the whole
17  truth, and nothing but the truth, testified under oath
18  as follows:
19  **DIRECT EXAMINATION**
20  BY MR. KASDAN:
21  Q.  Mr. Kayser, you're employed by Gentry,
22  correct?
23  A.  Yes.
24  Q.  You are -- what is your title?
25  A.  Vice president and director of construction.

```
 1    correct?
 2       A.   I don't believe I let down your clients by
 3    using -- by using the flashing.  It didn't -- it
 4    didn't perform to the standards that Simpson designed
 5    it to.
 6       Q.   It hasn't performed to your standards either,
 7    has it, sir?
 8       A.   I didn't make the standard.  Clayton specified
 9    the standard.
10       Q.   Don't let this thing glare in your eyes.
11       A.   It's all right.  I'm fine.
12       Q.   Who made the standard, Simpson or Clayton?
13       A.   Clayton called out the G90 galvanizing.
14    That's what we used.  I followed the plan.
15       Q.   But as a home builder, you expect a certain
16    level of performance of the products that you put in
17    the homes that you sell to the public, correct?
18       A.   Yeah.
19       Q.   These houses, the foundations should last
20    50 years, correct?
21       A.   You would hope so.
22       Q.   You hope so as a builder, don't you, sir?
23       A.   Yes.
24       Q.   Will you agree with me that these MASes and
25    HDs are not going to last 50 years?
```

1      A.   It doesn't appear that they're performing like
2  they were designed to perform.
3      Q.   And need to be fixed, correct, sir?
4      A.   Some of them need to be fixed.  I'm not sure
5  that all of them are corroding all the way through or
6  not.  I haven't been able to see a determination that
7  they all need to be repaired.
8      Q.   As an experienced builder, you're doing this
9  30 years, right, sir?
10     A.   Yes.
11     Q.   You've seen a lot of them out there corroding,
12 wouldn't that be fair to say?
13     A.   Yes.
14     Q.   You have no way of saying that the ones that
15 aren't corroded all the way through won't continue
16 corroding, just as a sense of you as a responsible
17 builder, right?
18     A.   I could agree with that.
19     Q.   Therefore, as a responsible builder, you would
20 take your knowledge and expertise in building and say
21 if they haven't corroded all the way through, they're
22 probably going to, they all should be fixed.  Wouldn't
23 that be the proper, fair way to analyze this problem?
24     A.   I don't know that they all need to be fixed.
25 It depends on what the fix is.  I mean, is it to be