# Exhibit E

Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Marie N. Appel (SBN 187483)
mappel@robinskaplan.com
Juvian J. Hernandez, *admitted pro hac vice*
jhernandez@robinskaplan.com
ROBINS KAPLAN LLP
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041

Juvian J. Hernandez, *admitted pro hac vice*~~pro hac vice pending~~
JHerndandez@robinskaplan.com
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

Kevin E. Epps, *admitted pro hac vice*~~pro hac vice pending~~
Kevin@ehdhlaw.com
Adam L. Hoipkemier, *admitted pro hac vice*~~pro hac vice pending~~
Adam@ehdhlaw.com
EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC
1220 Langford Drive, Building 200-101
Watkinsville, Georgia 30677
Telephone: (706) 508-4000
Facsimile: (706) 842-6750

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY W. COOPER, TERRI G. COOPER, FERNANDINA BEACH, LLC, SIMON NGUYEN, & THOAI DOAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIMPSON STRONG-TIE COMPANY, INCORPORATED, a California corporation; SIMPSON MANUFACTURING COMPANY, INCORPORATED, a Delaware corporation; and DOES 1 through 200, inclusive,<br><br>Defendants. | No. 3:19-cv-07901-TSH<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMAND |

Plaintiffs Cary W. Cooper, Terri G. Cooper and Femandina , Fernandina Beach, LLC, Simon Nguyen and Thoai Doan, on behalf of themselves and all others similarly situated, file this class action complaint against Defendants Simpson Strong-Tie Company, Simpson Manufacturing Company, Inc., and Does 1 through 200. On personal knowledge of their own circumstances, and upon investigation and information and belief of its counsel, Plaintiffs aver:

## INTRODUCTION

1.     Defendants Simpson Strong-Tie Company, Inc. and Simpson Manufacturing Co., Inc. (jointly "Simpson") develop, manufacture, advertise, sell, and distribute galvanized hurricane straps (the "Product") throughout the United States for installation in the foundations, framing, and doors of homes and other buildings.

2.     Simpson fails adequately to disclose to homeowners that the Product is subject to premature and accelerated corrosion, which causes the Product to fail well before its reasonable useful life, putting homeowners at risk and requiring costly repairs, even when the installer follows Simpson's instructions.

3.     Plaintiffs bring this action to seek redress for damages caused by Simpson's wrongful conduct.

## JURISDICTION

4.     This Court has jurisdiction over this case under 28 U.S.C. § 1332(d)(2) because: (1) this is a class action with more than one hundred (100) Class Members, many of whom, including some of the named Plaintiffs, live outside California; (2) Simpson Strong-Tie Company, Inc. is a California corporation, based in the state of California , and is thus a citizen of the state of California; (3) Defendant Simpson Manufacturing Co. is a Delaware corporation, based in the state of California, and is thus a citizen of the state of California; (6) Plaintiffs and all Class Members are United States citizens; and (7) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## VENUE

5.     Venue in this Court is proper: (1) pursuant to 28 U.S.C. 1391(a)(1) because

Defendants are headquartered in this District and do sufficient business in this District to subject them to personal jurisdiction, here; and (2) pursuant to 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**INTRADISTRICT VENUE**

6. Venue in this Division of the Northern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in Alameda County and Defendants are headquartered in this County.

**PARTIES**

7. Plaintiffs Cary W. Cooper and Terri G. Cooper are Georgia residents who own a home in Port St. Joe, Florida.

8. Plaintiff Femandina Beach, LLC is a Florida limited liability company that owns a home located in Femandina Beach, Florida.

9. Plaintiffs Simon Nguyen and Thoai Doan are California residents who own a home in San Jacinto, California.

10. 9.Defendant Simpson Strong-Tie Company, Inc. is a California corporation with its principal place of business in Pleasanton, California. Plaintiffs are informed and believe that Defendant Simpson Strong-Tie conducts business throughout the United States and was responsible for, or otherwise involved in, the development, manufacture, marketing, sales, and distribution of the Product.

11. 10.Defendant Simpson Manufacturing Company, Inc. is a Delaware corporation with its principal place of business in Pleasanton, California. Plaintiffs are informed and believe that Simpson Manufacturing Company conducts business within the United States and was responsible for, or otherwise involved in, the development, manufacture, marketing, sales, and distribution of the Product.

12. 11.Plaintiffs are ignorant of the true names and capacities of Defendants sued as Does 1 through 200, inclusive, and therefore sues these Doe Defendants by fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these fictitiously-

named Doe Defendants when they are ascertained. Each of the fictitiously-named Doe

Defendants is responsible for the conduct alleged in this Complaint and Plaintiffs' damages

were actually and proximately caused by the conduct of the fictitiously named Doe Defendants.

## FACTUAL ALLEGATIONS

**A.      Plaintiffs Cary and Terri ~~Coopers'~~ Cooper's Factual Allegations**

13.     ~~12.~~Plaintiffs Cary W. Cooper and Terri G. Cooper are Georgia residents who

own a home in Port St. Joe, Florida.

14.     ~~13.Plaintiffs~~ The Coopers purchased the property on August ~~17,~~17, 2019. The

property was built in 2004 and ~~had~~ the Product was installed to protect against hurricane force

winds and seismic activity.

15.     ~~14.~~In 2019, a hurricane hit the area and caused severe damage to the

~~Plaintiffs~~Coopers' home. Although the Product was marketed for the purpose of securing

structures in "high wind events," and ~~Plaintiffs~~the Coopers' home suffered extensive damage

that would have otherwise been prevented had the Product functioned as marketed. Due to

premature corrosion, the straps were weakened and failed to secure ~~Plaintiffs~~the Coopers' home.

16.     ~~15.Plaintiffs~~ The Coopers are now faced with extensive costs to repair the

damage to their home and to install replacement straps to properly secure and protect their home

against future similar events.

**B.      Plaintiff Fernandina Beach's Factual Allegations**

17.     ~~16.~~Plaintiff Fernandina Beach is a Florida LLC that owns a home located in

Fernandina Beach, Florida.

18.     ~~17.Plaintiff~~ Fernandina Beach purchased the property in September ~~of~~ 2011. The

home on the property was built in 1997 and ~~had~~ the Product was installed to protect against

hurricane force winds and seismic activity.

19.     ~~18.~~Because of premature corrosion of the Product in ~~Plaintiffs~~ Fernandina

Beach's home, the Product was no longer capable of protecting the home from collapse during

high wind and seismic events.~~Thus, Plaintiff started replacing the failing Product with new~~

hurricane straps made by Simpson in 2018.

19.    Plaintiff has already noticed significant corrosion on the replacement Product.

20.    Plaintiff has spent substantial amounts of money so far replacing corroded straps.

**C.    Plaintiffs Simon Nguyen and Thoai Doan's Factual Allegations**

20.    Plaintiffs Simon Nguyen and Thoai Doan are California residents who own a home in San Jacinto, California.

21.    Plaintiffs Nguyen and Doan purchased the property in August 2009. The home on the property was built in or around January 2007 and the Product was installed to protect against hurricane force winds and seismic activity.

22.    21.The Product continues to manifest problems to the present day, including accelerated corrosion and spalling (fragmenting) on or near the Signs of corrosion on the Product continue to manifest, compromising Plaintiffs Nguyen and Doan's home's foundation and structural support.

**D.    C.Product Manufacturing Processand Representations**

23.    22.Plaintiffs are informed and believe that Defendants have been manufacturing and selling the Product since approximately 1983. The Product is made of pre-formed strips of steel that have flanges used for connecting the Product to the structure.

24.    23.The Product includes, but is not limited to, various galvanized steel hurricane straps including, but not limited to, steel, galvanized, and hot-dipped galvanized straps. The Product also includes mudsill anchors. Both are used in protecting homes against wind resistance, seismic activity, and hurricanes.

25.    24.The Product is installed in various locations throughout homes and other structures, including the foundation, framing, and doors. The Product is supposed to protect the home by creating a load path resistant to increased uplift and lateral forces common to high-wind regions.[1]

---

[1]SIMPSON Strong-Tie, High Wind-Resistant Construction Application Guide F-C-HWRCAG16, p. 14 (2016).

## C. The Need for High Wind and Seismic Protection

26.     Evaluations performed by the Federal Emergency Management Agency (FEMA) revealed that hurricanes can cause substantial damage to buildings when high-wind protection is absent, inadequately installed, or the high-wind protection components corrode and no longer provide adequate protection.

27.     25. Uplift refers to forces that can lift a home. The forces are generated when high winds blow over the top of the structure, creating suction that can lift the roof. These uplift forces must be transferred down to the foundation to prevent damage. Several connections or straps are required to create a continuous load path.[2]   When used in the foundation, for example, the Product is placed in wet concrete, and, after the concrete cures, bent over a sill plate. The straps are then nailed to the structure.

28.     Homes can be protected from the adverse effects of high winds and seismic activity if they have a "complete load path" or a "continuous load path" and protection from lateral forces. When a home is constructed with a continuous (or complete) load path and is protected from lateral forces, the entire house is (among other things) structurally tied together from the foundation to the roof: the roof is fastened to the top story of the house, floors are connected to each other (where there are multiple floors), and the bottom floor is anchored to the foundation.

29.     As Simpson itself notes on its own website, "A continuous load path is critical during an earthquake because it helps hold the house together when ground forces try to pull it apart. A home is more likely to withstand an earthquake and stay intact when all parts of the house — roof, walls, floors and foundation — are connected to each other."[3]

30.     To be effective, a complete load path must not only be structurally present, but it must be made of proper materials. For example, the high-wind protection structure loses its

---

[2] *Id.*
[3] *See* https://blog.strongtie.com/earthquake-checklist-prepare-home/.

FIRST AMENDED CLASS ACTION COMPLAINT

effectiveness when it is made of material that corrodes and becomes weak. Without high-wind components that are sound, homes cannot be adequately tied to their foundations and are susceptible to the damages that accompany high-speed winds.

31. 26. The Product is also supposed to protect against lateral forces that make a structure rock, slide, or overturn.

**D. Defendants' Marketing of the Product**

32. 27. Defendants have sold the Product to thousands of purchasers, including subdivision developers, home builders, and individual homeowners throughout the United States. The Product is often installed by the home builder, but is also installed and/or replaced by individual home owners homeowners. Defendants are aware that the developers and homebuilders are not intended to be the ultimate consumers, as Defendants' warranty is intended to benefit homeowners such as Plaintiffs and the Class.

33. Plaintiffs and the Class were the intended and/or third party beneficiaries of Simpson's warranty. Plaintiffs and the Class were the intended ultimate consumers of the Product. The warranty agreements were designed for and intended to benefit Plaintiffs and the Class.

34. Further, Defendants knew that: Plaintiffs and the Class were the intended and/or third party beneficiaries of Simpson's warranty; Plaintiffs and the Class were the intended ultimate consumers of the Product; and warranty agreements were designed for and intended to benefit Plaintiffs and the Class.

35. In 2017, a Simpson Senior Territory Manager for Hawaii and the Pacific region testified that homeowners are one category of individuals who relied on Simpson's Product to provide structural integrity in the event of a hurricane and to prevent major damage. The Senior Territory Manager also testified that the homeowner is the ultimate individual receiving protection under the warranty.

36. Plaintiffs are informed and believe that installations of the Product in their homes complied with Simpson's installation instructions and deterioration was not due to

environmental conditions but rather, Defendants' defective design of the Product.

37.   28. Plaintiffs are informed and believe that Simpson marketed, promoted, sold, and distributed the Product for the purposes of being installed and incorporated into building construction projects for life safety purposes, to prevent injury and damage to persons and/or property from wind uplift forces and seismic activity.

38.   29. Defendants provided, made and disseminated information, installation instructions, design specifications, and other representations as to the usage and qualities of the Product, so that the Product would be specified, included, installed, and incorporated in the design of various building construction projects for the purpose of securing and stabilizing structures against high wind, seismic and other similar events.

39.   30. For example, Simpson widely circulated materials including, but not limited to, manuals and guides, stating that the Product "meet[s] or exceed[s] our customers' needs and expectations."[4] Simpson also represented that "whether [consumers] search by product or application, Simpson Strong-Tie has the right connector to help [consumers] build safe, strong structures."[5] Simpson never adequately disclosed that the Product is subject to premature corrosion, rusting, failure, deterioration, and disintegration ("the Defect"). Its "Corrosion Warnings," which few class members ever see, and which none of the named Plaintiffs saw, do not adequately disclose that Simpson is selling the Product into areas where it will foreseeably corrode long before its usual life, under reasonably foreseeable conditions, even if the installer reasonably follows the installation instructions.

40.   The "Corrosion Warnings" fail to disclose, and Simpson never discloses, that the Product is defective because, among other things, as water collects and chlorides develop (for example, after rain), the Product prematurely rusts, spalls the concrete, and gradually loses strength to secure the house. Further, gaps, crevices, and spalls at and below the Product's embedment line form and moisture and corrosive elements  accumulate and concentrate in the

---

[4] SIMPSON Strong-Tie, High Wind-Resistant Construction Application Guide F-C-HWRCAG16 at p. 5.

[5] *Id.* at p. 3

gaps and crevices, causing aggressive corrosion.

41.   31. Plaintiffs are informed and believe that the Product was installed and incorporated into the construction of the homes belonging to the Plaintiffs and other Class Members in reasonable accordance with the information, installation instructions, design specifications, and other representations provided, made, and disseminated by Simpson.

**E.   The Product Has or Will Become Corroded and Has Lost or Will Lose Its Ability to Provide Structural Support for Plaintiffs' Homes**

42.   32. Plaintiffs purchased the homes and learned that the Product was beginning to prematurely and continuously corrode, rust, fail, deteriorate, and disintegrate, thus causing cracking, spalling, and other damage compromising the structural stability of the home should there be high winds or seismic activity.

43.   33. Plaintiffs are informed and believe that the Product installed and incorporated into the homes of Class Members is also prematurely and continuously corroding, rusting, failing, deteriorating, and disintegrating, thus creating a life safety issue, a dangerous condition and a substantial and unreasonable risk of serious personal injury and property damage, which will likely require repair and replacement of the Product, at substantial cost and expense to the Class Members, and will necessarily involve damage to other products.

44.   34. As a direct result of the premature and continuing corrosion, rusting, failure, deterioration, and disintegration of the Product which has occurred and is occurring to homes, Plaintiffs and the Class Members have suffered damages, costs, loss, and expense, and are reasonably likely to suffer further damages, costs, loss, and expense in the future.

**F.   Defendants' Knowledge of the Product's Defect and Failure to Disclose**

45.   35. Defendants knew of the Defect since before Plaintiffs and the Class Members purchased their properties and failed adequately to disclose to Plaintiffs and the Class Members the defective nature of the Product. Plaintiffs are informed and believe that Defendants consistently have represented, and continue to represent, that the Product is durable, good quality, and will secure and stabilize structures, without disclosing the Defect. These

representations were published in product catalogs and manuals, as well as on the Defendants' website, and foreseeably repeated, as Defendants intended, by developers, builders, and others involved in the development, building and sale of homes. Defendants made the published representations and failed to disclose the Defect, knowing and intending that the representations and omission would be repeated to third parties, including consumers who purchased the structures. Defendants communicated a common and repeated theme regarding the Product:

(a)     That the Products are "free from defects in material or manufacturing";

(b)     That the Product "enable[s] structures to resist the movement, stress, and loading that results from impact events such as earthquakes and high velocity winds";

(c)     That a "properly installed [Product] will perform in accordance with the specifications set forth in the applicable Simpson website."[5] website."[6]

46.    36. Defendants knew yet failed to inform Plaintiffs and the Class Members that the Product would prematurely corrode and need to be replaced. Simpson's "Corrosion Warnings" never disclose that the Product will corrode under reasonably foreseeable conditions even when the installer follows the instructions.

47.    37. Simpson knew that the Product would prematurely corrode. Simpson never adequately warned consumers that the Product would prematurely corrode, weaken, and fail when installed in the foundation, framing, and doors of homes.

48.    In 2011, Simpson sent correspondence disclosing corrosion problems found in the Product in HawaTi. A true and correct copy of said correspondence is attached hereto as Exhibit 1. The correspondence acknowledges that "Simpson Strong-Tie has become aware of problems regarding concrete spalling and corrosion of embedded products around the perimeter of some homes in Oahu, HawaiT."

49.    In 2017, a Simpson Senior Territory Manager for Hawaii and the Pacific region testified that, while certain home foundations should last 50 years, the Product did not appear to

---

[6] SIMPSON StrongTie Connectors, www.strongtie.com/fr_distributor.html, WaybackMachine August 5, 2001.

be performing as it was designed. The Simpson Senior Territory Manager also testified that he personally saw corroded Products during destructive testing in another lawsuit and reported this information back to Simpson.

50.     Simpson never adequately warned consumers that the Product would prematurely corrode, weaken, and fail when installed in the foundation, framing, and doors of homes, even when the installer reasonably follows the instructions.

51.     38. Defendants intended to mislead customers into believing that its Product

[6] SIMPSON StrongTie Connectors, www.strongtie.coin/fr_distributor.htinl, WaybackMacliine August 5, 2001.

provides adequate corrosion resistance by failing adequately to disclose that severe premature corrosion could and would compromise Defendants' galvanized hurricane straps.

52.     39. Defendants also deliberately failed adequately to disclose that the Product would prematurely corrode even when installed pursuant to Simpson's instructions, rendering the Product incapable of protecting against hurricane force winds and seismic activity. Simpson also failed adequately to disclose that the Product will fail even when used pursuant to Simpson's guidelines about which type of Product to use in which installation.

53.     40. Defendants continue to advertise and sell the Product for use in homes and other structures, omitting adequately to disclose to Plaintiffs and the Class Members, their agents, or contractors, material facts concerning the Product including, but not limited to, that the Product is susceptible to accelerated corrosion and spalling, does not otherwise perform as represented, and fails far in advance of its reasonable useful life even when installed pursuant to Simpson's instructions and guidelines about which type of Product to use for each type of installation. All of these facts are material. The Product did not perform in accordance with the reasonable expectations of Plaintiffs and the Class Members in that it was not durable and suitable for use as a source of uplift and lateral resistance throughout the life of homes.

54.     41. The Product is a manufactured galvanized metal strap that was defectively designed, tested, and manufactured, and will prematurely deteriorate when used in its intended manner and installed in homes.

55. 42.As a result of Defendants' prematurely failing Product, and Defendants' failure to disclose the defect. to disclose the defect, Plaintiffs have suffered actual damages because their homes are no longer properly protected from uplift and lateral resistance. The Product has failed and will continue to fail, damaging other building elements, causing continuous and progressive damage to Plaintiffs' property, and requiring Plaintiffs to expend thousands of dollars to repair damage or replace the Product before the expiration of the useful life reasonably expected by Plaintiffs. Defendants are also responsible for the damage resulting from the course of repairs to replace the Product in Plaintiffs' homes. Class members have suffered similar damages and are facing a substantial safety risk.

56. 43.Because of the relatively small size of the typical damages, and the modest resources of most homeowners and of the individual Plaintiffs and Class Members, it is unlikely that most Class Members could afford to seek recovery against Defendants on their own. A class action is therefore the only viable, economical, and rational means for Class Members to recover from Defendants for the damages they have caused.

## CLASS ACTION ALLEGATIONS

57. 44.Plaintiffs bring this class action pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of itself and the Class Members. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements as set forth in Rule 23(a) and Rule 23(b)(3).

58. 45.Plaintiffs advance this action on behalf of the following classes (together, the "Class" or "Class Members"):

National Class: All individuals in the United States who own residential structures constructed with Simpson hurricane straps embedded in the foundations or in the structural support and all former owners who paid to repair such straps. Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Florida Class: All individuals in the State of Florida who own residential structures constructed with Simpson hurricane straps embedded in the

foundations or in the structural support, and all former owners who paid to repair such straps. Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

California Class: All individuals in the State of California who own residential structures constructed with Simpson hurricane straps embedded in the foundations or in the structural support, and all former owners who paid to repair such straps. Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Claims for personal injury are specifically excluded from the Class.

59. 46. Numerosity (Rule 23(a)(1)f23(a)(1)). Plaintiffs are informed and believe that the Classes are comprised of many thousands of property owners, making joinder impractical. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

60. 47. Communality /(Rule 23faH2fr23(a)(2)). There are questions of law and fact common to all Class Members. Common questions include, but are not limited to, the following:

(a) Whether the Product is subject to premature corrosion well in advance of its reasonable useful life;

(b) Whether the Product is not suitable for use as a long-term hurricane and seismic structural connector;

(c) Whether Defendants knew of the defective nature of the Product before making it available for purchase and use by the Plaintiffs and Class Members;

(d) Whether Defendants failed adequately to disclose to Plaintiffs and Class Members the defective nature of the Product even when installed pursuant to Simpson's instructions and pursuant to Simpson's choice of product guidelines;

(e) Whether Defendants had a duty to Plaintiffs and Class Members to disclose the true nature of the Product;

(f) Whether the facts not disclosed by Defendants to Plaintiffs and Class Members are material;

(g)     Whether Defendants knew that the Product would prematurely fail even when properly selected and installed, is not suitable for use as structural support to resist hurricane force winds and seismic forces in residences, and is otherwise not as represented by Defendants;

(h)     Whether Defendants are liable for breach of express warranty;

(i)     Whether Defendants are liable for breach of the implied warranty of merchantability or fitness for a particular purpose;

(j)     Whether Defendants are liable for negligence;

(k)     Whether Defendants are liable for non-disclosure;

(l)     Whether Plaintiffs and Class Members are entitled to compensatory damages, restitution, and the amounts thereof respectively;

(m)     Whether Defendants should be declared financially responsible for notifying all Class Members of the defective Product and for the costs and expenses of repair and replacement of all defective hurricane straps and providing restitution of monies paid and inadequate value given;

(n)     Whether Defendants should be ordered to disgorge, for the benefit of Class Members, all or part of their ill-gotten profits received from the sale of the defective Product and/or to make full restitution to Plaintiffs and Class Members; and

(o)     Whether Defendants should be enjoined from continuing to market the Product, as defined herein, utilizing misleading misrepresentations and omission of material facts.

61.     48. Typicality / (Rule 23(W3f)23(a)(3)). The claim of the representative Plaintiffs are typical of the claims of Class Members, in that the representative Plaintiffs, like all Class Members, own structures in which the defective Product was installed. The representative Plaintiffs, like all Class Members, have suffered a common injury: Plaintiffs, like all Class Members, have or will incur the cost of repairing and/or replacing the defective Product in their

homes and repairing any consequential damage to other building components. The factual basis of Defendants' misconduct is common to all Class Members.

62. 49. Adequacy (Rule 23(a)(4f)(4)). Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective building products, the failure to disclose material information regarding product performance, and violation of consumer protection statutes. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the Class.

63. 50. Predominance of Common Questions (Rule 23(61/311 23(b)(3)). Common questions of law and fact predominate over any questions involving individualized analysis. Fundamentally, there are no material questions of fact or law that are not common to Class Members. Common questions include:

(a)     Whether the Product is subject to premature failure well in advance of its represented useful life even when selected and installed as Simpson recommends;

(b)     Whether the Product is not suitable for its intended use, to secure structures against high winds and seismic forces even when selected and installed as Simpson recommends;

(c)     Whether Defendants knew, or should have known, of the defective nature of the Product before making it available for purchase and use by the Plaintiffs and Class Members;

(d)     Whether Defendants failed to disclose to Plaintiffs and Class Members the defective nature of the Product;

(e)     Whether Defendants, through making statements regarding the Product's qualities and recommended uses, had a duty to disclose the defect;

(f)     Whether Defendant's failure to inform customers that the Product was

susceptible to the failures alleged here was a material omission, the
nondisclosure of which was a deceptive sales practice under the consumer
protection statutes of applicable state law;

(g) Whether Defendant owed a duty to Plaintiffs and Class Members to exercise
reasonable and ordinary care in the testing, design, production, manufacturing,
warranting and marketing of the Product;

(h) Whether Defendants breached their duties to Plaintiffs and Class Members by
designing, manufacturing, producing, marketing, advertising, and selling the
defective Product to Plaintiffs and Class Members;

(i) Whether the facts not disclosed by Defendants to Plaintiffs and Class Member
are material facts;

(j) Whether Defendants knew, or should have known that the Product would
prematurely fail, is not suitable for its intended use to secure structures, and is
otherwise not as represented by Defendant;

(k)Whether, in committing the acts alleged here, Defendants engaged in unfair
competition and in an unfair business practice or practices within the meaning of
California Business and Professions Code § 17200;

(k) (l)Whether Defendants are liable for breach of implied warranty;

(l) (m)Whether Defendants are liable for breach of express warranty;

(m) (n)Whether Defendants are liable for negligence;

(n) (o)Whether Plaintiffs and Class Members are entitled to compensatory damages,
restitution, and the amounts thereof respectively;

(o) (p)Whether Defendants should be declared financially responsible for notifying
all Class Members of the defective Product and for the costs and expenses of
repair and replacement of all defective flooring materials Product and providing
restitution of monies paid and inadequate value given;

(p) (q)Whether Defendants should be ordered to disgorge, for the benefit of Class

Members, all or part of their ill-gotten profits received from the sale of defective

Product and/or to make full restitution to Plaintiffs and Class Members; and

(q)    (r)Whether Defendants should be enjoined from continuing to market the

Product utilizing misleading omission of material facts.

64.    51.Superiority /(Rule 23(bX3Y23(b)(3)). Plaintiffs and Class Members have all

suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and

wrongful conduct. A class action is superior to other available methods for the fair and efficient

adjudication of the subject controversy. Because of the relatively small size of the individual

Class Members' claims, most Class Members likely would find the cost of litigating their

individual claims to be prohibitive and will have no effective remedy at law. Thus, absent a

class action, Class Members will continue to incur damages and Defendants' misconduct will

continue without remedy. The class treatment of common questions of law and fact is also

superior to multiple individual actions or piecemeal litigation in that it conserves the resources

of the courts and the litigants and promotes consistency and efficiency of adjudication. There is

no impediment to the management of this action because of the virtual identity of the common

questions of law and fact to all Class Members.

65.    52.Injunctive Relief /(Rule 23(W2')V 23(b)(2)). Defendants have engaged and

continue to engage in business practices which are unfair, unlawful, and/or fraudulent in

violation of California's Unfair Competition Law (Business & Professions Code §§ 17200

etseqet seq.) and California's False Advertising Law (Business & Professions Code §§ 17500

etseqet seq.) by, among other things, advertising and representing that the Product has

characteristics and benefits that it does not.

66.    53.Plaintiffs seek class-wide injunctive relief on grounds consistent with the

standards articulated in Rule 23(b)(2) that establish final injunctive relief as an appropriate

class-wide remedy, in that Defendants continue to advertise the Product, continue to provide

half-truths and misleading information about the Product, and continue to omit to disclose

material facts regarding the Product.

## ESTOPPEL FROM PLEADING ~~THE~~ THU STATUTE OF LIMITATIONS

67. ~~54.~~Defendants knew or reasonably should have known that the Product was defective before its sale.

68. ~~55.~~Defendants affirmatively represented that the Product was resistant to corrosion and capable of withstanding loading from "earthquakes and high velocity ~~winds."[6]~~ winds."[7] Through these representations, Defendants created a reasonable expectation among ordinary customers and in the construction trades that the Product would have a useful life spanning the life of the home in which the Product was installed.

---

[~~6~~ [7] High Wind-Resistant Construction Application Guide, p. 6.

69. ~~56.~~Based upon Defendants' misrepresentations, Defendants are equitably estopped from asserting a statute-of-limitations defense.

70. ~~57.~~Alternatively, to the extent Defendants pursued a common policy of diverting warranty claims or other customer complaints about the Product through misleading and erroneous investigation, or delaying tactics that induced Plaintiffs or Class Members to not assert their rights in a timely manner, Defendants are equitably estopped from asserting a statute-of-limitations defense.

### FIRST CAUSE OF ACTION
### (Violation of California Consumers Legal Remedies Act ("CLRA"))

71. ~~58.~~Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

72. ~~59.~~Defendants and the Doe Defendants are "persons" as defined by California Civil Code §1761(c).

73. ~~60.~~Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of California Civil Code § 1770(a)(5) and (a)(7) when Defendants represented, through their ~~advertising and other express representations~~material omission to disclose that the Product will corrode even when installed as Simpson recommends, that the Product had benefits or characteristics that it did not actually have ~~and when Defendants made~~

misleading statements about the Product's durability and resistance to corrosion without further disclosing that the Product prematurely failed, damaging Plaintiffs and Class Members. Defendants further violated the CLRA when Defendants falsely represented This omission was also a false representation that the Product was of a particular standard or quality. Finally, Defendants violated the CLRA when they advertised the Product with the intent not to sell it as advertised.

74.    Defendants' deceptive practices were specifically designed to induce Plaintiffs and Class Members to purchase the Product. Defendants sold the Product to Plaintiffs and Class Members, their agents, and/or third parties on whom they relied to persuade them to purchase and install the Product manufactured by Defendants, or to purchase homes in which the defective Product manufactured by Defendants has been installed. Had Defendants fully idisclosed the Defect, Plaintiffs and Class Members would not have purchased homes that contained the Product. Because they did not disclose the Defect, Plaintiffs and class members are at a safety risk from high winds and earthquakes.

75.    62.To this day, Defendants continue to engage in unlawful practices in violation of the CLRA. Defendants continue to conceal the defective nature of the Product, make misleading statements about the Product, and have omitted to disclose, on inquiry from Plaintiffs and Clask Class Members, the Product's defective propensities.

76.    63.Plaintiffs Cary Cooper, Terri Cooper, and Femandina Beach, LLC served Defendants with notice of the violations of the CLRA by serving notice on their Chief Executive Officer by certified mail to their corporate offices, on December 2, 2019. Plaintiffs will amend this complaint to request actual damages once 30 days have elapsed unless Defendants fully comply with the CLRA demand letter.received no response from Defendants with respect to the CLRA notice.

77.    Plaintiffs Simon Nguyen and Thoai Doan served Defendants with notice of the violations of the CLRA by serving notice on their Chief Executive Officer and counsel in the instant action by certified mail to their corporate offices and email, respectively, on February 25,

2020.

WHEREFORE, Plaintiffs on behalf of themselves and for all others similarly situated, demand injunctive relief, plus costs and attorneys' fees pursuant to California Civil Code § 1780(d).

## SECOND CAUSE OF ACTION
### (Violation of California Unfair Competition Law—Unlawful Business Practice)

78. 64. Plaintiffs incorporate the allegations contained in all preceding paragraphs of this Complaint.

79. 65. California Business and Professions Code § 17200 §17200 *et seq.* prohibits acts of unfair competition, which includes unlawful business practices.

80. 66. Defendants engaged in unlawful business practices in that they created and sold a defective Product that prematurely fails due to poor design; failed to disclose material facts concerning the Product's safety; failed to disseminate information known to them about the Product's defect; impliedly warranted to Plaintiffs and Class members that the Product was required for a particular purpose; impliedly warranted that the Product was merchantable; failed to adequately warn Plaintiffs and Class Members of the Product's defect; negligently designed and manufactured the Product; and concealed and suppressed material facts concerning the Product. Plaintiffs' allege that Defendant violated California Civil Code § 1770(a)(5) and (a)(7), violated California's Unfair Competition Law, violated Florida's Unfair and Deceptive Trade Practices Act, breached the express warranty, breach of the implied warranty of fitness, breach the implied warranty of merchantability, was negligent, and committed fraud. the implied warranty of merchantability, was negligent, and committed fraud.

81. 67. As a direct and proximate cause of Defendants' unfair and unlawful methods of competition and unfair, deceptive or unlawful acts or practices, Plaintiffs and Class Members have suffered actual damages in that they own homes and other structures on which the defective Product is or was installed. The Product has failed and will continue to prematurely fail due to its poor design, poor manufacture, and unsuitability for its intended purpose, which will require (or has already required) Plaintiffs and Class Members to incur costs to

prematurely repair and/or replace their hurricane straps, as well as repair property damaged due to the need for such repairs and replacements.

82. 68. As a proximate result of their unlawful practices, Defendants have been unjustly enriched and should be required to make restitution to the Plaintiffs and Class Members pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

## THIRD CAUSE OF ACTION
### (Violation of California Unfair Competition Law - Unfair Business Practice)

83. 69. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

84. 70. Defendants engaged in an unfair business practice by failing to disclose material safety facts concerning the Product that they had a duty to disclose.

85. 71. In California, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.

86. 72. The court may also find a business act unfair when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

87. As a direct and proximate cause of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered actual damages in that they own homes and other structures in which the defective Product is or was installed. The Product will prematurely fail due to inadequate product testing, poor design and/or manufacturing techniques, and poor installation guidelines, which will require Plaintiffs and Class Members to incur costs to prematurely repair and/or replace their humcane hurricane straps.

88. 74. As a proximate result of their unfair practices, Defendants have been unjustly enriched and should be required to make restitution to the Plaintiffs and Class Members pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

## FOURTH CAUSE OF ACTION
### (Violation of Florida's Deceptive and Unfair Trade Practices Act Florida Statute

FIRST AMENDED CLASS ACTION COMPLAINT

**§ 501.201 ~~etseq~~*et seq*. ("FDUTPA"))**

89. ~~75.~~Plaintiffs incorporate the allegations contained in all preceding paragraphs of this complaint.

90. ~~76.~~This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*. The stated purpose of this Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id.* §501.202(2).

91. ~~77.~~Under the FDUTPA, a "Consumer" means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination. Fla. Stat. Ann. § 501.203.

92. ~~78.~~Plaintiffs and Florida Class Members are "consumers" and the transactions at issue in this complaint constitute "trade or commerce" as defined by FDUTPA. *See id.* § 501.203(7)-(8).

93. ~~79.~~FDUTPA declares unlawful, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." M § 501.204(1)

94. ~~80.~~Defendants' material omission alleged above constitutes an unfair and deceptive practice under the FDUTPA. ~~Defendants represented to Plaintiffs and Florida Class Members that the Product had particular qualities, including that the Product met industry standards, that the Product was "free from defects in material or manufacturing, that the Product "enable[s] structures to resist the movement, stress, and loading that results from impact events such as earthquakes and high velocity winds," and that a "properly installed [P]roduct will perform in accordance with the specifications set forth in the applicable Simpson website;" all qualities that were inconsistent with Defendant's knowledge of the Product's performance. Defendants'~~ Simpson failed to inform consumers~~, however,~~ that the Product would prematurely corrode long before a reasonable consumer would expect under the circumstances even when

selected and installed pursuant to Simpson's product recommendations and instructions. Defendants' omission misled reasonable Florida Class Members into purchasing the Product to the consumers' detriment—causing costly repairs and significant safety risks.

95.   81. Furthermore, Defendants employed fraud, deception, false promises, misrepresentation, and the knowing concealment, suppression, or omission of material facts in the sale and advertisement of the Product in the State of Florida by:

(a)     Representing that the Product was suitable for long-term structural support when, at best, Defendants lacked credible evidence to support those claims, and, at worst, Defendants knew the Product would fail prematurely and was not suitable for use against wind and seismic activity;

(a)   (b) Failing to disclose to, or concealing from, consumers, installers, and distributors material facts about the defective nature of the Product; and

(b)   (c) Failing to disclose its own knowleldge knowledge of the defective nature of the Product.

96.   82. Plaintiffs and the Florida Class Members directly or indirectly relied upon Defendants' representations and omissions omission regarding the quality of the Product in their purchase decisions.

97.   83. Plaintiffs and the Florida Class Members were misled by Defendants' misrepresentations and omissions omission.

98.   84. As a Asa direct and proximate result of the FDUTPA violations described above, Plaintiffs and the Florida Class Members have been injured in that because they purchased the defective Product or purchased homes or other structures with the defective Product, based on the misrepresentations and nondisclosures nondisclosure of material facts alleged above.

99.   85. Had Plaintiffs and the Florida Class Members known the defective nature of the Product and the truth concerning Defendants' claims, they would not have purchased or would not have paid what they did for the Product or their structures homes.

100. 86.As a result of Defendants' practices in violation of FDUTPA, Plaintiffs and Florida Class Members suffered an ascertainable loss in the form of monies paid, directly or indirectly, to Defendants for the Product that, contrary to Defendants' representations, prematurely failed.

101. 87.Accordingly, Plaintiffs and Florida Class Members are entitled to such damages, as well as equitable relief, costs, reasonable attorney's fees, and other relief, as are permitted under the law.

**FIFTH CAUSE OF ACTION**
**(Breach of Express**
**Warranty)**

102. 88.Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

103. 89.Plaintiffs and the Class members are "buyers" within the meaning of each of their respective State's warranty statutes. See, e.g., Cal. Civ. Code § 1791(b); Fla. Stat. § 672.103.

104. 90.Defendants are "seller[s]" and/or "manufacturers" and the Product is a "good" within the meaning of each state's warranty statute. *See, e.g.,.* Cal. Civ. Code § 1791, (a)(j); Fla. Stat. §§ 672.103(l)(a)(d) (3) and 672.105.

105. 91.Defendants made express warranties to Plaintiffs and Class Members by describing the goods such that the description became "part of the basis of the bargain," which created an express warranty that the goods "conform to the description." *See, e.g.,* Cal. Civ. Code § 1793; Fla. Stat. § 672.313. However, the product does not have the quality that a buyer would reasonably expect and was therefore not merchantable.

106. 92.Defendants' Product description did not limit the expected useful life of the product.[6] product.[8] The Product was described in such a way that a reasonable consumer would expect the Product to last the entire life of a home and that the Product was capable of resisting

---

6 *See* High Wind-Resistant Construction Application Guide, p. 6.

corrosion and protecting against strong winds and seismic activity for the entire life of the home. The Product did not conform to this description.

107. 93. Any attempt by Defendants to disclaim the express warranty is unenforceable, as the disclaimer failed to mentioned the express warranty of fitness and was not conspicuous as required by law, and was both procedurally and substantively unconscionable, rendering it unenforceable.

108. 94. As a result, Plaintiffs and the Class Members were injured through their [8] *See High Wind-Resistant Construction Application Guide, p. 6.* purchase of unfit products.

109. 95. Under each state's warranty statutes, Plaintiffs and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the product, or the overpayment of amounts they paid for the Product.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranty of Fitness)

110. 96. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

111. 97. Plaintiffs and Class members are "buyers" within the meaning of each of their respective State's implied warranty statutes. *E.g.,* Cal. Civ. Code § 1791(b); Fla. Stat. § 672.103.

112. 98. Defendants are "seller[s]" and/or "manufacturers" and the Product is a "consumer good" within the meaning of each state's warranty statute. Cal. Civ. Code § 1791, (a)(j); Fla. Stat. §§ 672.103(l)(a)(d 672.103(l)(aXd) (3) and 679.1021.

113. 99. Defendants impliedly warranted to Plaintiffs and Class Members that the Product, "at the time of the retail sale," was required for a particular purpose and that "the buyer is relying on the manufacturer's skill to select or furnish suitable goods." Cal. Civ. Code § 1792.1; & 1792; Fla. Stat. § 672.315. However, the Product does not have the quality that a buyer would reasonably expect and was therefore not merchantable for the purpose for which the Product was sold.

114. ~~100.~~Defendants' Product is not fit for the ordinary purposes for which such goods are sold, yet Defendants sold the Product knowing that Plaintiffs and Class Members required the Product for a particular purpose and that the Plaintiffs and Class Members relied on the manufacturer's skill to furnish suitable goods.

115. ~~101.~~Any attempt by Defendants to disclaim the implied warranty of fitness is unenforceable, as the disclaimer failed to mentioned the implied warranty of fitness and was not conspicuous as required by law, and was both procedurally and substantively unconscionable, rendering it unenforceable.

116. ~~102.As a~~ As a result, Plaintiffs and Class Members were injured through their purchase of unfit products.

117. ~~103.~~Under each state's implied warranty of fitness statutes, Plaintiffs and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the product, or the overpayment of amounts they paid for the Product.

## SEVENTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

118. ~~104.~~Plaintiffs incorporate the allegations contained in all preceding paragraphs of this complaint.

119. ~~105.~~Plaintiffs and Class members are "buyers" within the meaning of each of their respective State's implied warranty statutes. *E.g.,* Cal. Civ. Code § 1791; Fla. Stat. § 672.103.

120. ~~106.~~Defendants are "seller[s]" and the Product is a "consumer good" within the meaning of each state's warranty statutes. Cal. Civ. Code § 1791, (a)(j); Fla. Stat. §§ 672.103(l)(a)(d) (3) and 679.1021.

121. ~~107.~~Defendants impliedly warranted to Plaintiffs and Class Members that the product was "merchantable" within the meaning of Cal. Civ. ~~Codei§~~ Code § 1792.1; & 1792; Fla. Stat. § 672.314. However, the Product does not have the quality that a buyer would reasonably expect and was therefore not merchantable.

122. ~~108.~~Defendants' product is not fit for the ordinary purposes for which such goods

are sold.

123. ~~109.~~Any attempt by Defendants to disclaim the implied warranty of merchantability is unenforceable, as the disclaimer failed to mentioned the implied warranty of merchantability and was not conspicuous as required by law, and was both procedurally and substantively unconscionable, rendering it unenforceable.

124. ~~110.~~As a result, Plaintiffs and Class Members were injured through their purchase of non-merchantable products.

125. ~~111.~~Under each state's implied warranty statutes, Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the product, or the overpayment of amounts they paid for the Product.

**EIGHTH CAUSE OF ACTION**
**(Negligence)**

126. ~~112.~~Plaintiffs incorporate the allegations contained in all preceding paragraphs of this complaint.

127. ~~113.~~Defendants had a duty to exercise reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and Class Members when designing, formulating, manufacturing, compounding, testing, inspecting, packaging, labeling, distributing, marketing, promoting, advertising, selling, warning, and researching the Product, including taking action to reasonably provide notification to Plaintiffs and Class Members of the Product's propensity to prematurely corrode and deteriorate.

128. Defendants breached their duty to Plaintiffs and Class Members by not exercising reasonable care~~,~~ to avoid causing foreseeable risk of harm to Plaintiffs and Class Members. Defendants carelessly designed and manufactured a product that prematurely corrodes when installed in homes even when selected and installed pursuant to Simpson's recommendations and instructions. ~~114.       Defendants~~ Simpson did not take sufficient action to reasonably provide notification to Plaintiffs and Class Members of the Product's propensity to prematurely corrode and deteriorate. ~~Repairs~~ The Product is a distinct product and is not so

integrated into the houses in which it is installed such that repairs necessarily include harm and damage to other products and property including other components of the home, so the economic loss rule does not apply.

129. 115.Defendants breached their duty of care, causing Plaintiffs and Class Members to make costly repairs to their homes already or in the foreseeable future. Defendants' careless action, or inaction, was the legal cause of Plaintiffs and Class Members' harm.

130. 116.Defendants failed to use reasonable care to warn about the Product's dangerous condition or about facts that made the Product likely to be dangerous and a substantial safety risk.

131. 117.Defendants knew or reasonably should have known that the Product was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner.

132. 118.Defendants knew or reasonably should have known that Plaintiffs and Class Members would not realize the danger.

133. 119.Defendants filed to adequately warn of the danger. A reasonable manufacturer under the same or similar circumstances would have warned of the danger.

134. 120.As a As a result of Defendants' failure to warn, Plaintiffs and Class Members were harmed and repairs resulting from Defendants' failure to warn caused or will cause damage to other property.

**NINTH CAUSE OF ACTION**
**(Fraud/Non-Disclosure/Concealment)**

135. 121.Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

136. 122.As alleged above, Defendants concealed and suppressed material facts concerning the Product.

137. 123.Defendants had a duty to disclose facts concerning the inability of the Product, even when selected and installed pursuant to Simpson's guidelines and instructions, to withstand environmental factors that cause premature corrosion because they. These facts were

fully known and/or accessible only to the Defendants, who had superior knowledge and access to the facts, and the Defendants knew they were not fully known to or reasonably discoverable by Plaintiffs and Class Members. The omitted and concealed facts were material.

138.    124. Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, and did so at the expense of Plaintiffs and the Class Members.

139.    125. Because the omitted facts were material, Plaintiffs and all Class Members are entitled to a presumption and would have acted differently - not purchasing the Defendants' Product or paying less for it - if the true facts had been disclosed to them. And, in fact, Plaintiffs and the Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

140.    126. Plaintiffs and the Class Members' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class Members.

141.    127. Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members sustained damage because they purchased homes with Simpson hurricane straps that they would not have otherwise purchased.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendants, and each of them, and in favor of Plaintiffs, and to award the following relief:

1.    Certification of both National and , Florida , and California classes, and appointing Plaintiffs as class representatives;

2.    Appointment of the undersigned as counsel for the proposed Classes;

3.    Injunctive relief requiring Defendants to replace and/or repair all Products installed in structures owned by the Plaintiffs and Class Members;

4.    A declaration that Defendants must disgorge, for the benefit of the Plaintiffs and Class Members, all or part of its ill-gotten profits received from the sale of defective Product,

FIRST AMENDED CLASS ACTION COMPLAINT

and/or to make full restitution to Plaintiffs and the Class Members;

5.    Damages, pursuant to the Fifth, Sixth, Seventh, Eighth and Ninth Causes of Action (~~Plaintiffs will amend the complaint to~~ except that the California plaintiffs do not seek damages under the ~~First Cause of Action once 30 days have elapsed unless Defendants have provided the requested relief herein~~CERA and will amend to seek them if Simpson does not satisfy their CERA demand within 30 days);

6.    Restitution;

7.    Costs and attorneys' fees,

8.    Leave to amend to conform to the evidence presented at trial; and

9.    Orders granting such other and further relief as may be appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

RESPECTFULLY SUBMITTED AND DATED this ~~2nd~~ 25th day of ~~December~~February, ~~2019~~ 2020.

ROBINS KAPLAN LLP

By:    /s/ Michael F. Ram
       Michael F. Ram, SBN 104805
       Email: mram@robinskaplan.com
       Marie N. Appel, SBN 187483
       Email: mappel@robinskaplan.com
       ROBINS KAPLAN LLP
       2440 West El Camino Real, Suite 100
       Mountain View, CA 94040
       Telephone: (650) 784-4040
       Facsimile: (650) 784-4041

       Juvian J. Hernandez, *admitted pro hac vice*~~pro hac vice pending~~
       JHemdandez@robinskaplan.com
       ROBINS KAPLAN LLP
       800 LaSalle Avenue, Suite 2800
       Minneapolis, MN 55402
       Telephone: (612) 349-8500

       Adam L. Hoipkemier, *admitted pro hac vice*~~pro hac vice pending~~
       Email: Adam@ehdhlaw.com
       EPPS, HOLLOWAY, DELOACH &
       HOIPKEMIER, LLC
       10 Lenox Pointe

Atlanta, Georgia 30324
Telephone: (706) 508-4000
Facsimile: (706) 842-6750

Kevin E. Epps, *admitted pro hac vice*~~pro hac vice pending~~
EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
1220 Langford Drive, Building 200-101
Watkinsville, Georgia 30677
Telephone: (706) 508-4000
Facsimile: (706) 842-6750

Jeffrey B. Cereghino, SBN #099480
jbc@cereghinolaw.com
CEREGHINO LAW GROUP
101 Montgomery Street, Suite 1800
San Francisco, California  94104
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

Graham B. LippSmith, SBN 221984
Email: glippsmith@klwtlaw.com
Celene Chan Andrews, SBN 260267
Email: candrews@klwtlaw.com
KASDAN LIPPSMITH WEBER TURNER LLP
360 East 2nd Street, Suite 300
Los Angeles, California 90012
Telephone: 213-254-4800
Facsimile: 213-254-4801

*Attorneys for Plaintiffs*