Michael F. Ram SBN 104805
mram@robinskaplan.com
Marie N. Appel SBN 187483
mappel@robinskaplan.com
ROBINS KAPLAN LLP
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
P: (650) 784-4040; F: (650) 784-4041

Juvian J. Hernandez, *admitted pro hac vice*
JHerndandez@robinskaplan.com
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

Jeffrey B. Cereghino, SBN 099480
jbc@cereghinolaw.com
CEREGHINO LAW GROUP
649 Mission Street, 5th Floor
San Francisco, California 94105
P: (415) 433-4949; F: (415) 433-7311

Kevin E. Epps, *admitted pro hac vice*
Kevin@ehdhlaw.com
Adam L. Hoipkemier, *admitted pro hac vice*
Adam@ehdhlaw.com
EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
1220 Langford Drive, Building 200-101
Watkinsville, Georgia 30677
P: (706) 508-4000; F: (706) 842-6750

Graham B. LippSmith, SBN 221984
glippsmith@klwtlaw.com
Celene Chan Andrews, SBN 260267
candrews@klwtlaw.com
KASDAN LIPPSMITH WEBER TURNER
LLP
360 East 2nd Street, Suite 300
Los Angeles, CA 90012
P: (213) 254-4800; F: (213) 254-4801

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY W. COOPER, TERRI G. COOPER, FERNANDINA BEACH, LLC, SIMON NGUYEN, & THOAI DOAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIMPSON STRONG-TIE COMPANY, INCORPORATED, a California corporation; SIMPSON MANUFACTURING COMPANY, INCORPORATED, a Delaware corporation; and DOES 1 through 200, inclusive,<br><br>Defendants. | No. 3:19-cv-07901-TSH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date: June 11, 2020<br>Time: 10:00 a.m.<br>Dept.: Courtroom G-15th Floor<br>Judge: Hon. Thomas S. Hixson |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   RULE 11 MEET AND CONFER EFFORTS ................................................. 2

III.  LEGAL STANDARD .................................................................................... 3

IV.   THE COURT SHOULD DENY THE RULE 11 MOTION IN ITS ENTIRETY. .......... 4

      A.    Simpson's two "warnings" are unauthenticated and inadmissible. ...................... 4

      B.    Simpson failed to establish that its two "warnings" reached Plaintiffs or the professionals involved in building their homes. ................................... 5

      C.    Simpson failed to establish that its two "warnings" reached *any* homeowner consumer. ........................................................................... 6

      D.    Simpson failed to establish that it ever warned anybody about the specific risk of failure at issue here—the lack of concrete cover inherent in the Products' design and installation. ........................................................... 7

      E.    The FAC allegations are consistent with those of the Original Complaint. ......... 8

      F.    The economic loss rule does not apply to Plaintiffs' fraud-based claims. ......... 10

      G.    Under both California and Florida law, Plaintiffs as end users need not allege reliance. ............................................................................. 11

            1.    California law does not require reliance for end users. .......................... 11

            2.    Florida law does not require reliance for end users. ............................. 13

      H.    The Fernandina Beach owners bought their property as a vacation home and are therefore consumers under the CLRA. .................................... 14

V.    Conclusion ............................................................................................... 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aholelei v. Dep't of Pub. Safety*,
5
    488 F.3d 1144 (9th Cir. 2007) ................................................................9

6

*Benedict v. Hewlett-Packard Co.*,
    No. 13-CV-00119-LHK, 2014 U.S. Dist. LEXIS 7323
7
    (N.D. Cal. Jan. 21, 2014) .......................................................................3

8

*Clothesrigger, Inc. v. GTE Corp.*,
    191 Cal. App. 3d 605 (1987) ..............................................................11
9

10

*Davis v. HSBC Bank*,
    691 F.3d 1152 (9th Cir. 2012) ...............................................................5

11

*Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*,
12
    No. 8:09-CV-607-T-27, 2010 U.S. Dist. LEXIS 28865
    (M.D. Fla. Mar. 24, 2010) ...................................................................13
13

14

*Finney v. Ford Motor Co.*,
    2018 U.S. Dist. LEXIS 93823 (N.D. Cal June 4, 2018) ......................10

15

*Gaiardo v. Ethyl Corp.*
16
    835 F.2d 479 (3rd Cir. 1987) .................................................................4

17

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005) .................................................................3

18

*HTP, Ltd. v. Lineas Aeares Costarricenses, S.A.*,
19
    685 So.2d 1238 (Fla. 1996) ................................................................11

20

*In re Bob Rigby, Inc.*,
    62 B.R. 900 (M.D. Fla. 1986) .............................................................13
21

22

*In re Keegan Mgmt. Co., Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) ..............................................................3, 12
23

24

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ..........................................8, 10, 12

25

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*
    *Products Liab. Litig.*,
26
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..........................................12, 13

27

---

*Lennar Homes, Inc. v. Masonite Corp.*,
    32 F. Supp. 2d 396 (E.D. La. 1998) ..............................................................................13, 14

*Manheim v. Ford Motor Co.*,
    201 So.2d 440 (Fla. 1967) ...................................................................................................13

*Masimo Corp. v. Mindray DS USA, Inc.*,
    No. SACV 12-02206-CJC (JPRx), 2013 U.S. Dist. LEXIS 197447
    (C.D. Cal. Dec. 4, 2013) ...................................................................................................4, 5

*McVicar v. Goodman Glob., Inc.*,
    1 F. Supp. 3d 1044 (C.D. Cal. 2014) .................................................................................12

*Monsanto Agric. Prods. Co. v. Edenfield*,
    426 So. 2d 574 (Fla. Dist. Ct. App. 1982) .........................................................................13

*Network Caching Tech., LLC v. Novell, Inc.*,
    No. C-01-2079 VRW, 2003 U.S. Dist. LEXIS 9881
    (N.D. Cal. Mar. 21, 2003) ................................................................................................3, 4

*Operating Eng'rs Pension Trust v. A-C Co.*,
    859 F.2d 1336 (9th Cir. 1988) .............................................................................................4

*Orr v. Bank of Am.*,
    285 F.3d 764 (9th Cir. 2002) ...............................................................................................5

*PAE Gov't Servs. v. MPRI, Inc.*,
    514 F.3d 856 (9th Cir. 2007) ...............................................................................................9

*Precht v. Kia Motors Am., Inc.*,
    No. SA-CV-141148-DOC-MANX, 2014 U.S. Dist. LEXIS 185202, 2014
    WL 10988343 (C.D. Cal. Dec. 29, 2014) ..........................................................................12

*Renaissance Hotel Assoc. v. Hotel Emps. & Rest. Emps. Union, Local No. 2, No.
    C-91-0530 MHP*,
    1993 U.S. Dist. LEXIS 2132 (N.D. Cal. Feb. 22, 1993) ......................................................2

*Roberts v. Electrolux Home Prods.*, No. CV 12-1644 CAS (VBKx), 2013 U.S.
    Dist. LEXIS 18548810 (C.D. Cal. Mar. 4, 2013) ................................................................12

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ........................................................................................................10

*S. Broad. Grp. v. Gem Broad.*,
    145 F. Supp. 2d 1316 (M.D. Fla. 2001) .............................................................................14

*Smith v. Wm. Wrigley Jr. Company*,
    663 F. Supp. 2d 1336 (S.D. Fla. 2009) ...............................................................................13

*Weinstat v. Dentsply Int'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) ........................................................................12

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ..........................................................................11

**Rules**

Fed. R. Civ. P. Rule 11 ..................................................................1, 2, 3, 4, 5, 8, 10, 11

Fed. R. Civ. P. Rule 8 ........................................................................................10

**Other Authorities**

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial ¶ 17:81 (April 2019) .............................4

https://web.archive.org/web/20010805180328/www.strongtie.com/***fr_distributor***.html .............7

# I.    INTRODUCTION

During decades of selling estimated millions of galvanized hurricane straps (the "Product"), Defendants Simpson Strong-Tie Company, Inc. and Simpson Manufacturing Company, Inc. (collectively "Simpson") claimed that the Product's purpose was to protect homes against hurricane force winds and seismic activity. Unfortunately, the Products installed in Plaintiffs' homes are corroding and no longer offer sufficient protection, bringing rise to this consumer protection class action. The specific defect at issue is the Product's intended, designed, and as-installed lack of concrete cover where the Products exit home foundation slab edges. Over decades of selling the Product, Simpson never once warned *anyone*, and particularly not homeowners like Plaintiffs here, that the lack of concrete cover inherent in the Product's design and installation made it prone to corrode and fail.

Simpson's primary defense thus far is also its primary basis for the Rule 11 motion, namely that Simpson provided adequate warnings about the corrosion risks the Products posed. Thus far, Simpson's argument on its purported "warnings" rests exclusively on: (1) a 2001 "Corrosion Resistance" reference that was so obscure Simpson's counsel had to hire a third-party service to scour archived Internet pages to locate it; and (2) a 2016 Construction Application that referenced "Corrosion Information." Neither of these documents has been authenticated or is admissible. No Simpson witness with any personal knowledge verified the authenticity, creation, existence, publication, duration of publication, dissemination, intended audience, reach, or purpose of these two isolated references. Rather, Simpson's counsel attached these references to his own declaration, failing even to attempt to authenticate and admit the critical "evidence" for both its motion to dismiss and its Rule 11 motion.

Even worse, if it ever existed at all, Simpson created the 2001 "Corrosion Resistance," long after Fernandina Plaintiff's home construction in 1997. Plaintiffs' First Amended Complaint ("FAC") ¶ 18. Simpson created the 2016 "Corrosion Information" long after *all* of the Plaintiffs' home construction. *Id.* at ¶ 14 (Cooper home construction in 2004), ¶ 18 (Fernandina home construction in 1997), & ¶ 21 (Nguyen/Doan home construction in 2007).

---

Finally, Simpson neither directed these purported "warnings" to homeowner consumers such as Plaintiffs, nor did Simpson fully disclose or warn *anyone* of the specific risk of Product failures at issue in this case—namely that Simpson designed the Products so that they necessarily lack concrete cover at home foundation slab edges and are, thus, prone to corrosion. None of Simpson's materials in support of its motion to dismiss and the Rule 11 motion even touches on the specific, inherent, and known corrosion risks inherent in the Products' lack of concrete cover at home foundation slab edges. This specific and particular risk materially differs from whatever else Simpson may have provided at some unestablished point in time in "Corrosion Information" references that generally discuss how the presence of high levels of corrosive chemicals from environmental factors such as salt air, fertilizers, and soils may affect all metal products. Since Simpson's purported "warnings" fail actually to address and advise of the Product's specific corrosion risks due to lack of concrete cover that are at issue here and because Simpson's "warnings" altogether fail to warn homeowner consumers, Simpson's motion falls far short of meeting the substantial Rule 11 burdens of showing that Plaintiffs either filed a frivolous complaint or filed their lawsuit for an improper purpose.

Simpson's contention that its defense is so airtight that the Court should issue Rule 11 sanctions against Plaintiffs for even filing this case is not only without merit, but it ironically warrants imposing Rule 11 sanctions against Simpson for filing a frivolous Rule 11 motion. *Renaissance Hotel Assoc. v. Hotel Emps. & Rest. Emps. Union, Local No. 2, No. C-91-0530 MHP*, 1993 U.S. Dist. LEXIS 2132, at *3 (N.D. Cal. Feb. 22, 1993).

Accordingly, Plaintiffs respectfully request that the Court deny Simpson's Rule 11 motion in its entirety.

## II.    RULE 11 MEET AND CONFER EFFORTS

On March 12 and March 31, 2020, Plaintiffs' counsel responded to Simpson's first and second Rule 11 correspondence, respectively. On April 3, the parties met and conferred via teleconference. During these meet and confer exchanges, Plaintiffs noted that sanctions were unwarranted and pointed to specific examples of evidentiary support in the operative First

1    Amended Complaint, *e.g.*, paragraphs 48-53.  *See* Ex. B to Howard Decl. (ECF 45-2).

2    Plaintiffs pointed out that should the Court deny or deny in part Simpson's Motion to Dismiss

3    the First Amended Complaint and/or grant leave to amend the complaint, Simpson's Rule 11

4    motion would waste and misuse the Court and parties' time and resources.  *Id.*; Ex. D to

5    Howard Decl. (ECF 45-4).  Plaintiffs also pointed out that Rule 11 "should not be employed to

6    test the legal sufficiency or efficacy of allegations in the pleadings," which unfortunately

7    Simpson has done here since its Rule 11 "warnings" arguments overlap with, and rely on, the

8    same arguments and documents in the pending motion to dismiss.  *Id.; see Network Caching*

9    *Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 U.S. Dist. LEXIS 9881, at *20-21 (N.D.

10   Cal. Mar. 21, 2003) (quoting Committee Notes on Amendments to Fed. R. Civ. P., 146 F.R.D.

11   401, 590 (1993)).

12   **III.    LEGAL STANDARD**

13       Courts may impose Rule 11 sanctions in only two instances: (1) where a litigant makes

14   a "frivolous filing," i.e., files a pleading or other paper which no competent attorney could

15   believe was well-grounded in fact and warranted by law, and (2) where a litigant files a

16   pleading or paper for an "improper purpose," *e.g.,* personal or economic harassment. *See*

17   *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 U.S. Dist. LEXIS 7323, at *14

18   (N.D. Cal. Jan. 21, 2014) (citing *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987)). A

19   frivolous filing is one that is "both baseless and made without a reasonable and competent

20   inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (citation

21   omitted) (emphasis in original). Neither basis exists here.

22       Simpson fails to establish either prong of the frivolous determination, which are: (1)

23   whether the complaint is legally or factually baseless from an objective perspective, and (2) if

24   the attorney has conducted a reasonable and competent inquiry before signing and filing it.

25   *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citation and internal quotation marks

26   omitted). Sanctions are reserved "for the rare and exceptional case where the action is clearly

27   frivolous, legally unreasonable or without legal foundation, or brought for an improper

1  purpose."[1]  *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

2  Rule 11 "should not be employed to test the legal sufficiency or efficacy of allegations

3  in the pleadings." *See Network Caching Tech., LLC*, *supra*, 2003 U.S. Dist. LEXIS 9881, at

4  *20-2 (quoting Committee Notes on Amendments to Fed R of Civ P, 146 F.R.D. 401, 590

5  (1993) (finding that even though plaintiff failed to conduct reasonable pre-filing investigation,

6  the court "is unable to ascertain definitively whether [plaintiff's] infringement claims are

7  without any merit"); *see also Masimo Corp. v. Mindray DS USA, Inc.,* No. SACV 12-02206-

8  CJC (JPRx), 2013 U.S. Dist. LEXIS 197447, at *5 (C.D. Cal. Dec. 4, 2013) ("If [defendant] in

9  fact believes that there is no evidence to support [plaintiff's] claim, it should file a motion for

10  summary judgment asserting as much. *See* Fed. R. Civ. P. 56. . . . It should not, however, use

11  the Rule 11 filing as an end run around the procedures and protections of Rule 56.").

12  **IV.    THE COURT SHOULD DENY THE RULE 11 MOTION IN ITS ENTIRETY.**

13  **A.    Simpson's two "warnings" are unauthenticated and inadmissible.**

14  The core of Simpson's argument is that Plaintiffs lack legal and evidentiary support for

15  their claims due to two purported "warnings."  The declaration by Simpson's counsel attaching

16  these critical references falls well short of what is required to authenticate or admit these

17  documents into evidence.  Mauch Dec. ¶¶ 3-4 (ECF 36). Even worse, the declaration by

18  Simpson's counsel fails to come even close to shedding any light on important information to

19  weigh whether these references even constituted adequate warnings such as their creation,

---

[1] Not only are sanctions typically reserved for rare situations, a threat of sanctions can itself violate Rule 11:

> Threats of Rule 11 sanctions are improper where the other side's position is plausible (even if it is incorrect). Seeking sanctions under such circumstances is itself sanctionable conduct: "The use of Rule 11 . . . has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct." [*Gaiardo v. Ethyl Corp*. (3rd Cir. 1987) 835 F.2d 479, 485].

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial ¶ 17:81 (April 2019).

existence, use, publication, duration of publication, dissemination, intended audience, reach, or purpose.  *See id.*

The Court should ignore Simpson's purported "warnings" from its overlapping arguments in its motion to dismiss unauthenticated and inadmissible extrinsic evidence.  For a Court to consider extrinsic evidence on a motion to dismiss, it must apply summary judgment standards after giving notice that it may look beyond the pleadings.  *Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012) (*quoting Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)).  Given that the Rule 11 motion seeks severe sanctions against Plaintiffs on the same "warnings" arguments from the motion to dismiss, there's no reason for the Court to overlook the most basic rules on evidence authentication and admissibility. Applying those longstanding rules, Simpson's attorney declaration falls well short of authenticating the purported "warnings" for admission and, thus, the Court's consideration. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) (rejecting exhibits proffered through a party's attorney declaration and providing that "documents authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'" [citation omitted]).  Simpson's attorney is not a person through whom the purported "warnings" could ever be admitted into evidence.  And, particularly given that the purported 2001 "Corrosion Resistance" reference exists as an archive on a third-party site, it is doubtful any Simpson witness could ever authenticate it for admission.

**B.    Simpson failed to establish that its two "warnings" reached Plaintiffs or the professionals involved in building their homes.**

Even were the Court to consider Simpson's purported "warnings," Simpson failed to demonstrate they were effective, let alone even existed or were adequately available in time for them to matter in construction on Plaintiffs' homes.

Simpson's 2001 "Corrosion Resistance" reference was buried so deep in the recesses of the Internet that Simpson's counsel could only locate and retrieve it using a third-party Internet

archive service.  ECF 36, Mauch Dec. ¶ 4.  Third party Internet archives that consumers would likely have to pay money to those third parties to access are hardly places for effectively disseminating product warnings.

Even worse, the 2016 "Corrosion Information" reference on its face did not even exist when Plaintiffs' homes were built in 1997, 2004, and 2007.  ECF 36-1, pp. 12-13.

Thus, Simpson failed to establish that either of its two "warnings" even existed in time to adequately warn Plaintiffs, let alone anyone involved in building their homes.

**C.** **Simpson failed to establish that its two "warnings" reached *any* homeowner consumer.**

Simpson's broad interpretation of these "warnings" also glosses over the key issues in the operative First Amended Complaint. Plaintiffs allege not that Simpson never warned anyone of any corrosion "issue," but that it did not *adequately* warn *consumers* of the *extent of Simpson's knowledge*. FAC ¶ 51 ("Simpson never *adequately* warned *consumers* that the Product would prematurely corrode…) (emphasis added). Simpson does not even argue that Plaintiffs saw its "warnings," that Plaintiffs could have ever seen these "warnings," or that Simpson ever even attempted to publish these "warnings" to homebuyers in the regular course of commerce on these products by, for example, giving builders a sticker to prominently display.[2]

Simpson is aware that the developers and homebuilders are not the intended ultimate consumers of the Product. FAC ¶¶ 32-34. In 2017, a Simpson Senior Territory Manager for Hawaiʻi and the Pacific region testified that homeowners are one category of individuals who relied on Simpson's Products to provide structural integrity in the event of a hurricane and to prevent major damage. The Senior Territory Manager also testified that the homeowner is the ultimate individual receiving protection under the warranty. *Id*. ¶ 35.

Notwithstanding Simpson's acknowledgement that homeowners are the end-user consumers for the Products, Simpson did not distribute its "warnings" to them.  Simpson's

---

[2] As discussed *infra* § IV.G, reliance is not required for Plaintiffs' warranty claims.

1    2001 "Corrosion Resistance" reference is buried in the last pages of technical product

2    information in what appears to be a webpage Simpson made for "distributors." *See* ECF 36-2,

3    p. 28. ("https://web.archive.org/web/20010805180328/www.strongtie.com/*fr_distributor*.html"

4    (emphasis added)).  Simpson's 2016 "Corrosion Information" reference is similarly limited in

5    distribution on its face, since it appears in Simpson's 81-page "High-Wind Resistant

6    Construction Applications Guide" intended for builders, not homeowners. ECF 36-1 p. 3 ("This

7    guide is to help you easily locate the specific connector **you need for building** in high-wind

8    areas. Whether you search by product or application, Simpson Strong-Tie has the right

9    connector to help **you build** safe, strong structures." *Id*. at p. 3 (emphasis added)).

10          Even assuming that building professionals received this information in time for it to

11   have mattered on Plaintiffs' homes—which Simpson has not established—Simpson failed to

12   demonstrate builders properly appreciated the scope and severity of the risk as Simpson

13   understands it. *See e.g.*, ECF 36-1 at p. 5 ("We help people build safer structures economically.

14   We do this by designing, engineering and manufacturing 'No Equal' structural connectors and

15   other related products that meet or exceed our customers' needs and expectations.").  Simpson

16   even went so far as to downplay or even outright dismiss corrosion as a potential means or

17   indicator of failure, rendering any "warning" meaningless.  ECF 36-1 at p. 11 ("It is common to

18   see some corrosion in outdoor applications. Even stainless steel can corrode. The presence of

19   some corrosion does not mean that load capacity has been affected or that failure is

20   imminent.").

21          **D.      Simpson failed to establish that it ever warned anybody about the specific
                      risk of failure at issue here—the lack of concrete cover inherent in the
22                    Products' design and installation.**

23          Finally, the purported "warnings" do not even address the specific risks at issue in this

24   case, namely that the Products lack concrete cover at the home foundation slab edges, resulting

25   in corrosion.  Simpson's 2001 "Corrosion Resistance" and 2016 "Corrosion Information"

26   references both discuss general risks posed by the presence of corrosive chemicals from salt air,

27   fire-retardant, fertilizers, and pressure-treated wood.  The presence of these environmental

corrosive chemicals generally pose risks to *all* of Simpson's metal framing products.  However, neither the 2001 "Corrosion Resistance" nor the 2016 "Corrosion Information" references specifically warn about the particular, known risk of failure inherent in *only* the Products at issue here since they are, inherently by design and through installation, embedded in concrete with inadequate cover at the foundation slab edges.  The lack of concrete cover poses a separate, specific risk of corrosion that is particular to the Products, independent of the more general risks that the presence of corrosive chemicals poses to all of Simpson's metal framing products.  See FAC., Ex. 1.

Despite Simpson's sales of what is likely millions of the Products at issue here over decades, Simpson failed to produce even *one single reference* disclosing that these Products prematurely fail when embedded in concrete because they have inadequate cover at foundation slab edges. In the *In re MyFord Touch Consumer Litigation*, Judge Chen wrote, "it would be odd to say that a generic disclosure of possible defects should insulate Ford from liability if it actually knew of a specific defect."  46 F. Supp. 3d 936, 957 (N.D. Cal. 2014).  The same is true here where, although Simpson might have provided some information about how the presence of certain chemicals may pose generic corrosion risks to all of its metal framing products, the Court should not insulate Simpson from liability for the particular, separate, and specific defects it knew were inherent in the Products at issue here.  See FAC, Ex. 1.

Even assuming Simpson's 2001 "Corrosion Resistance" and 2016 "Corrosion Information" references were warnings at all, Simpson fell well short of establishing that it adequately disclosed or warned of the specific defects at issue in this case to anyone in the chain of commerce on the Products at any time.  Accordingly, the Court should deny the motion for Rule 11 sanctions.

### E.    The FAC allegations are consistent with those of the Original Complaint.

Plaintiffs' allegations in the FAC do not contradict those in the Original Complaint ("OC"). The "Corrosion Warnings" in the Simpson literature do not sufficiently inform *consumers* of the extent of the failures and of the dangerous effects of corrosion to the Product

within their homes. Specifically, the "warnings" do not disclose **the specific risk of failure in HD straps and mudsill anchors when embedded in concrete with a lack of cover at the slab edges.** Despite additional allegations regarding Simpson's letter describing the inherent problems with the Product's corrosion in Hawai'i, see FAC, Ex. 1, Simpson continues to unreasonably insist that the new allegations contradict the OC.

The new allegations add more, but are not contradictory. *Compare, e.g.*, OC ¶ 37 ("Simpson never adequately warned consumers that the Product would prematurely corrode") with FAC ¶ 39 ("Simpson never adequately disclosed that the Product is subject to premature corrosion, rusting, failure, deterioration, and disintegration ("the Defect"). Its "Corrosion Warnings," which were not labeled warnings and which few if any class members ever see, and which none of the named Plaintiffs saw, do not adequately disclose that Simpson is selling the Product into areas where it will foreseeably corrode long before its usual life, under reasonably foreseeable conditions, even if the installer reasonably follows the installation instructions." ). *Compare, e.g.,* OC ¶ 40 ("omitting to disclose to Plaintiffs and the Class Members, their agents, or contractors, material facts . . . including, spalling") *with* FAC ¶ 40 ("Simpson never discloses, that . . . as water collects and chlorides develop (for example, after rain), the Product prematurely rusts, spalls the concrete, and gradually loses strength to secure the house. Further, gaps, crevices, and spalls at and below the Product's embedment line form and moisture and corrosive elements accumulate and concentrate in the gaps and crevices, causing aggressive corrosion.").

Even were the allegations in the FAC contradictory to those in the OC, this is not a ground for dismissal. *PAE Gov't Servs. v. MPRI, Inc*., 514 F.3d 856, 860 (9th Cir. 2007) ("[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations."); *see also Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1149 (9th Cir. 2007) ("in light of the liberal pleading policy embodied in Rule [8] ... a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case."). Since dismissal is not

1  warranted, the Court should deny Simpson's request for Rule 11 sanctions based on Simpson's

2  comparison of allegations between the complaints.

3      **F.      The economic loss rule does not apply to Plaintiffs' fraud-based claims.**

4      Both California and Florida carve out applicable exceptions to the economic loss rule.

5  In California, a plaintiff may recover under both tort and contract theories when one party

6  commits a fraud during contract formation or performance. *Robinson Helicopter Co. v. Dana*

7  *Corp.*, 34 Cal. 4th 979, 988 (2004). The duty that gives rise to tort liability is either independent

8  of the contract or arises from conduct which is intentional. *Id*. at 990. California carved out this

9  exception to promote a business climate free of deceptive practices. *Id*. at 992. "The economic

10  loss rule poses no barrier to a properly pled fraudulent inducement claim: '[I]t has long been

11  the rule that where a contract is secured by fraudulent representations, the injured party may

12  elect to affirm the contract and sue for fraud.'" *Finney v. Ford Motor Co*., 2018 U.S. Dist.

13  LEXIS 93823, at *9 (N.D. Cal June 4, 2018).

14      Simpson committed fraud by omission, which caused Plaintiffs damage and even

15  exposed Plaintiffs to the possibility of physical injury. FAC ¶¶ 140-41. As in *Robinson*,

16  Simpson's fraudulent conduct, which jeopardized the structural integrity of Plaintiffs' homes,

17  jeopardized physical safety. *Id*. ¶¶ 15, 18-19, 20-22, 43. In addition, Simpson failed to disclose

18  material facts to all Plaintiffs, an action that the named Plaintiffs could not rationally anticipate.

19  *Id*. ¶¶ 138-40. Simpson's omissions deviated so far from any socially useful business practice

20  that allowing tort remedies *supports* California's policy interest in protecting commerce and

21  contractual predictability. Thus, Plaintiffs' tort claims survive California's economic loss rule

22  and Simpson's motion should be denied.

23      Similarly, Florida recognizes an exception to the economic loss rule for fraudulent

24  statements that cause the plaintiff to enter into the contract. *In re MyFord Touch Consumer*

25  *Litig.*, 46 F. Supp. 3d at 965 (economic loss rule not applicable under Florida law where fraud

26  claims based on "a statutory duty, a duty not to fraudulently induce another to enter a contract,

27  and a duty to disclose"); *HTP, Ltd. v. Lineas Aeares Costarricenses, S.A.*, 685 So.2d 1238,

1239 (Fla. 1996). Had Simpson disclosed all material facts related to the dangerous scope of the Product's propensity to fail, Plaintiffs would not have purchased the homes with the defective product. FAC ¶¶ 74, 99, 139. Thus, Plaintiffs' tort causes of action satisfy the fraud exception to Florida's economic loss rule.

Simpson argues that Plaintiffs should be sanctioned for alleging in the alternative that, "The Product is a distinct product and is not so integrated into the houses in which it is installed such that repairs *necessarily* include harm and damage to other products and property including other components of the home, so the economic loss rule does not apply." FAC ¶128. Of course repairs to the Product do not *necessarily* include damage to other products  For Simpson to argue that this allegations warrants Rule 11 sanctions is frivolous.

> **G.      Under both California and Florida law, Plaintiffs as end users need not allege reliance.**

End user consumers are protected by product warranties as third-party beneficiaries; further, they need not have seen nor relied on a warranty to pursue warranty claims under both California and Florida law. While Plaintiffs maintain that California law can apply to the Florida Plaintiffs' (the Coopers and Fernandina) warranty claims, to the extent Simpson argues that Florida law precludes Plaintiffs' claims, Plaintiffs include the applicable Florida law. *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (2001) ("a California court may properly apply the same California statutes at issue here to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."); *see also Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987).

> 1.      California law does not require reliance for end users.

A claim for breach of express warranty requires that the plaintiff plead the following: (1) an "affirmation of fact or promise" or a "description of the goods;" (2) "the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotations omitted) (quoting *Keith v.*

1  *Buchanan*, 173 Cal. App. 3d 13, 20 (1985). "[T]he concept of reliance has been purposefully

2  abandoned." *Weinstat*, 180 Cal. App. 4th at 1227 (quoting *Keith*, 173 Cal. App. 3d at 23).

3  Failure to allege that a consumer saw any promise is not fatal to a claim for breach of express

4  warranty: "that the [plaintiffs] did not allege that they saw any promises or affirmations of fact

5  prior to purchase are immaterial, and the claim is well-pled." *McVicar v. Goodman Glob., Inc.*,

6  1 F. Supp. 3d 1044, 1057 (C.D. Cal. 2014) (citing *Weinstat*, 180 Cal. App. 4th at 1228). "'The

7  precise time when words of description or affirmation are made . . . is not material'—even

8  promises made after purchase, such as those contained in product manuals, constitute an

9  'affirmation of fact or promise' if it can be 'fairly . . . regarded as part of the contract.'" *Id.*

10 (citing *Weinstat*, at 1230).

11      Consumers can assert implied warranty claims as third-party beneficiaries of

12 agreements between the manufacturer and retailer. *See In re Toyota Motor Corp. Unintended*

13 *Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1184-85

14 (C.D. Cal. 2010); *Keegan*, 838 F. Supp. 2d at 947; *Roberts v. Electrolux Home Prods.*, No. CV

15 12-1644 CAS (VBKx), 2013 U.S. Dist. LEXIS 185488, at *10 (C.D. Cal. Mar. 4, 2013)

16 (recognizing third party beneficiary exception as to breach of implied warranty claims); *Precht*

17 *v. Kia Motors Am., Inc.*, No. SA-CV-141148-DOC-MANX, 2014 U.S. Dist. LEXIS 185202,

18 2014 WL 10988343, at *10 (C.D. Cal. Dec. 29, 2014) ("Thus, vertical contractual privity is not

19 needed to assert a claim for breach of implied warranty when plaintiff is a third-party

20 beneficiary of a contract between other parties which does create an implied warranty.").

21      Even where privity is lacking, courts have interpreted California law not to require a

22 showing of reliance. *See, e.g., In re MyFord*, 46 F. Supp. 3d at 973 ("[O]ther courts interpreting

23 California law have not found such a limitation—i.e., they have not required reliance where the

24 parties are not in privity."); *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1057 (C.D.

25 Cal. 2014) (holding that express warranty claim against air conditioning manufacturer was

26 well-pled even though plaintiffs "did not allege that they saw any promises or affirmations of

27 fact prior to purchase"); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1183 n.22 (noting that

1    plaintiffs in a suit against a car manufacturer "are not required to allege reliance").

2                2.    Florida law does not require reliance for end users.

3        Florida courts have held that "manufacturers become liable to remote purchasers for

4    breach of both express and implied warranties." *Monsanto Agric. Prods. Co. v. Edenfield*, 426

5    So. 2d 574, 576 (Fla. Dist. Ct. App. 1982); *see also In re Bob Rigby, Inc.*, 62 B.R. 900, 906

6    (M.D. Fla. 1986) (although manufacturer of machinery was not seller of machine, buyer may

7    still assert breach of warranty claims); *Manheim v. Ford Motor Co.*, 201 So.2d 440 (Fla. 1967)

8    ("Our Court has become aligned with those courts holding that an action may be brought

9    against a manufacturer notwithstanding want of privity.").

10       Florida courts have consistently found privity not to be required for express warranty

11   claims involving a written warranty issued by a manufacturer with the intent it be utilized by

12   the ultimate consumer. *See Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09-CV-607-

13   T-27, 2010 U.S. Dist. LEXIS 28865, at *18 (M.D. Fla. Mar. 24, 2010) ("[c]ourts have relaxed

14   the privity requirement where the express warranty was clearly intended to extend coverage to

15   subsequent owners"); *Smith v. Wm. Wrigley Jr. Company*, 663 F. Supp. 2d 1336, 1343 (S.D.

16   Fla. 2009) (denying motion to dismiss express warranty claim on lack of privity).

17       Under Florida law, "[e]xpress warranties are created when any affirmation or promise

18   relating to the goods becomes part of the basis of the bargain." *Lennar Homes, Inc. v. Masonite*

19   *Corp.*, 32 F. Supp. 2d 396, 399 (E.D. La. 1998) (applying Florida law and citing Fla. Stat. §

20   672.313(1) for proposition that "no particular reliance on such statements need be shown in

21   order to weave them into the fabric of the agreement."). The court in *Lennar Homes* amended

22   an earlier summary judgment where it previously dismissed the plaintiff's claim for breach of

23   an express written warranty based on the homeowner's admitted non-reliance on the warranty.

24   *Id*. at 398. The court concluded "that reliance is not necessary to enforce a written warranty

25   under Florida law." *Id*. The court specifically noted that the plaintiff did not know that the

26   siding was allegedly defective and "injecting reliance into this recovery model would defeat

27   countless claims by consumers who are not well-versed in the 'intricacies of the law of sale,'

clashing with the public policy favoring liberalized consumers' recovery rights." *Id*. at 400 (citing *Schuessler v. Coca-Cola Bottling Co. of Miami*, 279 So. 2d 901, 904 (Fla. Dist. Ct. App. 1973)). The *Lennar Homes* court concluded that "[i]nterposing a reliance requirement, no doubt, would render consumer warranties illusory." *Id*.; *see also S. Broad. Grp. v. Gem Broad.*, 145 F. Supp. 2d 1316, 1324 (M.D. Fla. 2001) ("conclud[ing] that the Florida Supreme Court would embrace the modern view that express warranties are bargained-for terms of a contractual agreement, any breach of which is actionable notwithstanding proof of non-reliance at the time of closing on the contract"*).

**H.     The Fernandina Beach owners bought their property as a vacation home and are therefore consumers under the CLRA.**

The owners of Fernandina Beach purchased their property as a vacation home, not a rental. Under California Civil Code section 1761, (d) "Consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Thus, under the California Consumers Legal Remedies Act, Fernandina Beach is a consumer with a meritorious claim that should not be subject to hardball intimidation of sanctions for daring to sue the manufacturer or its defective product.

**V.     CONCLUSION**

For the aforementioned reasons, Plaintiffs respectfully request that the Court deny Simpson's Rule 11 Motion in its entirety.

Dated: May 15, 2020                              ROBINS KAPLAN LLP

                              By:     /s/ Michael F. Ram
                                      Michael F. Ram, SBN 104805
                                      Email: mram@robinskaplan.com
                                      Marie N. Appel, SBN 187483
                                      Email: mappel@robinskaplan.com
                                      ROBINS KAPLAN LLP
                                      2440 West El Camino Real, Suite 100
                                      Mountain View, CA 94040
                                      Telephone: (650) 784-4040
                                      Facsimile: (650) 784-4041

                                      Juvian J. Hernandez, *admitted pro hac vice*

1   JHerndandez@robinskaplan.com
    ROBINS KAPLAN LLP
2   800 LaSalle Avenue, Suite 2800
    Minneapolis, MN 55402
3   Telephone: (612) 349-8500

4   Adam L. Hoipkemier, *admitted pro hac vice*
    Email: Adam@ehdhlaw.com
5   EPPS, HOLLOWAY, DELOACH &
    HOIPKEMIER, LLC
6   10 Lenox Pointe
7   Atlanta, Georgia 30324
    Telephone: (706) 508-4000
8   Facsimile: (706) 842-6750

9   Kevin E. Epps, *admitted pro hac vice*
    Email: Kevin@ehdhlaw.com
10  EPPS, HOLLOWAY, DELOACH &
    HOIPKEMIER, LLC
11  1220 Langford Drive, Building 200-101
12  Watkinsville, Georgia 30677
    Telephone: (706) 508-4000
13  Facsimile: (706) 842-6750

14
15  Jeffrey B. Cereghino, SBN #099480
    Email: jbc@cereghinolaw.com
16  CEREGHINO LAW GROUP
    649 Mission Street, 5th Floor
17  San Francisco, California 94105
    Telephone: (415) 433-4949
18  Facsimile: (415) 433-7311

19  Graham B. LippSmith, SBN 221984
    Email: glippsmith@klwtlaw.com
20  Celene Chan Andrews, SBN 260267
    Email: candrews@klwtlaw.com
21  KASDAN LIPPSMITH WEBER TURNER LLP
22  360 East 2nd Street, Suite 300
    Los Angeles, California 90012
23  Telephone: 213-254-4800
    Facsimile: 213-254-4801
24
25  *Attorneys for Plaintiffs*
26
27

OPPOSITION TO MOTION                    15                    NO. 3:19-CV-07901-TSH
FOR RULE 11 SANCTIONS

1

### CERTIFICATE OF SERVICE

2

I hereby certify that on May 15, 2020, I electronically filed **PLAINTIFFS'**

3

**OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO**

4

**RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE and DECLARATION**

5

**OF BRYAN AUSTIN** with the Clerk of the Court, using the CM/ECF system, which will send

6

notification of such filing to the counsel of record in this matter who are registered on the

7

CM/ECF system to receive service.

8

9

　　　　　　　　　　　　　　　*/s/ Michael F. Ram*
　　　　　　　　　　　　　　　Michael F. Ram

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27