1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6

7    CARY W COOPER, et al.,                 Case No.  19-cv-07901-TSH
8              Plaintiffs,
9         v.                                AMENDED[1] ORDER RE: MOTION TO
                                            DISMISS
10   SIMPSON STRONG-TIE COMPANY,
     INC., et al.,                          Re: Dkt. No. 35
11
              Defendants.
12

13                         I.    INTRODUCTION
14         Plaintiffs brought this putative class action alleging that Defendants' construction
15   connectors and fasteners prematurely corrode and fail, causing danger to homeowners' properties
16   and requiring costly repairs.  Pending before the Court are Defendants' Motion to Dismiss
17   pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendants' Request for Judicial Notice
18   in Support of their Motion.  ECF Nos. 34, 37.  Plaintiffs filed an Opposition to the Motion to
19   Dismiss and Defendants filed a Reply.  ECF Nos. 41, 42.  Having considered the parties'
20   positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants'
21   motion for the following reasons.

22                         II.    BACKGROUND
23         Defendants Simpson Strong-Tie Company Inc. and Simpson Manufacturing Co., Inc.
24   (jointly, "Simpson") are a California corporation and Delaware corporation with a principal place
25   of business in Pleasanton, California.  First Amended Complaint ("FAC") ¶¶ 10-11.  Simpson

26
27   _____
     [1] This Amended Order supersedes the Court's May 15, 2020 Order re: Motion to Dismiss, ECF
     No. 56.  The Amended Order clarifies whether Plaintiffs' breach of express warranty claim is
28   dismissed with or without prejudice and specifies the date when an amended complaint is due, but
     is otherwise identical to the original order.

United States District Court
Northern District of California

manufactures, advertises, sells, and distributes steel, structural building products throughout the United States, including various products sold for installation in the foundations, framing, and doors of homes and other buildings to help secure the structures against high-wind events and earthquakes (the "Product"). *Id.* ¶¶ 1, 10-11, 23-25. The Product is made of pre-formed strips of steel that have flanges used for connecting the Product to various structures. *Id.* ¶ 23. It works in combination with other steel connectors to form load paths that create resistance to uplift[2] and lateral forces which can damage structures. *Id.* ¶ 25.

Plaintiffs Cary W. Cooper and Terri G. Cooper (the "Coopers") are Georgia residents who own a home in Port St. Joe, Florida. *Id.* ¶¶ 7, 13. The Coopers purchased their home on August 17, 2019. *Id.* ¶ 14. The property was built in 2004 and the Product was installed on the home. *Id.* Plaintiffs allege that in 2019, a hurricane hit the area of Port St. Joe and caused severe damage to the Coopers' home. *Id.* ¶ 15. Plaintiffs allege that the home suffered extensive damage because the Product was weakened due to premature corrosion and failed to secure the home. *Id.* They allege it would not have suffered from extensive damage if the Product had functioned as Simpson marketed it would. *Id.*

Plaintiff Fernandina Beach ("Fernandina," and together with the Coopers, the "Florida Plaintiffs") is a Florida limited liability company ("LLC") which owns a home in Fernandina Beach, Florida. *Id.* ¶¶ 8, 17. It purchased its property in September 2011. *Id.* ¶ 18. The home was built in 1997 and the Product was installed on it. *Id.* Because of premature corrosion, Plaintiffs allege, the Product is no longer capable of protecting Fernandina's home from high wind and seismic events. *Id.* ¶ 19.

Plaintiffs Simon Nguyen and Thoai Doan (jointly, the "California Plaintiffs") are California residents who own a home in San Jacinto, California. *Id.* ¶¶ 9, 20. They purchased their home, which was built in or around January 2007, in August 2009. *Id.* ¶ 21. The Product was installed on their home also. *Id.* Plaintiffs allege that "signs of corrosion on the Product continue to manifest" on this home as well, compromising the home's foundation and structural

United States District Court
Northern District of California

---

[2] Uplift is force that is generated when high winds blow over the top of the structure, creating suction that can lift the roof from the home. FAC ¶ 27.

support.  *Id.* ¶ 22.

Simpson provides installation instructions, design specifications, and "other representations as to the usage and qualities of the Product" in materials, including manuals and guides, which it produces and disseminates to consumers.  *Id.* ¶¶ 38-39.  The manuals and guides include corrosion warnings (the "Corrosion Warnings").  *Id.* ¶ 39.  Nevertheless, Plaintiffs allege that Simpson never adequately disclosed that the Product was "subject to corrosion, rusting, failure, deterioration, and disintegration."  *Id.*  They allege that few Class members ever see, and that they never saw, the corrosion warnings and that the warnings "do not adequately disclose Simpson is selling the Product into areas where it will foreseeably corrode long before its usual life, under reasonably foreseeable conditions, even if the installer reasonably follows the installation instructions."  *Id.*  The corrosion warnings, they allege, "fail to disclose, and Simpson never discloses, that the Product is defective because, among other things, as water collects and chlorides develop (for example, after rain), the Product prematurely rusts, spalls the concrete, and gradually loses strength to secure the house."  *Id.* ¶ 40.  "Further," Plaintiffs assert, "gaps, crevices, and spalls at and below the Product's embedment line form and moisture and corrosive elements accumulate and concentrate in the gaps and crevices, causing aggressive corrosion."  *Id.*

Plaintiffs believe that installation of the Product onto their structures "complied with Simpson's installation instructions and [that] deterioration was not due to environmental conditions but[,] rather, Defendants' defective design of the Product."  *Id.* ¶ 36.  They allege that they purchased their homes and then learned that the Product was beginning to prematurely corrode and deteriorate.  *Id.* ¶ 42.  They believe that the Product installed and incorporated into the homes of Class members is also prematurely corroding and deteriorating, and creating dangerous conditions and substantial risk of serious personal injury and property damage, which will likely require repair and replacement of the Product "and will necessarily involve damage to other products."  *Id.* ¶ 43.

Plaintiffs allege that Simpson knew of the Product defect since before they and Class members purchased their properties, and that it failed to disclose it.  *Id.* ¶ 45.  They allege that Simpson consistently represented that the Product was durable, of good quality, and capable of

securing structures while knowing that the Product would prematurely corrode and need to be replaced. *Id.* ¶¶ 45-46. Simpson never adequately warned consumers of this problem and intended to mislead customers into believing that the Product provides adequate corrosion resistance. *Id.* ¶¶ 50-51. "Simpson also failed adequately to disclose that the Product will fail even when used pursuant to Simpson's guidelines about which type of Product to use in which installation." *Id.* ¶ 52. Plaintiffs argue that Simpson created a "reasonable expectation" among consumers that the Product would have a "useful life spanning the life of the home in which [it] was installed." *Id.* ¶ 68. They argue that the Product has not performed in accordance with those expectations, that it was defectively designed, tested, and manufactured, and that it has failed and will continue to fail, causing damage to Plaintiffs' property and requiring them to spend significant amounts of money to repair and replace the Product. *Id.* ¶¶ 53-55.

Plaintiffs filed their original class action complaint on December 2, 2019. ECF No. 1. Simpson filed a motion to dismiss on February 5, 2020. ECF No. 25. Rather than oppose the motion, Plaintiffs filed their FAC on February 25, 2020. ECF No. 25. In their FAC, they assert nine causes of action against Simpson: (1) unfair competition, or unfair or deceptive acts or practices, in violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770(a)(5) and (a)(7); (2) unlawful business practices in violation of the California unfair competition law ("UCL"), California Business and Professions Code § 17200 *et seq.*; (3) unfair business practices in violation of the UCL; (4) a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute § 501.201 *et seq.*; (5) breach of express warranty; (6) breach of implied warranty of fitness; (7) breach of implied warranty of merchantability; (8) negligence; and (9) fraud through non-disclosure or concealment. Simpson filed its Motion to Dismiss the FAC (the "MTD") on March 17, 2020, asserting dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may seek dismissal of a suit for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 687. In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

### A.   Simpson's Request for Judicial Notice

Simpson requests judicial of the following items: Simpson's High Wind-Resistant Construction Application Guide (the "Application Guide"); pages from a 2001 archive of Simpson Strong-Tie Company Inc.'s website, retrieved from the Internet Archive (the "Website"); pages from the official website for City of Fernandina Beach, Florida; a map showing the City of Fernandina Beach, located on the North East Atlantic coast of Florida; pages from the official website for Port St. Joe, Florida; a map showing the Port St. Joe, Florida located on the North West Gulf of Mexico coast of Florida; a 2019 North Atlantic hurricane tracking chart, prepared by the U.S. Department of Commerce, National Weather Service. ECF No. 37.

A court may take judicial notice of facts that are "not subject to reasonable dispute" when they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. R. 201(b). Judicial notice may be taken at any stage of a proceeding. Fed. R. Evid. R. 201(d). Simpson's requests are unopposed, and Plaintiffs either rely on the documents requested (the Application Guide and the website pages), meaning they're not subject to dispute, or the items are otherwise proper subjects for judicial notice. *See Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (matters of public record); *Caldwell v. Caldwell*, 2006 WL 618511, at *11 (N.D. Cal. Mar. 13, 2006) (publicly accessible websites).

Additionally, independent of judicial notice, "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion [] into [one] for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citations and internal quotation marks omitted). That's the case here, where Plaintiffs' rely on the Application Guide and Website repeatedly in their FAC.

Accordingly, the Court **GRANTS** Simpson's requests for judicial notice.

**B.     Simpson's Motion to Dismiss**

**1.     The Plausibility of Plaintiffs' Allegations**

Simpson argues that "all nine of Plaintiffs' causes of action [] lack plausibility because . . . (1) the Corrosion Warnings defeat the contention that Simpson failed to warn that the Product could corrode even if selected and installed correctly; (2) Plaintiffs do not and cannot properly allege that they or anyone else followed Simpson's recommendations, guidelines, and warnings regarding the specification, installation, and maintenance of the Product; and (3) there is no basis for any claim of reliance since Plaintiffs admit, among other things, that they never read the Corrosion Warnings." The Court agrees.

The foundation of Plaintiffs' claims is their allegations that the Product prematurely corrodes, and that Simpson failed to disclose this defect. According to the Application Guide, Simpson produces many different models of connectors and fasteners. It produces different

United States District Court
Northern District of California

United States District Court
Northern District of California

models for use at different locations on a structure (ground level, between floors, roof level, etc.), in different environments, for use with different materials, and to accommodate different loads. The Application Guide instructs that some models offer more effective protection against corrosion risk than others.  For example, some models are better suited for "salt marine and chloride-containing environments."  Application Guide at 9.  The Guide provides "Guidelines for Selecting Corrosion-Resistant Connectors and Fasteners."  Those guidelines instruct consumers to evaluate the intended application of the product, evaluate the exposure to moisture and treatment chemicals, and to use a Corrosion Classification Table.  *Id.*  The Application Guide also includes information and guidance regarding the choice of galvanization based on the "level of corrosion resistance."  *See id.* at 12.  Yet Plaintiffs have not pled which of Simpson's products are installed in their homes, or in what application, what material the products were made of, or what coating, if any, was used.  They allege that the Product is "galvanized hurricane straps."  FAC ¶ 1.  But then they allege the Product "includes, but is not limited to, various galvanized steel hurricane straps including, but not limited to, steel, galvanized, and hot-dipped galvanized straps."  FAC ¶ 24.  And they allege that the Product "includes mudsill anchors."  *Id.*[3]  They allege that the Product "is installed in various locations throughout homes and other structures, including the foundation, framing, and doors."  *Id.* ¶ 25.  Since Plaintiffs do not allege details concerning which fastener or connector models were installed on their homes, their allegations only permit the Court to infer a mere possibility that the products were even designed to be used in the locations and environments they were.[4]  That is not enough to satisfy pleading requirements.  "[B]efore proceeding to discovery, a complaint must allege facts suggestive of illegal conduct," not merely consistent with it.  *Twombly*, 550 U.S. at 557, 563, n. 8; *id.* at 558 ("'[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual

---

[3] From the Application Guide, it appears that mudsill anchors are not even a type of hurricane tie. *See* Application Guide at 15, 21, 51.

[4] In their Opposition, Plaintiffs assert that, "[i]n reality, Plaintiffs define the Product at the very beginning of the FAC, providing details as to its use, manufacture, marketing, and defect throughout the Complaint."  Opp'n at 2.  They then cite a range of 22 paragraphs (¶¶ 23-44) in the FAC.  Those paragraphs cover topics like "The Need for High Wind and Seismic Protection" and Simpson's allegedly unlawful marketing practices, but do not identify Simpson's products with any more specificity than just discussed.

controversy to proceed.'") (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528, n. 17 (1983)).[5]

Plaintiffs also can't say for sure when the products were installed on their homes. They only state that the homes were built "and the Product was installed." (If Plaintiffs meant to say that the Product was installed at the time their homes were built, then that would be in 1997, 2004, and January 2007, at least 12 years before this action was filed.) They don't say when they discovered signs of corrosion. And they don't say whether the products installed on their homes were installed in accordance with Simpson's recommendations. They allege that they are "*informed and believe* that the Product was installed and incorporated into the construction of the homes . . . in reasonable accordance with the information, installation instructions, design specifications, and other representations provided, made, and disseminated by Simpson." FAC ¶ 41 (emphasis added). But information and belief are not always enough to satisfy the pleading requirements. "Courts have read . . . Rule 8, together with Rule 11, to permit claimants to aver facts that they believe to be true, but that lack evidentiary support at the time of pleading. Generally, however, such averments are allowed only when the facts that would support the allegations are solely within the defendant's knowledge or control." 2 Moore's Federal Practice - Civil § 8.04 (2020) (citations omitted); *see Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("'The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief *where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible*.'") (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (emphasis added); *Barnes v. Harris*, 783 F.3d 1185, 1196-97 (10th Cir. 2015) (cases from other circuits allowing more relaxed pleading standard when relevant information is outside plaintiffs' control were inapplicable because facts in question were not entirely within defendants' control and plaintiffs were empowered to obtain that information). In this case, all the relevant

United States District Court
Northern District of California

---

[5] If, for example, a low-corrosion-resistance fastener were used in an environment with high moisture exposure and were painted—which Simpson advises can "facilitate corrosion," Application Guide at 9—then one would expect that fastener to corrode faster.

information is either within Plaintiffs' knowledge or possession, or if it isn't, Plaintiffs are best positioned to obtain it.  Plaintiffs have not "alleged what [they] can, based on the information [they have]."  *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1225 (N.D. Cal. 2015).  And if they do not know when the Product was installed in their homes or whether it was installed properly, that raises a pretty strong inference that they're speculating about the reasons for and rate of corrosion of the Product.  *See Delphix Corp. v. Actifio, Inc.*, 2014 U.S. Dist. LEXIS 132310, *5 (N.D. Cal. Mar. 19, 2014) (where only some allegations are qualified with "on information and belief," it creates an inference that the plaintiff "likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree"); *id.* at *5, n. 2 ("Using the phrase ["on information and belief"] provides no [] protection as it cannot lessen the requirements of reasonable pre-suit investigation under the rules.").  Plaintiffs' allegations based on "information and belief" don't nudge their complaint across the finish line of plausibility.

Without alleging which models were installed on Plaintiffs' homes, where on the structures the Product was installed, if it was installed in accordance with Simpson's recommendations, or when it was installed, the FAC doesn't allege facts plausibly suggesting that the Product was defective—i.e., that prematurely corroded—or that it will "fail even when used pursuant to Simpson's guidelines about which type of Product to use in which installation."  *Id.* ¶ 52.  The only plausible inference is that *some* connector or fastener produced by Simpson and installed on Plaintiffs' homes in *some* environment in *some* manner, applied to *some* other material, corroded and lost strength after being installed for *some* amount of time.  This doesn't support an inference of more than a mere possibility of Simpson's misconduct.  *Iqbal*, 556 U.S. at 679.

Second, Simpson is correct that the Corrosion Warnings "defeat the contention that Simpson failed to warn that the Product could corrode even if selected and installed correctly."  Plaintiffs allege that the Corrosion Warnings "never disclose that the Product will corrode under reasonably foreseeable conditions even when the installer follows the instructions."  FAC ¶ 46.  And they allege that Simpson "created a reasonable expectation" that the Product would have a "useful life spanning the life of the home."  *Id.* ¶ 68.  Each of Plaintiffs' nine causes of action

relies in some measure on these allegations (the omissions and misrepresentations). But neither of the allegations is tenable based on the FAC.

Plaintiffs repeatedly reference the Application Guide, but it never states or suggests that proper selection and installation of Simpson's product will make the products perpetually corrosion-proof. In fact, the Application Guide repeatedly disclaims exactly that. It states under a section called "Understanding the Corrosion Issue":

> *Many environments and materials can cause corrosion*, including ocean salt air, fire retardants, fumes, fertilizers, preservative-treated wood, de-icing salts, dissimilar metals and more. *Metal connectors, fasteners and anchors could corrode and lose load-carrying capacity when installed in corrosive environments or when installed in contact with corrosive materials*.

> *The many variables present in a building environment make it impossible to accurately predict if, or when, corrosion will begin or reach a critical level.* This relative uncertainty makes it crucial that specifiers and users are knowledgeable of the potential risks and *select a product suitable for the intended use*. It is also prudent that regular maintenance and periodic inspections are performed, especially for outdoor applications.

> *It is common to see some corrosion in outdoor applications. Even stainless steel can corrode.* The presence of some corrosion does not mean that load capacity has been affected or that failure is imminent. . . .

Application Guide at 11 (emphasis added). The Guide even advises, "*[i]f significant corrosion is apparent or suspected*, then the framing members, fasteners and connectors should be inspected by a qualified engineer or qualified inspector. *Replacement of affected components may be appropriate*." *Id.* (emphasis added). The Guide makes clear how different variables, including the degree of moisture in the environment, the type of wood being used and the wood moisture level, and whether or not fasteners are painted, may affect the rate of corrosion. *See* Application Guide at 9-10. It details what finishes and materials achieve what level of corrosion resistance and should be used in different contexts. *Id.* at 12. And it advises that, "[d]ue to the many variables involved, *Simpson Strong-Tie cannot provide estimates of service life of connectors and fasteners.*" *Id.* at 9 (emphasis added). No one reading the Application Guide could reasonably expect that Simpson's products would never corrode even if installed exactly according to Simpson's recommendations, or that Simpson's products would last the life of a house or <u>never</u>

10

need to be replaced.  Thus, the Application Guide, which Plaintiffs themselves rely on, eviscerates their allegations.  *See Lawrence v. Castro*, 749 Fed. Appx. 631, 632 (9th Cir. 2019) (A "court need not accept as true allegations that contradict documents or exhibits attached to the complaint, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inference.") (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We accept as true all well-pleaded allegations of material fact. . . . We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); *see Jackson v. Romero*, 2020 WL 133906, at *2 (W.D. Wash. Jan. 13, 2020) ("Moreover, if an exhibit attached to a complaint contradicts an assertion in the complaint and reveals information that prohibits recovery as a matter of law, the information provided in the exhibit trumps the allegation in the complaint.") (citing *Wilson v. Fitter*, 2009 WL 6908049, at *2 (C.D. Cal. Nov. 5, 2009)).

The other evidence that Plaintiffs point to is a March 7, 2011 letter from Simpson addressed to "whom it may concern" (Plaintiffs don't say whom), which Plaintiffs assert "acknowledge[d] that 'Simpson Strong-Tie ha[d] become aware of problems regarding concrete spalling and corrosion of embedded products around the perimeter of some homes in Oahu, Hawaiʻi.'"  FAC ¶ 48 (quoting the March 7, 2011 letter, ECF No. 28-1).  Looking at the letter, that appears to be true.  But the letter doesn't really support Plaintiffs' allegations.  Simpson did acknowledge that it had become aware of problems with concrete spalling and corrosion of its products, but it wrote "there does not appear to be any defect in the design or manufacturing of such products."  It wrote that during the course of its investigation into the matter, it had found "widespread mis[-]installations of the aforementioned embedded concrete products which can adversely affect their allowable load capacity."  It informed readers that it was writing to address proper installation of the products, and recommended "a number of ways to reduce the occurrence of mis[-]installation of these products and spalling of concrete."  What Simpson did *not* say is that Simpson had discovered a design defect in its products.  If anything, the letter suggests an

alternative reason for the corrosion of products installed in Plaintiffs' homes: mis-installation.[6]

Since the FAC does not plausibly allege that the Product was subject to premature corrosion or defective in any way, or that Simpson represented that its products would never corrode, fail, or need to be replaced, the FAC does not plausibly allege that Simpson concealed a defect in the Product or otherwise misrepresented the quality or durability of its products. Each of Plaintiffs' claims fail because of this. The Court turns now to the individual claims. Because Plaintiffs' second and third causes of action, their California unfair competition law claims, are based on violations asserted in their other causes of action, the Court will discuss those claims last.

### 2. Plaintiffs' CLRA Claim

Plaintiffs' first cause of action is under the CLRA. "The CLRA makes unlawful various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 155 (2010) ("SPH") (quoting Civ. Code, § 1770(a)). "It allows 'any consumer who suffers any damage as a result of the use or employment by any person of a [prohibited] method, act, or practice' to bring an action to recover or obtain actual damages, injunctive relief, restitution, and/or punitive damages." *SPH*, 181 Cal. App. 4th at 155 (quoting Cal. Civ. Code, § 1780(a)). Plaintiffs allege that Simpson engaged in both unfair competition and unfair or deceptive acts in violation of Cal. Civ. Code § 1770(a)(5) and (a)(7). FAC ¶ 73. "These provisions of the CLRA proscribe both fraudulent omissions and fraudulent affirmative misrepresentations." *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) (citing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36 (1975); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011)). Plaintiffs allege that "Defendants represented, through their material omission to disclose that the Product will corrode even when installed as Simpson recommends, that the Product had benefits or characteristics that it did not actually have." FAC ¶ 73. "This omission," they allege, "was also a

---

[6] The Court does not suggest that because Simpson attributed the problems to mis-installations, that was indeed the reason for the problems. It only passes on what can reasonably be inferred from the letter, and Simpson having discovered a defect with its products is not part of that.

false representation that the Product was of a particular standard or quality." *Id.*  Plaintiffs,

however, have not plausibly alleged that Simpson misrepresented the quality of its products, or

that it omitted a defect—material or otherwise—it had been concealing, or omitted that its

products could corrode even when installed properly.  The Application Guide makes clear that

Simpson's products could corrode.  On this alone, Plaintiffs fail to state a claim under Cal. Civ.

Code § 1770(a)(5) or (a)(7).  *See Spiegler v. Home Dept U.S.A., Inc.*, 2008 WL 2699787, at *11

(C.D. Cal. June 30, 2008) ("Because plaintiffs have failed to identify any misrepresentation or

actionable omission, the Court concludes that plaintiffs have failed to state a claim under Cal. Civ.

Code § 1770(a)(5).").

Simpson also argues that Plaintiffs' CLRA also fails because Plaintiffs cannot show

reliance.  An essential element for a fraudulent omission or false representation claim is actual

reliance.  *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *Cohen v.

DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009) (CLRA); *In re Tobacco II Cases (Tobacco II)*,

207 P.3d 20, 39 (Cal. 2009) (UCL); *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239

(1995).  To prove reliance on an omission, a plaintiff must show that the defendant's fraudulent

conduct was an immediate cause of the plaintiff's injury-producing conduct.  *See Daniel*, 806 F.3d

at 1225.  "That one would have behaved differently can be presumed, or at least inferred, when the

omission is material," *id.* (citing *Tobacco II*, 207 P.3d at 39), such as with alleged defects that

create "'unreasonable safety risks,'" *Daniel*, 806 F.3d at 1225 (quoting *Ehrlich v. BMW of N. Am.,

LLC*, 801 F. Supp. 2d 908, 917-19 (C.D. Cal. 2010)).  Simpson argues that because Plaintiffs

allege that "few class members ever see, and [] none of the named Plaintiffs saw" the Corrosion

Warnings, FAC ¶ 39, they cannot prove reliance because they cannot show they would have been

aware of information about alleged Product defects if they had been disclosed.

Even though a change in behavior can be presumed if the omitted information is material, a

plaintiff alleging fraud must still be able to show she would have been aware of the information

had it been disclosed.  *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal.

2017) (citing *Daniel*, 806 F.3d at 1225-26).  To meet this test, a plaintiff need not prove she

personally saw materials disclosing a defect, as long as she can "'establish a plausible method of

13

1    disclosure and . . . that [she] would have been aware of information disclosed using that method.'"

2    *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 967 (N.D. Cal. 2018) (finding the court could

3    plausibly draw inference that plaintiff would have received information on defect had Ford

4    publicized the defect through authorized dealer) (quoting *Daniel*, 806 F.3d at 1227 (finding the

5    same)).[7]  Plaintiffs argue the Court can infer that, "had Simpson disclosed the omitted information,

6    Plaintiffs would have been aware of it or would not have been subjected to the danger at all. . . . At

7    a minimum, builders, suppliers, real estate brokers, and building inspectors could have disclosed

8    the extent of the defect, allowing Plaintiffs to decide whether to purchase a home with dangerously

9    unsafe hurricane straps, which no reasonable consumer would do."  The Court declines to address

10   the theoretical question of whether that could be a plausible method of disclosure because, as

11   Simpson correctly observes, Plaintiffs have not alleged any facts in the FAC in support of such a

12   theory.  Under the current state of the pleadings, the Court agrees with Simpson that Plaintiffs

13   have not plausibly alleged reliance.

14           Simpson also argues that the Florida Plaintiffs' CLRA and UCL claims fail because, as

15   non-California residents, they do not allege sufficient contacts with California.  Neither the CLRA

16   nor the UCL applies to actions occurring outside of California that injure non-residents.  *Ice*

17   *Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 2010 WL 3619884, at

18   *8 (N.D. Cal. Sept. 10, 2010) (UCL) (citations omitted); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d

19   1121, 1130 (N.D. Cal. 2014) (CLRA).  "State statutory remedies under the CLRA and UCL may

20   be available to non-California residents _if_ those persons are harmed by wrongful conduct

21   occurring in California."  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 916 (C.D. Cal. 2011)

22   (emphasis in original).  "In determining whether the UCL and CLRA apply to non-California

23   residents, courts consider where the defendant does business, whether the defendant's principal

24

25   ─────────────────────
     [7] The omissions analysis differs for affirmative misrepresentation principles, where reliance
26   requires the consumer to have seen or read the misrepresentation.  *Baranco*, 294 F. Supp. 3d at
     967 (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009) (in affirmative representation case,
27   reliance satisfied where "a plaintiff alleges exposure to a long-term advertising campaign"); *Mazza
     v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (no presumption of reliance
28   permitted where "it is likely that many class members were never exposed to the allegedly
     misleading advertisements, insofar as advertising of the challenged system was very limited")).

offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made." *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 917. "The critical issues [] are whether the injury occurred in California and whether the conduct of Defendants occurred in California. If neither of these questions can be answered in the affirmative, then [a] Plaintiff will be unable to avail herself of these laws." *Tidenberg v. Bidz.com, Inc.*, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009). For example, in *In re Toyota*, the Central District of California dismissed the foreign plaintiffs' claims under the UCL and CLRA against Toyota North America, which was headquartered in California, because they didn't allege "with sufficient detail that the point of dissemination from which advertising and promotional literature that they saw or could have seen is California." 785 F. Supp. 2d at 917 (emphasis in original). Simpson argues that "the Coopers and Fernandina do not allege any connection between themselves and California sufficient to sustain their claims under the CLRA and UCL, and the inclusion of the California Plaintiffs in the FAC does not cure the problem for the non-California Plaintiffs, whose claims must be dismissed without leave to amend." Mem. at 22. In their opposition, Plaintiffs argue that Simpson's marketing and sales decisions are made from its home office in California. Opp'n at 20. But they do not allege that fact in the FAC, even though Simpson raised this argument in its motion to dismiss the OC and they had opportunity to do so. Simpson is correct that Plaintiffs' have not alleged that the Florida Plaintiffs have sufficient contacts with California to be able to avail themselves of the CLRA or UCL.

Lastly, Simpson argues that Fernandina cannot assert a claim under the CLRA because the CLRA excludes LLC's from the definition realm of "consumers" who can assert a claim under that Act. Mem. at 23 (citing Cal. Civ. Code § 1761(c), (d)). Simpson's interpretation of the statute is correct. *See Bristow v. Lycoming Engines*, 2007 WL 1752602, at *5 (E.D. Cal. June 15, 2007) ("A corporation, however, cannot seek or acquire a plane for 'personal, family, or household purposes,' and the language of the statute clearly envisions a person as the 'individual' permitted to bring suit."). Plaintiffs don't attempt to argue otherwise. They devote a mere three sentences to this point: "The owners of Fernandina Beach use the home primarily as a vacation home. This makes them consumers under the CLRA. Plaintiffs request leave to amend to allege

15

this fact." Opp'n at 20.  But they cite no caselaw which stands for the proposition that an LLC becomes a "consumer" simply because some of its members use real property onto which covered "goods" are affixed.  The Court is not persuaded it does.  *See id.* at *5, n. 9 ("The plane owned by [the corporation] may be used by [its president] for "personal purposes"-and was probably even contemplated for such use at the time of its purchase-but the language of the statute clearly contemplates that the 'personal purposes'  be held by the purchaser, not merely some future user.  Otherwise, a corporation who owned aircraft but rented them out for recreational use, for example, would similarly have standing to sue under the CLRA.").

For all these reasons, Plaintiffs have not plausibly alleged a claim under the CLRA.

### 3.  Plaintiffs' FDUTPA Claim

Plaintiffs' fourth cause of action is under the FDUTPA, Fla. Stat. § 501.201 *et seq.*  The FDUTPA declares unlawful, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 501.204(1).  To state a claim for either injunctive relief or damages under the Act, a plaintiff must allege that a defendant engaged in a deceptive act or practice in trade.  *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (citations and internal quotation marks omitted).  "A deceptive practice is one that is 'likely to mislead.'"  *Id.* (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000)).  This claim is once more based on Plaintiffs' allegation that "Simpson failed to inform consumers that the Product would prematurely corrode long before a reasonable consumer would expect under the circumstances even when selected and installed pursuant to Simpson's product recommendations and instructions."  FAC ¶ 94.  They allege that Simpson "employed fraud, deception, and the knowing concealment, suppression, or omission of material facts in the sale and advertisement of the Product" by "failing to disclose to, or concealing from, consumers . . . material facts about the defective nature of the Product; and failing to disclose its own knowledge of the defective nature of the Product."  *Id.* ¶ 95.  They allege they and Class members were misled by Simpson's omission.  *Id.* ¶ 96.  But again, the FAC does not plausibly allege that Simpson's products suffered from any defects, or that Simpson omitted any material information about its products.  It does not

plausibly allege that Simpson misled consumers.  And because Plaintiffs have not plausibly alleged that Simpson's products suffered from defects, they've also not plausibly alleged that they were injured due to any defect in Simpson's products.  They've failed to state a claim under the FDUTPA.

### 4.    Plaintiffs' Breach of Warranty Claims

Plaintiffs' fifth, sixth, and seventh causes of action are breach of warranty claims.  Claim five alleges a breach of express warranty, claim six a breach of the implied warranty of fitness, and claim seven a breach of the implied warranty of merchantability.  All three claims are premised on Plaintiffs' assertion that "the Product does not have the quality that a buyer would reasonably expect and was therefore not merchantable."  FAC ¶¶ 105, 113, 121.

Under their express warranty claim, Plaintiffs allege that the quality a buyer would expect based on Simpson's product descriptions was a Product that would "last the entire life of a home." As discussed earlier, that allegation is plainly false.  The Application Guide gives no impression that Simpson's products would offer protection ad infinitum.  *See, e.g.*, Application Guide at 9 ("Due to the many variables involved, Simpson Strong-Tie cannot provide estimates of service life of connectors and fasteners."); *id.* at 11 ("Replacement of affected components may be appropriate.").

Furthermore, Plaintiffs do not plead any terms express warranty terms.  They assert in their Opposition that they alleged the terms of Simpson's express warranty "with reference to the limited warranty."  Opp'n at 9.  But the FAC doesn't even quote the Limited Warranty, and instead cites in a footnote to the page of the Application Guide which contained the warranty.  *See* FAC ¶ 106, n. 8.  It's perhaps for good reason that Plaintiffs didn't conspicuously reference the Warranty, however, as it also clearly contravenes Plaintiffs' claims.  *See, e.g.*, Application Guide at 6 ("This warranty does not apply to uses not in compliance with specific applications and installations set forth in this application guide, or to non-catalog or modified products, or to *deterioration due to environmental conditions*.") (emphasis added); *id.* ("Due to the particular characteristics of potential impact events, the specific design and location of the structure, the building materials used, the quality of construction, and the condition of the soils involved,

United States District Court
Northern District of California

*damage may nonetheless result to a structure and its contents . . . .*") (emphasis added).  The

Simpson Website, which Plaintiffs also cite in their FAC, contains a Limited Warranty page with

essentially identical language.  *See* RJN, Ex. B at 31, ECF No. 36-2.  Plaintiffs do not even

address this language in their Opposition (they cite part of it but ignore it, *see* Opp'n at 9-10), even

though Simpson cited it in its Memorandum.  They do not allege a plausible claim for breach of

express warranty.

Under their implied warranty claims, Plaintiffs allege that Simpson's "product is not fit for

the ordinary purpose for which such goods are sold."  FAC ¶¶ 114, 122.  Yet Plaintiffs haven't

plausibly alleged that any of Simpson's products were defective or unfit for use.  Furthermore, the

Application Guide expressly disclaims both implied warranties.  Under Florida law, "a seller may

limit [its] liability exposure by disclaiming the implied warranty of merchantability [or implied

warranty of fitness], provided the disclaimer mentions merchantability [or fitness], and in the case

of a writing, that it be conspicuous. *McCormick Machinery, Inc. v. Julian E. Johnson & Sons, Inc.*,

523 So. 2d 651, 653 (Fla. Dist. Ct. App. 1988) (citing Fla. Stat. § 672.316(2)).  "Under California

Commercial Code Section 2316, the implied warranty of merchantability [or implied warranty of

fitness] . . . may be excluded or modified if the language expressly mentions merchantability [or

fitness] and is conspicuous."  *Clark v. LG Elecs. U.S.A., Inc.*, 2013 WL 5816410, at *12 (S.D. Cal.

Oct. 29, 2013).  The Limited Warranty in the Application Guide and on the Simpson website

instructs:

> This warranty is expressly in lieu of all other warranties, expressed or
> implied, including warranties of merchantability or fitness for a
> particular purpose, all such other warranties being hereby expressly
> excluded.

Application Guide at 6; Website at 31.  Once again, Plaintiffs don't address this language in their

Opposition.  It satisfies the requirements under both Florida and California law.  Plaintiffs allege

that Simpson's attempt to disclaim these warranties is "unenforceable" because each disclaimer

"was not conspicuous as required by law, and was both procedurally and substantively

unconscionable, rendering it unenforceable."  FAC ¶¶ 115, 123.  Not so.  The Limited Warranty is

not tucked away somewhere at the back of the Application Guide: it's the first item in the index at

United States District Court
Northern District of California

the front of the Guide and appears on the first page of information after the company profile page. *See id.* at 4-6.  The Simpson website contains the language in bold on the Limited Warranty page. Website at 31.  And Plaintiffs' assertion is undercut by the fact that they themselves cite to and rely on other portions of the Limited Warranty and don't assert that those portions were inconspicuous.  Lastly, Plaintiffs' allegations that the disclaimer was procedurally and substantively unconscionable is conclusory and is entitled to no weight.  *See Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1139 (N.D. Cal. 2010) (rejecting unconscionability allegation where plaintiffs had failed to allege "facts demonstrating that there were no alternative manufacturers of washers or that they were surprised by the terms of the warranty").  Plaintiffs cannot plausibly allege claims of breach of implied warranties.  *See Pinellas Suncoast Transit Auth. v. Mincom, Inc.*, 2007 WL 1222595, at *2 (M.D. Fla. Apr. 24, 2007) (finding that disclaimer of implied warranties with similar language to Simpson's disclaimer met the statutory requirements as it was in writing and conspicuous, and dismissing with prejudice the breach of implied warranty claim); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (dismissing breach of implied warranty claims where disclaimer stated that company "disclaims all statutory and implied warranties, including without limitation, warranties of merchantability and fitness for a particular purpose and warranties against hidden or latent defects").

Lastly, Simpson argues that the California Plaintiffs cannot assert warranty claims under the California Song-Beverly Act (Cal. Civ. Code. §§ 1790, *et seq.*) (the "SBA") because the Products they purchased as part of their home were not "new."  Simpson is correct.  "Consumer goods" under the Act are defined as "any new product . . . that is used, bought, or leased for use primarily for personal, family, or household purposes . . . ."  Cal. Civ. Code § 1791(a) (emphasis added).  "[T]he only section of the act that applies to used goods is Section 1795.5, which . . . creates obligations on behalf of 'the distributor or retail seller making express warranties with respect to used consumer goods (and *not the original manufacturer* . . . )."  *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1179 (N.D. Cal. 2017) (dismissing implied warranty claim because the Song-Beverly Act did not create any obligation on behalf of the original car

United States District Court
Northern District of California

manufacturer with respect to used goods).[8]  The California Plaintiffs cannot assert warranty claims under the SBA.

### 5.    Plaintiffs' Negligence Claim

Plaintiffs' negligence claim alleges the following:

> Defendants breached their duty to Plaintiffs and Class Members by not exercising reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and Class Members.  Defendants carelessly designed and manufactured a product that prematurely corrodes when installed in homes even when selected and installed pursuant to Simpson's recommendations and instructions.  Simpson did not take sufficient action to reasonably provide notification to Plaintiffs and Class Members of the Product's propensity to prematurely corrode and deteriorate.

FAC ¶ 128.  Plaintiffs also allege that Simpson "failed to use reasonable care to warn about the Product's dangerous condition or about facts that made the Product likely to be dangerous and a substantial safety risk." *Id.* ¶ 130.  This claim is, again, premised on Plaintiffs' allegation that Simpson's products were defective.  But they have not plausibly alleged that.  Thus, they have not plausibly alleged negligence.

Additionally, Simpson argues that Plaintiffs' tort claims are barred by the economic loss rule ("ELR").  "Simply stated, the economic loss rule provides: Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (citations and internal quotation marks omitted).  Put another way, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla. 2013) (citation omitted).  "Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Robinson*, 34 Cal. 4th at 988; *Tiara*, 110 So. 3d at 405.  In

---

[8] Simpson also argues that, "[e]ven if California law did apply to the Coopers' and Fernandina's warranty claims, those claims would still fail for a number of reasons that Simpson raised in [its first motion to dismiss]." Mem. at 19.  However, the Court reads the FAC to assert those Plaintiffs' claims under Florida warranty statues.  *See* FAC ¶¶ 103-05.

both Florida and California, the ELR "expressly limit[s] tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself." *Id.*

Simpson argues that Plaintiffs do not allege that the Products have caused bodily injury or physical damage to "other property," that they only "allege potential damage that may occur to their home[s] as a result of replacing the allegedly defective Product, that they may have paid less for the Product, and that they may have not purchased their homes at all." Mem. at 23 (citing FAC ¶¶ 134, 141). Plaintiffs do not attempt to argue otherwise. With regard to the Fernandina and California Plaintiffs' homes, Simpson is correct that Plaintiffs have not even alleged damage to anything other than the Product. They allege only speculative damage to their homes. *See* FAC ¶¶ 19, 22. "The breach of a duty causing only speculative harm or the threat of future harm does not normally suffice to create a cause of action." *Aas v. Superior Court*, 24 Cal. 4th 627, 646 (2000) ("Construction defects that have not ripened into property damage, or at least into involuntary out-of-pocket losses, do not comfortably fit the definition of appreciable harm --an essential element of a negligence claim.") (citations and internal quotations omitted).

With regard to the Cooper's home, Plaintiffs allege that a hurricane hit the area of the home and caused severe damage, and that the damage "would have otherwise been prevented had the Production functioned as marketed." Simpson argues that this allegation is of no consequence because under Florida law "the Coopers' home is considered inclusive of its component parts, including the Products, and not 'other property.'" Mem. at 23. Plaintiffs again do not argue this point. The Court is persuaded by Simpson's position. In *Casa Clara Condominium Ass'n v. Charley Toppino & Sons*, 620 So. 2d 1244 (Fla. 1993), various homeowners sued a concrete supplier corporation after defective concrete it supplied caused reinforcement steel in the concrete to rust, crack, and break apart. The defective concrete caused damage to the homeowner's buildings. *Id.* at 1245. The homeowners argued that the concrete damaged "other" property because "the individual components and items of building material, not the homes themselves, are the products they purchased." *Id.* at 1247. The Florida Supreme Court disagreed. The majority reasoned (though with multiple dissents):

1
2
3
4
5

> Generally, house buyers have little or no interest in how or where the individual components of a house are obtained.  They are content to let the builder produce the finished product, i.e., a house.  These homeowners bought finished products--dwellings--not the individual components of those dwellings.  They bargained for the finished products, not their various components.  The concrete became an integral part of the finished product and, thus, did not injure "other" property.

6   *Id.*  Thus, the court held that the ELR applied to the purchase of the houses.[9]  *See also City of St.*

7   *Petersburg v. Total Containment, Inc.*, 2008 U.S. Dist. LEXIS 106243, *55-56 (S.D. Fla.) ("The

8   economic loss doctrine is clear []: Plaintiffs may not recover in tort for damage to any part of an

9   integrated fuel storage and dispensing system" caused by defects in a fuel pump piping

10  component.); *Fishman v. Boldt*, 666 So. 2d 273, 274 (Fla. Dist. Ct. App. 1996) (the product

11  purchased by the plaintiff was a home with all its component parts, including the seawall, pool,

12  and patio, consequently, no "other property" was damaged when the seawall failed and the home,

13  pool, and patio were damaged); *but see Saft Am., Inc. v. Jabil Circuit (Guangzhou), Ltd.*, 2019 WL

14  4600401, at *3 (M.D. Fla. Sept. 23, 2019) (examining cases for and against application of ELR

15  where a component leads to damage of an integrated product and finding the plaintiff's allegations

16  of damage to other property sufficient to avoid application of the economic loss rule at the

17  pleadings stage).  The ELR precludes Plaintiffs' negligence claims.[10]  *See Aprigliano v. Am.*

18  *Honda Motor Co.*, 979 F. Supp. 2d 1331, 1338 (S.D. Fla. 2013) (claim for negligent failure to

19  warn barred by the economic loss rule) (citing *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*,

20

21  _____

[9] To the extent *Tiara* receded from *Casa Clara*, it did not do so with regard to this portion of the
22  opinion.  *See Saft Am., Inc. v. Jabil Circuit (Guangzhou), Ltd.*, 2019 WL 4600401, at *3 (M.D. Fla. Sept. 23, 2019) ("While *Tiara* later receded from *Casa Clara*, it was only to the extent that
23  *Casa Clara* was being relied on to support the extension of the economic loss rule in circumstances other than products liability.").
[10] While the court there didn't apply the ELR on a motion to dismiss, it also didn't rule out the
24  application of the ELR to that case.  *See* 2019 WL 4600401, at *3, n. 6 ("While it may well turn out that the economic loss rule applies in this case, the record needs to be developed concerning
25  the engineering, construction, and operation of the battery and its component parts to determine how the battery and its components work, what went wrong here, and, ultimately, what it means
26  under the law.").  This Court is persuaded that the ELR does apply to this case.  The cases *Saft*
27  *Am.* cited which found that, if a defective component is placed into a product the plaintiff can show damage to "other property," all came from federal district courts, which that court noted
28  were not binding.  *Casa Clara*, on the other hand, which is on point, comes from Florida's supreme court.

2012 WL 1570057, at *4 (S.D. Fla. May 2, 2012)).

### 6.    Plaintiffs' Fraud Claim

Plaintiffs' ninth cause of action is one for fraud or concealment.  They allege that Simpson concealed and suppressed material facts concerning the Product, namely "the inability of the Product, even when selected and installed pursuant to Simpson's guidelines and instructions, to withstand environmental factors that cause premature corrosion."  Once again, Plaintiffs have not plausibly alleged that any of Simpson's products were defective or that Simpson concealed any information from consumers.  Thus, they have not plausibly alleged fraud or unlawful concealment.

Simpson presumably intends its ELR argument to encompass Plaintiffs' fraud claim as well.  However, the Florida Supreme Court in *Tiara* noted its past refusal to extend the application of the ELR to actions based on fraudulent inducement, 110 So. 3d at 406 (citations omitted), and *Tiara* didn't change that.  The court noted that it had allowed recovery in tort for economic damages where the tort "requires proof of facts separate and distinct from the breach of contract." *Id.* at 402.  Courts since *Tiara* have found the ELR inapplicable to claims of fraudulent inducement.  *See, e.g.*, *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (fraudulent inducement claim not barred where fraud allegations were separate and distinct from defendants' performance under the contract); *Wilson v. Volkswagen Grp. of Am., Inc.*, 2018 WL 4623539, at *10 (S.D. Fla. Sept. 26, 2018) (a claim for fraudulent inducement is excepted from the ELR and should not be barred as a matter of course); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 965 (N.D. Cal. 2014) (applying Florida law and finding exceptions to the economic loss doctrine include where there is fraudulent inducement and where there is a free-standing statutory cause of action).[11]  In California also, "'[t]he economic loss rule poses no barrier to a properly pled fraudulent inducement claim: [I]t has long been the rule that where a

---

[11] The Court notes Simpson's point that "[a]t least four courts interpreting *Tiara* have rejected the fraud exception to the ELR and held that it bars claims for fraudulent concealment in products liability cases."  Mem. at 14 (citing *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1198 (S.D. Fla. 2017)).  However, as just noted, several other courts since *Tiara* have found the opposite.  This Court reads *Tiara* as affirming that fraudulent inducements claims are omitted from the ELR.

contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud.'" *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *9 (N.D. Cal. June 4, 2018) (quoting *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009)) (citing several other cases).  The ELR does not bar Plaintiffs' fraud claim.

### 7.    Plaintiffs' UCL Claims

For Plaintiffs' second and third causes of action, they allege that Defendants engaged in unlawful (claim two) and unfair (claim three) business practices in violation of the California unfair competition law.[12]  The unfair competition law "defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.'" *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (quoting Cal. Bus. & Prof. Code § 17200).  "'[S]ection 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Id.* (quoting *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996)).  "A 'violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.'" *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 610 (2014) (quoting *Berryman v. Merit Property Management, Inc.*, 152 Cal.App.4th 1544, 1554 (2007)).  "The unfair competition law thus creates an independent action when a business practice violates some other law." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1170 (2002) (citing *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992)).  Under their unlawful business practice claim, Plaintiffs allege that: "Defendants engaged in unlawful business practices in that they created and sold a defective Product that prematurely fails due to poor design; failed to disclose material facts concerning the Product's safety; failed to disseminate information known to them about the Product's defect; impliedly warranted to Plaintiffs and Class members that the Product was required for a particular purpose; impliedly warranted that the Product was merchantable; failed to adequately warn Plaintiffs and Class Members of the Product's defect; negligently designed and manufactured the Product; and concealed and suppressed material facts concerning

---

[12] For the second cause of action, they also cite California Civil Code § 1770(a)(5) and (a)(7), but that is apparently a typo.

24

United States District Court
Northern District of California

1    the Product." FAC ¶ 80.  Under their unfair business practice claim, they allege that Simpson

2    "fail[ed] to disclose material safety facts concerning the Product that they had a duty to disclose."

3    *Id.* ¶ 84.  These causes of action depend on the other claims, which for reasons already explained,

4    all fail.  Thus, like Plaintiffs' other claims, these claims fail.

5            **8.      Simpson's Statutes of Limitation Argument**

6            Simpson alleges that all of Plaintiffs' claims are barred by statutes of limitations.  "Under

7    Florida law, a cause of action accrues when the last element of the cause of action occurred or, in

8    the case of fraud-based claims, when the plaintiff either knows or should know that the last

9    element of the cause of action occurred." *Z-Rock Communs. Corp. v. William A. Exline, Inc.*,

10   2004 U.S. Dist. LEXIS 15807, at *22-23 (N.D. Cal. Aug. 6, 2004) (citing *Davis v. Monahan*, 832

11   So. 2d 708, 709 (Fla. 2002)).  California applies a similar "delayed discovery" rule.  *Fox v.*

12   *Ethicon Endo- Surgery, Inc.*, 35 Cal. 4th 797, 807-808 (2005) ("The discovery rule only delays

13   accrual until the plaintiff has, or should have, inquiry notice of the cause of action.").  Simpson

14   alleges that no delayed discovery rule can be applicable here because Plaintiffs have not alleged

15   delayed discovery.  It argues that a plaintiff must allege when the fraud was discovered, the

16   circumstances under which it was discovered, why the plaintiff is not at fault for failing to

17   discover the fraud sooner, and that the plaintiff had not been put on inquiry notice.  In California,

18   in order to establish fraudulent concealment so as to toll the statute of limitations, "the complaint

19   must show: (1) when the fraud was discovered; (2) the circumstances under which it was

20   discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or

21   presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.*,

22   39 Cal. App. 3d 315, 321 (1974) (citing *Kimball v. Pacific Gas & Elec. Co.*, 220 Cal. 203, 215

23   (1934); *see also Raifman v. Wachovia Secs*, 649 Fed. Appx. 611, 613 (9th Cir. 2016) ("To take

24   advantage of the discovery rule, a plaintiff must 'specifically plead facts to show (1) the time and

25   manner of discovery and (2) the inability to have made earlier discovery despite reasonable

26   diligence.'") (quoting *Grisham v. Philip Morris, USA, Inc.*, 40 Cal. 4th 623, 638 (2007)).  Under

27   Florida law, "[i]n order to establish fraudulent concealment, plaintiff must allege and establish 1)

28   successful concealment of the cause of action, 2) fraudulent means to achieve that concealment,

25

United States District Court
Northern District of California

and 3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim.*" Burr v. Philip Morris USA Inc.*, 2012 WL 5290164, at *3 (M.D. Fla. Sept. 28, 2012) (citing *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 811 (Fla. Dist. Ct. App. 1995)). The Court found no Florida caselaw stating that a plaintiff seeking to toll a statute of limitations based on fraudulent concealment must plead when the fraud was discovered.  But the requirement is inherent in the delayed discovery doctrine.  "It is well established [] that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) (citing 2 C. Corman, Limitation of Actions §9.7.1, pp. 55-57 (1991)). Without an allegation of when a plaintiff discovered facts forming the basis of an alleged fraud, a court cannot know when the tolling stopped and thus, when the plaintiff pursued a cause of action diligently.  Because Plaintiffs did not allege when they discovered the alleged fraud, they cannot avail themselves of equitable tolling.

## V.    CONCLUSION

For the reasons stated above, the Court **DISMISSES** Plaintiffs' First Amended Complaint. Plaintiffs' first (CLRA), second and third (UCL), fourth (FDUTPA), fifth (breach of express warranty), and ninth (fraud) claims of action are dismissed with leave to amend.

Plaintiffs' sixth (breach of warranty of fitness), seventh (breach of warranty of merchantability), and eighth (negligence) claims are dismissed with prejudice.  Additionally, Fernandina's CLRA claim and the California Plaintiffs' SBA claims are dismissed with prejudice. These claims cannot be cured by amendment.

Plaintiffs shall file any amended complaint by June 16, 2020.

**IT IS SO ORDERED.**

Dated: May 19, 2020

THOMAS S. HIXSON
United States Magistrate Judge

26