1
2
3
4                   UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7    SIMON NGUYEN, et al.,                    Case No. 19-cv-07901-TSH

8                    Plaintiffs,

9         v.                                  ORDER RE MOTION FOR
                                              SANCTIONS PURSUANT TO RULE 11
10   SIMPSON STRONG-TIE COMPANY,
     INC., et al.,                            Re: Dkt. No. 43
11
                     Defendants.
12

13                          I.     INTRODUCTION

14        Plaintiffs brought this putative class action alleging that Defendant Simpson Strong-tie

15   Company, Inc. and Simpson Manufacturing, Inc. (collectively, "Simpson") concealed from

16   consumers that its construction connectors and fasteners prematurely corrode and fail, requiring

17   costly repairs and causing danger to homeowners whose homes are equipped with the products.

18   On May 15, 2020, the Court dismissed Plaintiffs' First Amended Complaint (the "FAC").  ECF

19   No. 57.  Pending before the Court is Defendants' Motion for Sanctions Pursuant to Federal Rule

20   of Civil Procedure 11 (the "Sanctions Motion").  For the reasons set forth below, the Court

21   **GRANTS** Defendants' motion.

22                          II.    BACKGROUND

23        The Court discussed in detail the factual allegations in the FAC in its recent order granting

24   Simpson's Motion to Dismiss (the "Order") and finds no need to rehash them again at this point.

25   *See* Amend. Order re Mot. to Dismiss at 1-4, ECF No. 57.  It will discuss allegations in the

26   original Complaint ("OC") and FAC only to the extent necessary for this motion.

27        The original Plaintiffs in this action were Cary W. Cooper and Terri G. Cooper, Georgia

28   residents who own a home in Florida, and Fernandina Beach, a Florida limited liability company

("LLC") that owns property in Florida.  OC ¶ 12, 16, ECF No. 1.  They filed their OC on December 2, 2019.  The gist of Plaintiffs' action was that some of Simpson's products, a range of construction connectors and fasteners designed to provide homes structural support against strong winds and seismic activity (the "Product"), are defective and corrode prematurely, causing the Product to fail "well before its reasonable useful life, putting homeowners at risk and requiring costly repairs." *Id.* ¶ 2.  Plaintiffs alleged that Simpson knew of the defect but omitted or concealed it, intentionally misleading customers about the quality and durability of the Product and its ability to secure and stabilize structures, to induce Plaintiffs and Class Members to purchase the Product.  *Id.* ¶¶ 40, 61-62.  They alleged that Simpson concealed the "inability of the Product to withstand environmental factors that cause premature corrosion . . . ." *Id.* ¶ 123. According to Plaintiffs, Simpson described the Product "in such a way that a reasonable consumer would expect the Product to last the entire life of a home and that the Product was capable of resisting corrosion and protecting against strong winds and seismic activity for the entire life of the home." *Id.* ¶ 92.  Plaintiffs asserted nine causes of action: unfair competition, or unfair or deceptive acts or practices, in violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770(a)(5) and (a)(7); unlawful business practices in violation of the California unfair competition law ("UCL"), California Business and Professions Code § 17200 *et seq.*; unfair business practices in violation of the UCL; a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute § 501.201 *et seq.*; breach of express warranty; breach of implied warranty of fitness; breach of implied warranty of merchantability; negligence; and fraud through non-disclosure or concealment.

On February 4, 2020, Simpson sent a letter to Plaintiffs' Counsel (hereinafter "Counsel") notifying them that it believed they had violated Rule 11 of the Federal Rules of Civil Procedure in filing their OC.  *See* Decl. of Erick C. Howard in Support of Defs.' Mot. for Sanctions ("Howard Decl.") ¶ 2, Ex. A (the "First Rule 11 Letter"), ECF No. 45-1.  Simpson proffered that Counsel had either "failed to investigate the factual basis" for the claims it made in the OC, "or purposefully determined to mislead the Court regarding the warnings, recommendations, and guidelines Simpson provides in connection with the products that are the subject of the

Complaint." *Id.* at 2. Simpson asserted there was no factual basis for Plaintiffs' allegations, that it "provides extensive warnings regarding the fact that its products may suffer corrosion under a variety of conditions" (the "corrosion warnings"), and that it explicitly advises customers that it cannot provide estimates of the life of its products due to many variables beyond its control. *Id.* Simpson pointed out that its 2001 website (the "Website") and its 2016 High Wind-Resistant Construction Application Guide (the "Application Guide"), each of which Plaintiffs referenced in their OC (*see, e.g.*, OC ¶¶ 24, 25, 35(c)), both provided explicit corrosion warnings. *Id.* at 2-4.

Simpson also filed its Motion to Dismiss the OC (the "First Motion") on February 4. ECF No. 17. It argued for dismissal on a number of grounds, the broadest being that all nine of Plaintiffs' causes of action were implausible because Simpson's corrosion warnings contradicted Plaintiffs' allegations that it failed to provide such warnings, and because Plaintiffs did not allege that they or anyone else followed Simpson's recommendations, guidelines, and warnings concerning its products. First Motion at 8-12. Simpson argued that Plaintiffs failed entirely to acknowledge the corrosion warnings. *Id.* at 8-9. As a matter of law, it argued that Fernandina lacked standing to pursue a CLRA violation claim because as an LLC, it is not a "consumer" for purposes of that act. *Id.* at 22-23. It proffered several grounds on which the Florida Plaintiffs' breach of express and implied warranty claims were subject to dismissal. *Id.* at 14-19. Among those reasons was that: the parties lacked privity with Simpson to be able to bring breach of express warranty claims under either Florida or California law; the Product is not a "consumer good" under California's Song-Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code §§ 1790, *et seq.*, because the act applies only to goods sold in California and the OC did not allege that the Products were purchased here; the SBA applies only to goods sold in California and the Products were not sold in California; like the CLRA violation claim, Fernandina's breach of warranty claims failed because it is an LLC and thus is not a "buyer" under the SBA; and the breach of implied warranty of fitness claim failed because Plaintiffs had not alleged a "particular purpose" for the Product and thus could not sustain that claim under either Florida or California law. *Id.* at 14-19. Simpson also argued that Florida's Economic Loss Rule ("ELR") barred the Plaintiffs' tort claims because they had not alleged the Product caused bodily injury or physical damage to "other

3

United States District Court
Northern District of California

property" to be able to avoid that rule and recover on its tort claims. *Id.* at 23-24.

Instead of filing an opposition to the First Motion, Plaintiffs filed their FAC on February 25, 2020. ECF Nos. 16, 17. The FAC added two California Plaintiffs, Simon Nguyen and Thoai Doan, who own a home in California. FAC ¶ 20. Although the FAC now acknowledged Simpson's corrosion warnings, Plaintiffs' factual allegations remained largely the same as the OC. Whereas Plaintiffs had alleged that Simpson failed to disclose the Product defect, they now alleged that Simpson had failed to "adequately" disclose that the product would corrode even when selected and installed pursuant to Simpson's instructions and guidelines. *E.g.*, FAC ¶¶ 39, 45, 52, 53, 60(d). They realleged that the Product "was described [by Simpson] in such a way that a reasonable consumer would expect the Product to last the entire life of a home and that the Product was capable of resisting corrosion and protecting against strong winds and seismic activity for the entire life of the home." *Id.* ¶ 106. And they asserted the same nine causes of action.

Simpson filed its Motion to Dismiss the FAC (the "Second Motion" or "MTD") on March 17, 2020. ECF No. 35. Simpson argued that Plaintiffs' re-worked allegations that despite the corrosion warnings Simpson failed to adequately warn consumers lacked plausibility and thus Plaintiffs' claims did as well. MTD at 9-13. In particular, Simpson argued that Plaintiffs' causes of action lacked plausibility because "(1) the Corrosion Warnings defeat[ed] the contention that Simpson failed to warn that the Product could corrode even if selected and installed correctly; (2) Plaintiffs [did] not and [could not] properly allege that they or anyone else followed Simpson's recommendations, guidelines, and warnings regarding the specification, installation, and maintenance of the Product; and (3) there [was] no basis for any claim of reliance since Plaintiffs admit, among other things, that they never read the Corrosion Warnings." MTD at 9.

On March 19, 2020, Simpson served a copy of its Sanctions Motion along with a cover letter (the "Second Rule 11 Letter") again asserting the reasons why Simpson believed it would be entitled to sanctions. Howard Decl. ¶ 4, Ex. C, ECF No. 45-3. Simpson proposed that the Parties meet and confer regarding the issues it identified in that letter and their Sanctions Motion. On March 31, 2020, Plaintiffs responded, asserting that the FAC had evidentiary support. Howard

Decl. ¶ 5, Ex. D, ECF No. 45-4.  Plaintiffs did admit that an allegation in the FAC, concerning a Simpson employee's purported admission that the Product was not performing as designed, was not accurate.  However, they otherwise did not address the issues raised in Simpson's March 19 letter.

The Parties met and conferred on April 3, 2020.  They agreed to stipulate to strike from the FAC the inaccurate allegation of the Simpson employee's purported admission.  Simpson "invited Plaintiffs' counsel to provide more information regarding Plaintiffs' position on the other matters raised in the Second Rule 11 Letter[, but] Plaintiffs' counsel declined to do so."  Howard Decl. ¶ 6.  Instead, "Plaintiffs' counsel indicated that Plaintiffs might propose certain amendments to the FAC in connection with their opposition to Simpson's [MTD] . . . ."  *Id.*  Simpson waited to file its Sanctions Motion to see if Plaintiffs might seek to amend the FAC to resolve some of the issues Simpson had raised, but Plaintiffs did not.  *Id.*

On May 1, 2020, Simpson filed its Sanctions Motion.  The Court granted Simpson's MTD on May 15 and dismissed the FAC based on most of the grounds Simpson had asserted.  ECF Nos. 56 (the May 15, 2020 Order), 57 (the May 19, 2020 Amended Order[1]).  Plaintiffs filed their Opposition to the Sanctions Motion (the "Sanctions Opposition") the same day.  ECF No. 54.  On May 22, Simpson filed its Reply.  ECF No. 58.  The Court granted Plaintiffs leave to file a supplemental brief (the "Supplemental Brief"), which they filed on June 17, ECF No. 68, and Simpson filed an opposition to the supplemental brief on June 23 (the "Supplemental Response"), ECF No. 74.

## III.   LEGAL STANDARDS

Rule 11, Fed. R. Civ. P., provides:

> (a) Every pleading, written motion, and other paper must be signed by at least one attorney of record . . . .
>
> (b) By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry

---

[1] The Amended Order was identical to the May 15 Order dismissing the FAC, except that it clarified whether Plaintiffs' breach of express warranty was dismissed with or without leave to amend and specified a deadline for Plaintiffs to file an amended complaint.

reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

(c) If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

The Rule imposes upon attorneys a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact and have a colorable basis in law. *Wendelberger v. Deutsche Lufthansa AG*, 2018 WL 2387858, at *2 (N.D. Cal. May 25, 2018) (citing *Bus. Guides, Inc. v. Chromatic Comm. Enters., Inc.*, 498 U.S. 533, 542 (1991)). It "authorizes sanctions for its violation and serves 'to deter baseless filings in district court and thus streamline the administration and procedure of federal courts.'" *Wendelberger*, 2018 WL 2387858, at *2 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), *partially superseded by statute as stated in De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003)); *id.* at 393 ("[T]he central purpose of Rule 11 is to deter baseless filings in district court.").

A party moving for sanctions must do so separately from any other motion and may not present a motion for sanctions to the court until 21 days after service of the motion on the opposing party. Fed. R. Civ. P. 11(c)(2). This twenty-one-day, "safe harbor" provision allows the non-moving party opportunity to withdraw or correct any alleged deficiencies before sanctions are imposed. *Id.* (The motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . . ."); Fed. R. Civ. P. 11, advisory committee's notes to 1993 amendments ("Comm. Notes") ("Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed."). A court may award to the prevailing party the "reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).

United States District Court
Northern District of California

"[A]n appellate court [applies] an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Cooter & Gell*, 496 U.S. at 405. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* Despite a district court's wide discretion, "'Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.'" *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2020 U.S. Dist. LEXIS 64477, at *5 (N.D. Cal. Apr. 13, 2020) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)). Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs*, 859 F.2d at 1344.

## IV.   DISCUSSION

### A.   Whether Sanctions Are Appropriate

#### 1.   The Rule 11 Violations

Simpson asserts three reasons for why Counsel violated Rule 11: (1) the FAC made allegations regarding the corrosion warnings while ignoring the content of those warnings, which content contradicted Plaintiffs' allegations; (2) the FAC included "diametrically opposed allegations" as to whether the Product is integrated into Plaintiffs' homes in the hope of avoiding the ELR; and (3) the FAC asserted causes of action that were not warranted by existing law. Sanctions Mot. at 11. On the latter point, Simpson argues "the issue [was] not Plaintiffs taking the opposing side to Simpson on difficult or complicated questions of law or fact that require[d] the Court to parse allegations or weigh competing precedent. Rather, the instances represent Plaintiffs taking a position that [was] wholly unsupported by clear, undisputed, black letter law, without any argument or potential argument to the contrary, or to justify any change or extension of the law." *Id.* at 14.

"Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127

(9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). Turning first to the second prong, Counsel either failed to conduct a competent inquiry into the facts necessary to support their claims, or didn't bother including them in the OC or FAC. As the Court discussed in its Order, among the facts which the FAC failed to allege were which of Simpson's Product models were installed on Plaintiffs' homes, in what application or where on Plaintiffs' structures the Product was installed, when it was installed, and if the Product was installed in accordance with Simpson's recommendations. *See* Order at 6-9. Information of this nature was necessary to make plausible the allegation in the FAC that the Product suffered from a defect. It was information that Plaintiffs had or were best positioned to obtain. Counsel were obligated to inquire into these facts and put some meat on the bones of the complaint, instead of asserting broad claims based on sparse factual allegations. *See Christian*, 286 F.3d at 1127 (an attorney "has a duty prior to filing a complaint to conduct a reasonable factual investigation"); Comm. Notes ("Tolerance of factual contentions in initial pleadings . . . when . . . made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to . . . make claims . . . without any factual basis or justification."); *Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 82 (D.D.C. 2013) ("the Federal Rules of Civil Procedure require a plaintiff to put some meat on the bones from the outset"). Their failure to do so meant that the FAC was factually and legally baseless, which answers the inquiry under the first prong. The paucity of fact allegations rendered implausible a core allegation of the FAC, and, as a result, all nine of Plaintiffs' claims. Whether a violation of Rule 11 "infected the entire pleading, or only one particular count or defense" is a factor "a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate." Comm. Notes.

What's more, Counsel cherry picked and incorporated into the FAC isolated portions of Simpson's Application Guide and Website, *see, e.g.*, FAC ¶¶ 39, 45(c), while simply ignoring other language which, as Simpson rightly asserted, contradicted core allegations made in the FAC. For example, the FAC cited the Application Guide when alleging that "[t]he Product was described in such a way that a reasonable consumer would expect the Product to last the entire life

United States District Court
Northern District of California

of a home and that the Product was capable of resisting corrosion and protecting against strong winds and seismic activity for the entire life of the home." *Id.* ¶ 106.  But the Guide expressly stated otherwise and made clear that corrosion of Simpson's products was possible.  *See, e.g.*, Application Guide at 9 ("Due to the many variables involved, Simpson Strong-Tie *cannot provide estimates of service life of connectors and fasteners.*") (emphasis added); *id.* at 11 ("The many variables present in a building environment make it impossible to accurately predict if, or when, corrosion will begin or reach a critical level."); Website at 27 ("Connectors are steel and will corrode . . . if exposed to . . . substances that adversely affect steel.); *id.* at 32 ("Most of our connectors are galvanized, however, *that does not mean they are corrosion proof.*") (emphasis added).  The result was that the FAC was factually misleading, which can warrant sanctions.  *See Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002) ("The district court concluded that Plaintiff's complaint was sanctionable because it was both legally frivolous and factually misleading.  Rule 11(c) allows sanctions if a filing suffers from either of those defects."); *Cooter & Gell*, 496 U.S. at 398 (Rule 11 sanctions are an "incentive to 'stop, think and investigate more carefully before serving and filing papers.'") (quoting Amendments to Rules, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules) (March 9, 1982)).

Counsel had to have reached the conclusion that the corrosion warnings seriously negated a core allegation of the FAC, i.e., that Simpson described the Product in such a way that a reasonable consumer would expect that it "was capable of resisting corrosion . . . for the entire life of the home."  FAC ¶ 106.  But instead of withdrawing this assertion after Simpson raised the possibility of a Rule 11 violation, or alleging other facts to beef up the allegations about the expected life of the Product, they doubled down and instead resorted to selectively citing the Application Guide while ignoring the content of the corrosion warnings.  For example, they alleged that "Simpson's 'Corrosion Warnings' never disclose that the Product will corrode under reasonably foreseeable conditions even when the installer follows the instructions."  FAC ¶ 46.  But that's just not true.  *See also, e.g.*, FAC ¶ 68 ("Through [its] representations, [Simpson] created a reasonable expectation among ordinary customers and in the construction trades that the

Product would have a useful life spanning the life of the home"). Counsel attempt to get around the fact that Simpson's corrosion warnings defeated their allegations by adding language to the FAC to the effect that Simpson failed to warn that its product would corrode "even when used pursuant to Simpson's guidelines" or "instructions" did not fix things. *See, e.g.*, FAC ¶ 39 ("Its 'Corrosion Warnings,' . . . do not adequately disclose . . . the Product . . . will foreseeably corrode long before its usual life . . . even if the installer follows the installation instructions."), ¶ 46 ("Simpson's 'Corrosion Warnings' never disclose that the Product will corrode under reasonably foreseeable conditions even when the installer follows the instructions."). But the corrosion warnings also make clear that Simpson's products can corrode even when used properly. *See* Application Guide at 11 ("It is common to see some corrosion in outdoor applications. Even stainless steel can corrode. . . . If significant corrosion is apparent or suspected . . . [r]eplacement of affected components may be appropriate."); Website at 32 ("Most of our connectors are galvanized, however, *that does not mean they are corrosion proof*.") (emphasis added). Plaintiffs' refusal to withdraw or meaningfully amend these allegations, which were core to its FAC, was a violation of Rule 11. *See* Comm. Notes ("The rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions. It also [] emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention."); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988) ("Rule 11 sanctions shall be assessed if the paper filed in the district court and signed by an attorney is frivolous, legally unreasonable, or without factual foundation . . . .") (citation and internal quotation marks omitted).

The FAC also asserted several claims not supported by existing law, and Counsel made no attempt to argue for an extension, modification, or reversal of law. For example, the California Plaintiffs could not assert warranty claims under the SBA because the Products they purchased as part of their home were not "new." The ELR barred Plaintiffs' negligence claim because the FAC did not allege that the Products have caused bodily injury or physical damage to "other property." Counsel did not address Simpson's argument that Fernandina could not bring a claim under the

United States District Court
Northern District of California

1    CLRA because an LLC is not an "individual."  Counsel never addressed the content of the

2    corrosion warnings.  And they simply ignored language *from the warranty they cited in the FAC*

3    which expressly disclaimed warranties of merchantability or fitness.

4           Finally, in the FAC Counsel made flatly contradictory factual allegations concerning

5    whether repair of the Product would necessarily cause damage to the rest of Plaintiffs' homes.

6    Simpson had argued—and the Court later agreed—that under both Florida and California law, the

7    ELR expressly limits negligence liability with respect to defective products to injury caused to

8    persons or damage caused to property other than the defective product itself.  Order at 21 (citing

9    *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *Tiara Condo. Ass'n v.*

10   *Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla. 2013)).  Faced with this unfavorable point of

11   law, which Simpson had asserted as a ground for dismissal in its First Motion, *see* First Motion at

12   23-26, Counsel plainly tried to plead around it by newly alleging that "[t]he Product is a distinct

13   product and is not so integrated into the houses in which it is installed such that repairs necessarily

14   include harm and damage to other products and property including other components of the home

15   . . . ."  FAC ¶ 128.  But the FAC still contains allegations, carried over from the OC, that "repair

16   and replacement of the Product . . . will necessarily involve damage to other products," *id.* ¶ 43;

17   OC ¶ 33, and "Defendants are also responsible for the damage resulting from the course of repairs

18   to replace the Product in Plaintiffs' homes," *id.* ¶ 55; OC ¶ 42.  Counsel must have known that the

19   FAC contradicted itself.  If they learned along the way that one of Plaintiffs' claims was no longer

20   legally tenable, Rule 11 called upon them to withdraw that claim, or at least *attempt* to argue

21   otherwise or argue for "extensions, modifications, or reversals of existing law" (they didn't), not

22   to "insist[] upon a position after it [was] no longer tenable" by pleading plainly contradictory facts

23   in the same complaint.  *See* Comm. Notes; *id.* (The rule "emphasizes the duty of candor by

24   subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable .

25   . . ."); *id.* ("Subdivision (b) does not require a formal amendment to pleadings for which

26   evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such

27   claims or defenses."); *but see PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007)

28   ("[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing

*successive* pleadings that make inconsistent or even contradictory allegations.").

### 2.    Counsel's Arguments

Counsel's opposition papers do not help their case and really only serve to magnify the careless manner in which the FAC was prepared.  Confronted with the fact that Simpson's corrosion warnings eviscerated core allegations as framed in the FAC, Counsel in their Sanctions Opposition, remarkably, do a 180 and now argue that both the Application Guide and the Website are unauthenticated or inadmissible.  But that argument is senseless and flies in the face of the FAC itself: it was Counsel who cited to and relied on both the Application Guide and the Website in both the OC and FAC, and not just for providing background information about Simpson's products, but in making allegations core to the complaint.  *See, e.g.*, OC ¶ 30, FAC ¶ 39 (quoting the Application Guide in alleging that Simpson "represented that 'whether [consumers] search by product or application, Simpson Strong-Tie has the right connector to help [consumers] build safe, strong structures.'"); OC ¶ 35, FAC ¶ 45 (relying on language from the Website in alleging that Simpson made representations, "published in product catalogs and manuals, as well as on the Defendants' website," "that the Product is durable, good quality, and will secure and stabilize structures"); OC ¶ 55, FAC ¶ 68 (relying on the Application Guide in alleging that "[t]hrough these representations, [Simpson] created a reasonable expectation among ordinary customers and in the construction trades that the Product would have a useful life spanning the life of the home in which the Product was installed.").  Lest there was doubt about the centrality of that evidence to Plaintiffs' allegations, Counsel resolved it when, in opposing the MTD, they asserted that "Plaintiffs allege the terms of Simpson's express warranty with reference to the limited warranty" that was contained in the Application Guide.  Opp'n to MTD at 9, ECF No. 9; *id.* at 10 (quoting the Website and writing "Simpson made express warranties about the Product, including that the Products are 'free from defects in material or manufacturing . . . .'").  For Plaintiffs to do an about-face and assert now that the Application Guide and Website are inadmissible is an admission that the FAC had nothing to stand on, which further makes sanctions appropriate.[2]  *See WhatsApp*,

---

[2] If Counsel believed the Application Guide and Website were inadmissible and inauthentic, *they* should have refrained from filing a complaint which explicitly incorporated and relied on that

1    2020 U.S. Dist. LEXIS 64477, at *4 ("Rule 11 authorizes sanctions for its violation and serves "to

2    deter baseless filings in district court and thus streamline the administration and procedure of

3    federal courts.") (quoting *Cooter & Gell*, 496 U.S. at 393); *Superior Consulting Servs. v. Steeves-*

4    *Kiss*, 786 Fed. Appx. 648, 651 (9th Cir. 2019) ("A court's finding that a complaint is factually

5    misleading is sufficient to support Rule 11 sanctions.") (citing *Truesdell*, 293 F.3d at 1153).

6              Plaintiffs also spend a good part of their Sanctions Opposition discussing what they now

7    call the "specific risk of failure" in this case, "the lack of concrete cover inherent in the Products'

8    design and installation."  *See* Sanctions Opp'n at 7-8; *id.* at 1 ("The specific defect at issue is the

9    Product's intended, designed, and as-installed lack of concrete cover where the Products exit home

10   foundation slab edges."); *id.* at 9 ("Specifically, the 'warnings' do not disclose **the specific risk of**

11   **failure in HD straps and mudsill anchors when embedded in concrete with a lack of cover at**

12   **the slab edges**.") (emphasis in original).  But nowhere did the OC or the FAC make any

13   allegations concerning concrete covers.  Thus, Plaintiffs' argument here is frivolous, and asserting

14   it behooved Simpson to respond and thus further and unnecessarily drove up Simpson's costs.  It

15   also suggests again that Counsel did not "stop-and-think" before filing the FAC; otherwise they

16   would have made these allegations in the FAC.

17             Counsel's Supplemental Brief ("Supp. Br."), ECF No. 68, fares no better.  Most of the

18   brief doesn't even respond to Simpson's arguments for why sanctions are warranted, but instead is

19   devoted to arguing new legal theories in support of Plaintiffs' allegations regarding their

20   expectations about the life of the Product.  As with Counsel's Sanctions Opposition, this simply

21   _____

22   evidence.  Furthermore, their argument that the corrosion warnings "did not even exist when
     Plaintiffs' homes were built" and thus never reached Plaintiffs, even if it were made at the

23   appropriate time (in opposition to the MTD), would have been estopped: *Plaintiffs* are the Party
     that initially relied on the Application Guide and Website in the OC and FAC.  *See Hamilton v.*

24   *State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("This court invokes judicial
     estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions,

25   but also because of general considerations of the orderly administration of justice and regard for
     the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the

26   courts.") (citation and internal quotation marks omitted); *Lee v. City of Los Angeles*, 250 F.3d 668,
     688 (9th Cir. 2001) ("[A] court may consider material which is properly submitted as part of the

27   complaint on a motion to dismiss without converting the motion [] into [one] for summary
     judgment.  If the documents are not physically attached to the complaint, they may be considered

28   if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on
     them.") (citations and internal quotation marks omitted).

underscores how baseless the FAC was.  Additionally, the brief is misleading.  For example, Counsel assert that the FAC "alleged that the Simpson hurricane ties, which are embedded in foundations and hidden behind walls and ceilings, constitute structural elements, such that a reasonable homeowner would never expect to have to replace them."  Supp. Br. 1.  They cite to paragraphs 27 and 37 of the FAC, but neither of those contained allegations that homeowners expected to never have to replace the Product because it was embedded in foundations or hidden. In fact, nowhere did the FAC make those allegations (it never even alleged that the Product was hidden), because that was not the obvious theory of the FAC.  The FAC clearly alleged that Simpson's representations created the expectation that the Product would never need to be replaced.  *See* FAC ¶ 68 (quoting the Application Guide and alleging "[t]hrough these representations, Defendants created a reasonable expectation . . . that the Product would have a useful life spanning the life of the home in which the Product was installed"); *id.* ¶ 106 (citing the application guide and alleging, "Defendants' Product description did not limit the expected useful life of the product").  The problem for Counsel was that evidence *they* incorporated into the FAC and relied on stripped that allegation of plausibility.  *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate [] where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.") (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)).  Furthermore, Counsel's new argument is contradicted by the allegation in the FAC that that "[t]he Product is a distinct product and is not so integrated into the houses in which it is installed such that repairs necessarily include harm and damage to other products and property including other components of the home . . . ."  FAC ¶ 128.

Similarly, Counsel newly argues that the Product warranty had an unlimited duration by quoting to language from the FAC that isn't actually in the complaint: according to Counsel, the FAC alleges "Defendants' Product description did not limit the expected useful life of the product. *The warranty has no time limit*. . . ."  Supp. Br. at 4, (citing FAC ¶ 106) (emphasis in original). But there is no allegation in paragraph 106 or anywhere in the FAC that Simpson's warranty "had no time limit."  In addition, paragraph 106 of the FAC specifically cites the Application Guide as

being the Product description, and as noted above, the Application Guide expressly disclaimed any representation of service life. By devoting nearly all of their Supplemental Brief to these two arguments, Counsel only succeeded in confirming that the FAC was baseless.

Counsel also contend that sanctions are not appropriate because the Court granted leave to amend some of the claims in the FAC. *See* Supp. Br. at 5. But even here, Counsel miss the mark. The district court case which they cite, *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 2903257 (C.D. Cal. June 7, 2017), does not articulate or stand for a clear rule that sanctions should not be granted when some claims have been dismissed with leave to amend. Plus, there, unlike here, the court found that the complaint was neither factually nor legally baseless. And in the Ninth Circuit case which Counsel cites, *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503 (9th Cir. 1987), leave to amend wasn't even an issue discussed by the Court of Appeals because the district court hadn't even dismissed the complaint; it had ordered sanctions in connection with an improperly named defendant.

Here, the largest problems with the FAC were that Counsel did no competent investigation, and as a result the FAC was legally and factually baseless, and what little investigation they did do – into the Application Guide and the Website – actually discredited the FAC's allegations. Even if new investigation and different legal theories are able to produce a viable Second Amended Complaint, that does not alter the conclusion that the FAC was frivolous, and it does not wipe away the legal expenses Simpson incurred in moving to dismiss it. Rule 11 does not require that the entire lawsuit be frivolous before sanctions may be imposed. Rather, it applies to "a pleading, written motion, or other paper," Fed. R. Civ. Proc. 11(b), and the FAC was a pleading.

Finally, Counsel add a couple additional arguments against sanctions in their Objection to Simpson's supplemental declaration in support of fees. The Court requested Simpson's supplemental declaration not to procure more legal arguments from the parties, but instead for Simpson to provide more information on the amount of fees it is claiming. Simpson's declaration appropriately reflects this by only speaking to the fees Simpson incurred. The Court gave Counsel an opportunity to file an objection for them to be able object to the amount of fees, not to advance new legal arguments against fees. Nevertheless, Counsel spend nearly half of their Objection

United States District Court
Northern District of California

arguing why fees aren't appropriate here, including new legal argument.  The Court should ignore these arguments altogether, especially since the Court already granted them leave to file supplemental briefing and because Simpson has no opportunity to respond; notwithstanding, it has looked at the arguments, and they do not move the needle.  Counsel argue at length that they should be spared sanctions because they and Plaintiffs filed their claims in good faith.  However, even if it is true that Counsel were operating in good faith when they filed the FAC, that wouldn't act as a shield, for Rule 11 does not carry a bad-faith requirement and "'Counsel [cannot] avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head.'" *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) (quoting *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987) (finding that the 1983 amendments to Rule 11 intentionally abandoned a bad-faith requirement)); *see also Cunningham*, 879 F.2d at 490 ("Rule 11 sanctions shall be assessed if the paper filed in the district court and signed by an attorney is frivolous, legally unreasonable, or without factual foundation, even [if] the paper was not filed in subjective bad faith.") (citation and internal quotation marks omitted); *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997) ("Because we conclude that the district court did not clearly err in finding that Terran filed the complaint without conducting the inquiry required under Rule 11, we do not decide the validity of the district court's finding that Terran acted in bad faith.").  Additionally, Counsel make the point that "the Ninth Circuit is 'reluctant to impose sanctions for factual errors, especially errors in papers filed before an opportunity for discovery, if the litigant has conducted a reasonable inquiry into the facts.'"  Obj. at 6, 7 (quoting *Rachel*, 831 F.2d at 1508).  But this principle doesn't apply here: Counsel absolutely knew about the content of the corrosion warnings, as Simpson flagged it for them multiple times, so what exactly was the factual error here?  Counsel do not say.  The FAC lacked any allegations making plausible the claim that the Product was defective precisely because Counsel did not do a reasonable investigation into facts available to Plaintiffs, not because Plaintiff had yet to take discovery from Simpson.  And alleging claims that were directly undercut by the Application Guide and Website that Counsel cited in the FAC shows that Counsel were making allegations in spite of the information known to them, rather than in a state of uncertainty because of a lack of discovery.  Lastly, the Court rejects

United States District Court
Northern District of California

Counsel's suggestion that awarding sanctions here would "deter lawyers from zealous advocacy," Obj. at 7; what it will deter is what it is meant to deter: baseless filings and carelessly executed litigation that wastes judicial resources.

In sum, this is one of those exceptional cases where Rule 11 sanctions are warranted. Counsel either failed to conduct a competent inquiry into the facts necessary to support the claims in the FAC or didn't bother including them[3], which is the flip side of the same coin.  As a result, the FAC was factually baseless.  Counsel insisted on doubling down on certain allegations even after it became apparent that they were untenable.  And by cherry-picking from the Application Guide and Website while simply ignoring the content of the corrosion warnings, and then later arguing that that evidence was inadmissible, Counsel demonstrated an abuse of the judicial process and indifference toward judicial resources, and unnecessarily drove up litigation costs. Not only that, Simpson gave Counsel multiple opportunities and ample time in which they could have remedied these shortcomings.  In light of all this, sanctions are appropriate.  An award of attorneys' fees is the necessary deterrence.  *See Mitchel v. City of Santa Rosa*, 2012 WL 3580534, at *7 (N.D. Cal. Aug. 17, 2012), *aff'd in relevant part*, *rev'd in part and remanded*, 601 F. App'x 466 (9th Cir. 2015) (finding an award of fees appropriate in part because "[p]laintiff had ample notice and opportunity to cure the legally deficiencies in his original claim, and therefore refiling the same claim in the FAC without proper amendment [was] sanctionable under Rule 11"); Comm. Notes ("[A] monetary sanction . . . should ordinarily be paid into court as a penalty. However, under unusual circumstances . . . deterrence may be ineffective unless the sanction . . . directs that some or all of this payment be made to those injured by the violation.").

**B.    Amount of Attorneys' Fees**

Fee awards, if awarded pursuant to Rule 11, are subject to two conditions.  *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL 2183295, at *1 (N.D. Cal. May 11, 2018), *aff'd by* 786 Fed. Appx. 648 (2019) (citing Fed. R. Civ. P. 11(c)(2), (4)).  The award must be limited to

---

[3] It is of no consequence that, as Counsel argues, the Second Amended Complaint "include[s] more specific factual allegations," "better articulates the specific risk not disclosed in Simpson's general corrosion statements." and "further demonstrates the legitimacy of Plaintiffs' claims." Obj. at 5, 6, 7.  The point is that Counsel should have done those things in the first place.

17

fees directly resulting from the violation and the fees awarded must be reasonable.  Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."); *id.* 11(c)(4) ("[I]f imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").  "Courts typically determine reasonableness by conducting a lodestar analysis of the hours expended and the hourly rate charged."  *Steeves-Kiss*, 2018 WL 2183295, at *8 (citing *McGrath v. Cty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)).  "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary."  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citation and internal quotation marks omitted).  Like the determination of whether Rule 11 fees are appropriate, a district court is afforded "considerable deference" in determining whether hours claimed by counsel are excessive, redundant, or otherwise unnecessary, and therefore must only provide a "concise but clear explanation of its reasons" if it reduces the number of hours included in a fee award.  *Id.*  (citation and internal quotation marks omitted).

Simpson requests $170,403.77 in attorneys' fees and costs: 160.30 hours billed preparing the MTD and related papers, for a total of $100,674.18; and 129.7 hours billed preparing the Sanctions Motion and related papers for the remaining $69,729.59.[4]  Supp. Decl. of Erick C. Howard ¶¶ 8-9, ECF No. 63.  Simpson's counsel billed Simpson at the following rates: Erick C. Howard at a rate of $637 per hour through March 2020 and $676.20 per hour after March 2020; Joseph V. Mauch at a rate of $597.80 per hour through March 2020 and $627.20 per hour after March 2020; and Felicia A. Draper at a rate of $563.50 per hour through March 2020 and $578.20 per hour after March 2020.  *Id.* at ¶ 5.  Simpson does not seek recovery of fees billed by other timekeepers, such as a senior partner, a junior associate, and a paralegal.  *Id.* ¶ 7.

As a starting point, Counsel do not object to the rates charged by Simpson's attorneys.

---

[4] Simpson's counsel only requests half of the fees it incurred in preparing its Reply in support of the Sanctions Motion.  Supp. Decl. of Erick C. Howard ¶ 10, ECF No. 63.  They explain that extraordinary circumstances incident to the COVID-19 pandemic have caused their firm to incur more fees than it otherwise would have incurred.  *See id.* ¶ 12.

United States District Court
Northern District of California

Howard is a partner at Shartsis and has more than 24 years of experience as a business litigator. Mauch is also a partner and has more than 12 years of experience as a business litigator. Drapel is counsel and has more than 14 years of experience as the same. Howard states in his declaration that his firm "regularly compares its billing rates to those of similar law firms doing similar work, and through those efforts has determined that our rates for attorneys and other timekeepers are reasonable and at or below the rates of attorneys with similar expertise doing similar work at other comparable firms in San Francisco." *Id.* ¶ 3. Additionally, Courts in this District have found similar rates for attorneys with similar experience to be reasonable. *See, e.g.*, *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (approving $700 hourly rate for public interest lawyer with 20 years of experience); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2010) (finding reasonable $700 hourly rate for civil rights attorney practicing since 1982); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *19 (N.D. Cal. Apr. 1, 2011) (hourly rate of $650 reasonable for attorney with 17 years of experience); *Californians for Disability Rights v. Cal. Dep't of Transp.*, 2010 WL 8746910, at *3 (N.D. Cal. Dec. 13, 2010) (hourly rates of $570 and $650 reasonable for attorneys with 10 to 18 years of experience); *Oldoerp v. Wells Fargo & CompanyLong Term Disability Plan*, 2014 WL 2621202, at *2 (N.D. Cal. June 12, 2014) ($600 for lead attorney was a reasonable hourly rate for his services); *Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 159 F. Supp. 3d 1121, 1127 (N.D. Cal. 2016) ("$600 hourly fee is reasonable in this market"); *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1001–02 (N.D. Cal. 2012) (hourly rate of $550 was reasonable for experienced attorney). The Court finds the rates are reasonable.

Turning to the number of hours Simpson's attorneys expended, Counsel argue "the magnitude of Simpson's request is unreasonable on its face," that "[i]t should not cost anywhere near $170,000 to draft a motion to dismiss and a duplicative sanctions request." Obj. at 4. Counsel also argue that Simpson has "failed to meet its burden of producing time records with sufficient detail to demonstrate reasonable time opposing whatever the Court determines could be sanctionable." *Id.* at 3. On this later point the Court agrees that time records would have been preferable, but the failure to provide them does not make it appropriate to deny Simpson's request

United States District Court
Northern District of California

19

1  altogether.

2      Simpson's counsel states that they billed about 160 hours preparing the MTD and related

3  papers for a total fee of $100,674.18.  Simpson's motion to dismiss raised many arguments in

4  support of dismissal, its arguments were effective, and Simpson ultimately prevailed on nearly all

5  of them.  Simpson's counsel thoroughly researched the relevant law in making arguments,

6  including both Florida and California statutes and caselaw.  In short, within the necessary

7  constraints of page limits, the MTD packed a good punch.  Also, Simpson's reply was well

8  prepared and thoroughly responded to Plaintiffs' opposition.  In the end, Simpson prevailed on

9  both the MTD and its Sanctions Motion.  Nevertheless, the hours billed by Simpson's counsel,

10  three attorneys with over 50 years of experience in business litigation, do seem excessive.  *See*

11  *Eagle Sys. & Servs. v. Int'l Ass'n of Machinists*, 2017 WL 1213373 (Mar. 31, 2017) (41 hours

12  drafting a motion to dismiss was reasonable); *Gallagher v. Lions Gate Entm't Inc.*, 2015 WL

13  6478210, at *4 ("The Court [] does not see how it is reasonable to have two partners and two

14  associates researching and writing a brief for" a motion to dismiss for 72 hours, plus an additional

15  30 drafting a second motion in response to an amended complaint with "only a few new and

16  inconsequential allegations.") (citations to the record omitted); *Lin v. Dignity Health-Methodist*

17  *Hosp.*, 2014 U.S. Dist. LEXIS 155980, at *14 (Nov. 3, 2014) (time entries showed

18  "inefficiencies" where attorney with "extensive experience" spent "in excess of 44 hours

19  researching, drafting, and revising the motion to strike and allowable portions of the motion to

20  dismiss").  Because Simpson has not provided a detailed accounting of what hours were spent on

21  specific tasks by each attorney, the Court cannot determine how much time was spent on particular

22  activities to determine if the time spent was reasonable.  "The party seeking fees bears the burden

23  of documenting the hours expended in the litigation and must submit evidence supporting those

24  hours and the rates claimed."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007)

25  (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The Ninth Circuit has held that it is

26  reasonable to conclude that a party fails to carry its burden of documenting the hours expended

27  when that party engages in "block billing" because block billing makes it more difficult to

28  determine how much time was spent on particular activities.  *Welch*, 480 F.3d at 948 (citations

United States District Court
Northern District of California

20

United States District Court
Northern District of California

1   omitted).  Accordingly, the Court will reduce fee amount for fees related to the MTD by half, to

2   $50,338.

3          Concerning the Sanctions Motion, Simpson's counsel states that they billed 129.7 hours

4   preparing that and related papers for a total of $69,729.59.  Even though they argued the Sanctions

5   Motion well and ultimately prevail here as well, this amount also seems excessive.  Because the

6   Court again cannot tell how much time was spent on particular activities, it will reduce this

7   amount by half, to $34,865, for a total amount of fees of $85,203.

8                                    **V.    CONCLUSION**

9          For the reasons stated above, Defendants' Motion for Sanctions is **GRANTED**.  The Court

10  **ORDERS** that monetary sanctions in the amount of $85,203.00 are awarded in favor of

11  Defendants and against Plaintiffs' Counsel.  The firms of Plaintiffs' Counsel are jointly and

12  severally liable for this amount.  Fed. R. Civ. P. 11(c)(1).

13         **IT IS SO ORDERED.**

14

15  Dated: September 2, 2020

16                                                        _____
                                                         THOMAS S. HIXSON
17                                                       United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28