**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Michael F. Ram, SBN 104805
mram@forthepeople.com
Marie Appel, SBN 187483
mappel@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Graham B. LippSmith, SBN 221984
g@lippsmith.com
Celene Chan Andrews, SBN 260267
cca@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 344-1820
Facsimile: (213) 513-2495

Kenneth S. Kasdan, SBN 71427
kskasdan@kasdancdlaw.com
Scott J. Thomson, SBN 237052
sthomson@kasdancdlaw.com
**KASDAN TURNER**
**THOMSON BOOTH, LLP**
1990 N. California Blvd., Suite 1060
Walnut Creek, CA 94596
Telephone: (925) 906-9220
Facsimile: (925) 906-9220

Stephen G. Larson, SBN 145225
slarson@larsonllp.com
Paul A. Rigali, SBN 262948
prigali@larsonllp.com
Chaitra G. Betageri, SBN 312760
cbetageri@larsonllp.com
Tyler J. O'Brien, SBN 325421
tobrien@larsonllp.com
**LARSON LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 436-4864
Facsimile:  (213) 623-2000

Attorneys for Plaintiffs and the Putative Class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAVI SALHOTRA, SANDHYA SALHOTRA, MELISSA CARD, KEVIN SULLINS, MAURICE VAN ROEKEL AS TRUSTEE OF THE VAN ROEKEL SURVIVOR'S TRUST, CORY CZARNIK, and NOLA CZARNIK on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SIMPSON STRONG-TIE COMPANY, INCORPORATED, a California corporation; SIMPSON MANUFACTURING COMPANY, INCORPORATED, a Delaware corporation; and DOES 1 through 200, inclusive,<br><br>    Defendants. | No. 3:19-cv-07901-TSH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT O PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:    October 21, 2021<br>Time:    9:00 a.m.<br>Location:   Courtroom G<br>The Honorable Thomas S. Hixson |

` **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    SUMMARY OF FACTS ................................................................................ 2

     A.     Simpson's Products ............................................................................ 2

     B.     Simpson's Warranties ........................................................................ 2

     C.     Simpson's Product Defects and Knowledge of Defects ..................... 3

           1.     The products have inadequate concrete cover to prevent corrosion......... 3

           2.     The Products create a wedge where concrete is porous. ......................... 4

           3.     Simpson's warnings and installation instructions are inadequate. .......... 5

           4.     Simpson failed to disclose the defect in the products............................. 7

III.   THE PROPOSED CLASSES ........................................................................ 8

IV.   ARGUMENT ............................................................................................... 9

     A.     Legal Standards Governing Class Certification ................................. 9

     B.     Plaintiffs Satisfy the Requirements of Rule 23(a). ......................... 10

           1.     Plaintiffs satisfy numerosity. ................................................................ 10

           2.     Plaintiffs satisfy commonality. ............................................................. 10

           3.     Plaintiffs satisfy typicality. .................................................................. 11

           4.     Plaintiffs satisfy adequacy. .................................................................. 12

     C.     Plaintiffs Satisfy the Requirements of Rule 23(b)(3). .................... 13

           1.     Common issues of law and fact predominate........................................ 13

           2.     Class treatment is superior.................................................................... 18

     D.     Plaintiffs Satisfy the Requirements of Rule 23(c)(4). ..................... 20

     E.     The Court Should Apply California Law Because Simpson is Headquartered in California and Made the Key Decisions in California. ................... 20

V.     CONCLUSION ......................................................................................... 22

` REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**TABLE OF AUTHORITIES**

**Cases**

*Alger v. FCA US LLC*,
  334 F.R.D. 415 (E.D. Cal. 2020) ............................................................. 16, 17

*Allen v. Hyland's Inc.*,
  300 F.R.D. 643 (C.D. Cal. 2014) .................................................................... 21

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................................... 13

*Amgen v. Conn. Ret. Plans & Trust*,
  568 U.S. 455 (2013) .................................................................................... 9, 14

*Baker v. Castle & Cooke Homes Hawaii, Inc.*,
  No. CIV. 11-00616 SOM, 2014 WL 1669158 (D. Haw. Apr. 28, 2014) ......... 15

*Bibo v. Fed. Express, Inc.*,
  No. C 07-2505 TEH, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009)................ 19

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975)........................................................................... 16

*Brazil v. Dell Inc.*,
  No. C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010).............. 9

Briseno *v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017)......................................................................... 19

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013)........................................................................... 15

*Chamberlan v. Ford Motor Co.*,
  223 F.R.D. 524 (N.D. Cal. 2004) .................................................................... 19

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................................................... 18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)..................................................................... 10, 12

*Ellsworth v. U.S. Bank, N.A.*,
  No. C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ............... 15

*Ewert v. eBay, Inc.*,
  No. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 2, 2010) ............. 15

` REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................................................... 10, 14

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .................................................................................................. 11

*In re Google Assistant Privacy Litigation*,
No. 19-CV-04286-BLF, 2021 WL 2711747 (N.D. Cal. July 1, 2021) .............................. 17

*In re MyFord Touch Consumer Litig.*,
No. 13-CV-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) ........................... 17

*In re Toyota Motor Corp.*,
785 F. Supp. 2d 883 (C.D. Cal. 2011) .................................................................................. 21

*Jefferson v. Ingersoll Intern. Inc.*,
195 F.3d 894 (7th Cir. 1999) .................................................................................................... 9

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) ............................................................................................... 18

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012) .................................................................................... 16, 21

*Leyva v. Medline Industries, Inc.*,
716 F.3d 510 (9th Cir. 2013) ................................................................................................. 19

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) ............................................................................................ 9

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008) ................................................................................................... 20

*Menagerie Productions v. Citysearch*,
2009 WL 3770668 (C.D. Cal. 2009) ..................................................................................... 15

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ................................................................................................. 18

*Nw. Fruit Co. v. A. Levy & J. Zentner Co.*,
116 F.R.D. 384 (E.D. Cal. 1986) ............................................................................................ 9

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ................................................................................................. 18

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ........................................................................................ 10, 11

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005) .......................................................................................... 11

`REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
      308 F.R.D. 630 (N.D. Cal. 2015) ................................................................. 20

*United Steel, Paper & Forestry v. ConocoPhillips*,
      593 F.3d 802 (9th Cir. 2010) ...................................................................... 9

*Valentino v. Carter-Wallace, Inc.*,
      97 F.3d 1227 (9th Cir. 1996) ...................................................................... 20

*Victorino v. FCA US LLC*,
      No. 16CV1617-GPC, 2019 WL 5268670 (S.D. Cal. Oct. 17, 2019) ............................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
      564 U.S. 338 (2011) .......................................................................... 9, 10

*Wash. Mut. Bank v. Superior Court*,
      24 Cal. 4th 906 (2001) ...................................................................... 21

*Wolin v Jaguar Land Rover N. Am., LLC*,
      617 F. 3d 1168 (9th Cir. 2010) ............................................................... 15

**Statutes and Regulations**

Cal. Bus. & Prof. Code § 17200 ............................................................... 17

**Rules**

Fed. R. Civ. P. 23(a)(1) ..................................................................... 10

Fed. R. Civ. P. 23(a)(2) ..................................................................... 10

Fed. R. Civ. P. 23(a)(3) ..................................................................... 11

Fed. R. Civ. P. 23(b)(2) ................................................................... 8, 9

Fed. R. Civ. P. 23(b)(3) ............................................................... *passim*

Fed. R. Civ. P. 23(c)(4). .................................................................... 20

` **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.   INTRODUCTION

Plaintiffs and the proposed Class Members inhabit or owned homes with hidden—but defective—structural components. These defects mean that the proposed Class structures remain vulnerable to high wind events, seismic activity, and other forces.

Simpson Strong-Tie Company and Simpson Manufacturing Company, Inc. (collectively "Simpson") manufacture structural connectors for use in residential homes. Simpson markets these connectors as protecting homes from forces known to create life, safety, and property risks. Second Amended Class Action Complaint ("SAC") (ECF 66) ¶ 61. Structural connectors, such as Simpson's HD Strap-Tie Holdowns and MAS Mudsill Anchors Connectors ("Products"), are fundamental to the structural integrity, durability, and lifespan of the homes in which they are installed. *Id.* ¶ 69.

Since at least 2006, Simpson has warranted the performance of its Products with no time limit; thus, Simpson's warranty lasts for at least the life of the home in which the Products are installed. SAC ¶ 99. Simpson expressly warrants that its structural connectors "will perform in accordance with the specifications," reinforcing reasonable expectations that the Products will not fail during the life of a home. Despite Simpson's promises and warranties, its Products are inherently prone to premature corrosion and subsequent failure. Declaration of Paul W. Brown, Ph.D. ("Brown Dec."), ¶ 10.

Plaintiffs are Arizona and California homeowners who purchased homes with Simpson Products embedded in the foundations. SAC ¶¶ 190–197.[1] Simpson's Products fail to perform as warranted. *Id*. In addition, Simpson engaged in unfair business practices in violation of California's Unfair Competition Law ("UCL") by failing to disclose material facts about the Products to the construction trade. *Id*. ¶¶ 173–178. Plaintiffs bring this action on behalf of themselves and members of the proposed Classes, all of whom own or owned homes

---

[1] At a minimum, Plaintiffs and Class Members are intended third party beneficiaries of Simpson's express warranties. *Id*.

` **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1   constructed with Simpson Products embedded in the foundations. *Id*. The proposed Classes

2   meet the requirements of Rule 23, and this Court should certify the Class.

3   **II.      SUMMARY OF FACTS**

4        **A.     Simpson's Products**

5        Simpson designs and sells structural connectors that anchor a home to its concrete

6   foundation. SAC ¶ 67. These connectors are designed to help homes resist forces like wind and

7   seismic activity. *Id*. The Simpson structural connectors relevant to this matter include HD

8   Strap-Tie Holdowns ("HD Straps") and MAS Mudsill Anchors ("MAS Anchors"). *Id*.; *see also*

9   LippSmith Dec. Ex. 1, pp. 182:2–185:25. Simpson has designed and sold the Products for

10  decades. *See* LippSmith Dec. Ex. 1, pp. 73:13–74:1. At installation, Simpson's HD Straps and

11  MAS Anchors are embedded in concrete foundations, hidden from view. *Id*. at p. 78:15–25;

12  114:23–115:1; *see also* Brown Dec., ¶ 19. After installation, the Products cannot be inspected,

13  accessed, or reinstalled without damaging the foundation. LippSmith Dec. Ex. 1, pp. 300:4–

14  302:5; *see also* Brown Dec., ¶ 35. Rather, the Products are installed permanently and intended

15  to last the life of a home. SAC ¶ 72; Brown Dec., ¶¶ 30, 35. Homeowners cannot practically

16  maintain or replace the Products. LippSmith Dec. Ex. 1, pp. 300:4–302:5; Brown Dec., ¶ 35.

17       **B.     Simpson's Warranties**

18       Simpson intends for its Products to last the lives of the homes in which they were

19  installed. SAC ¶ 97; Brown Dec., ¶¶ 30, 35. Although it knew otherwise, Simpson never

20  disclosed that its HD Straps and MAS Anchors were inherently prone to failure, even when

21  installed according to specifications, rendering the Products incapable of delivering their

22  intended and full design strength for the useful lives of the homes in which they were installed.

23  SAC ¶ 97; *see* SAC Ex. 1; *see* Brown Dec., ¶¶ 10, 33. Had Simpson properly disclosed these

24  failures, construction professionals would not have specified, purchased, or installed the

25  Products, particularly because the Products are permanently integrated into original concrete

26  foundations and very difficult to replace or repair upon failure. SAC ¶ 97; *see* Brown Dec.,

27  ¶¶ 33, 35, 36; LippSmith Dec. Ex. 1, p. 78:15–25; 114:23–115:1.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Simpson represented in its catalogs through 2018 that "as long as Simpson's recommendations are followed, Simpson stands behind its product performance" and its "standard warranty . . . applies." LippSmith Dec. Ex. 325, pp. 1–4, 6, 9, and 12. Since at least 2006, Simpson has issued a standard, lifetime warranty with no expiration or time limit. *Id.*; LippSmith Dec. Ex. 2, pp. 52:17–54:3. Given these warranties and how the Products are embedded in the concrete foundations, it is reasonable to expect that Simpson's products will last the lives of the homes in which they are installed. SAC ¶¶ 72, 97; Brown Dec., ¶ 30.

Construction professionals are not the end users of Simpson's Products. SAC ¶ 105; LippSmith Dec. Ex. 1, pp. 270:22–271:15. Instead, Simpson's warranties are intended to benefit homeowners like Plaintiffs and the Class, who own or owned Simpson Products that were installed in their homes. LippSmith Dec. Ex. 2, pp. 52:6–54:12; 155:12–156:10. Thus, Plaintiffs and the Class are intended third-party beneficiaries of Simpson's warranties. For each year Simpson Products were installed in their homes, Plaintiffs are covered by identical, standard lifetime warranties. LippSmith Dec. Ex. 325, pp. 1–4, 6, 9, and 12.

**C.    Simpson's Product Defects and Knowledge of Defects**

**1.    The products have inadequate concrete cover to prevent corrosion.**

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████ It is common knowledge in construction that adequate concrete cover, or the "distance between the outermost surface of [the hardware] and the closest outer surface of the concrete," is required to prevent corrosion in metal structural components embedded in concrete. *E.g.,* ACI 318-14, *Building Code Requirements for Structural Concrete* (defining "cover, specified concrete"); Brown Dec., ¶ 16. The more concrete cover embedded hardware has, the less susceptible that hardware is to corrosion and failure. *See* Brown Dec., ¶¶ 16–18. HD Straps and MAS Anchors are embedded at a 45-degree angle with a portion of the Products sitting above the concrete and subsequently bent vertically and attached to the framing. *Id.* ¶ 20. The Products' design and installation specifications mean that the connector

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  has a progressively diminishing concrete cover, with ultimately no cover at the foundation

2  edge. *Id.* ¶¶ 20, 24. Thus, the Products cannot meet industry-wide requirements for providing

3  enough concrete cover to protect the Products. *Id.* ¶ 20.

4  ████████████████████████████████████████

5  ████████████████████████████████████████

6  ████████████████████████████████████████

7  ███████ Yet, Simpson has inexplicably never once tested how the Products' standard, thin

8  G90 zinc coating performs in concrete, notwithstanding its marketing that G90 coating offers

9  "plenty of protection" for the Products in normal installations. *Compare* LippSmith Dec. Ex. 1,

10  pp. 172:15–176:5 *with* LippSmith Dec. Ex. 324. Despite Simpson's longstanding knowledge

11  that concrete cover is vital to protecting metal structural hardware in concrete, Simpson

12  designed and specified installation instructions so that its Products have progressively

13  diminishing concrete cover that eventually provides no concrete cover at all. LippSmith Dec.

14  Ex. 1, pp. 235:10–237:11. Worst of all, Simpson has known since at least 2003 that its design

15  and installation specifications call for progressively diminishing concrete cover in the parts of

16  the foundation where chloride and oxygen corrosion "mainly occur[]." LippSmith Dec. Ex. 66.

17  Simpson's design, specification, and installation instructions for progressively diminishing to

18  no concrete cover compromise the thin zinc layer that serves as the only barrier to irreversible

19  corrosion in their steel. *Id.*; *see also* LippSmith Dec. Ex. 67 & Brown Dec., ¶¶ 7, 11, 15, 28, 29.

20          **2.**      **The Products create a wedge where concrete is porous.**

21        In addition to their lack of adequate concrete cover by design, the Products produce a

22  zone of porous concrete by design. Ordinarily, when concrete hardens, the cement powder it

23  contains dissolves, resulting in continuous and solid cement paste with some porosity. Brown

24  Dec., ¶ 24. In the usual case, the presence of sand and aggregate in cement paste make the

25  hardened concrete less porous. *Id.* Here, however, the geometric shape of the Products creates a

26  wedge expels the aggregate and sand from the cement mixture. *Id.* Consequently, the wedges

27  contain areas of concrete with a high concentration of cement paste with higher porosity and

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

permeability. *Id.* These areas not only end up with diminishing-to-zero concrete cover, but they also have highly porous concrete in the thin cover zone, which facilitates the corrosion of the embedded Products because that region of the concrete is prone to carbonation, which subjects them to premature corrosion. *Id.*

### 3. Simpson's warnings and installation instructions are inadequate.

Simpson' standard HD Straps and MAS Anchors are made of steel and coated with a very thin layer of zinc or Simpson's "Low" G90 galvanization. LippSmith Dec. Ex. 325, pp. 1–5, 8, 11, & 14. This thin zinc coating is the Products' only defense against corrosion in the underlying steel. Brown Dec., ¶ 15.

Simpson generically recommends various levels of coating for all of its products, based on conditions in the service environments where the products will be installed, and refers to non-corrosive environments as "interior" and "interior dry." LippSmith Dec. Ex. 325, pp. 1–5, 8, 11, & 14. To help select the "most appropriate material and finish for use on its Products, Simpson developed the following general exposure information:

> <u>Interior Dry Use</u>: Includes wall and ceiling cavities, and raised floor applications of enclosed buildings that have been designed to ensure that condensation and other sources of moisture do not develop.

*Id.* at p. 1.

Through 2018, Simpson consistently advised construction professionals to use its standard "Low" G90 galvanization on HD Straps and MAS Anchors when working in an "interior" or "interior dry" environment. LippSmith Dec. Ex. 325, pp. 1–5, 8, & 11. Up until its 2019–2020 catalog, Simpson consistently defined an interior dry environment to be wall and ceiling cavities and raised floor applications in enclosed buildings. *Id.* Simpson represented that the "Low" G90 galvanization "offers plenty of protection as long as you're using dry (less than 19 percent moisture content), ammonia-free ACQ-D lumber, or wood treated with sodium or zinc borate." *Id.* Ex. 324; *see also id.* Ex. 1, pp. 159:8–161:21.

But here, each Product is installed in two very different service environments: (1) one portion of each connector is embedded in concrete and (2) the other portion of each connector

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   is attached to the framing elements of the structure. Brown Dec., ¶¶ 31-33; LippSmith Dec. Ex.

2   1, pp. 162:5-172:12. Unfortunately, Simpson's galvanization specifications address only the

3   service environment *above* the concrete where the Products are attached to framing elements,

4   rather than warning about the second service environment *inside* the concrete where critical

5   failures occur. Brown Dec., ¶¶ 31–33; LippSmith Dec. Ex. 1, pp. 162:5–172:12. Thus, Simpson

6   failed to warn that the concrete environment where the lower portions of the Products are

7   installed are separate service environments susceptible to the transmission of salt, moisture, and

8   oxygen after construction. Brown Dec., ¶¶ 32, 33.

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████

13          Simpson never warned that the Products' lack of adequate concrete cover compromises

14  the Products' sacrificial zinc layer, leading to corrosion in their steel. LippSmith Dec. Ex. 325,

15  pp. 1–5, 8, 11, & 14; Brown Dec., ¶ 32. Simpson also never warned that the concrete

16  foundations in which they are embedded are separate service environments that are neither

17  interior nor dry, particularly where the Products have diminishing to zero concrete cover.

18  LippSmith Dec. Ex. 325, pp. 1–5, 8, 11, & 14; Brown Dec., ¶ 32. Instead, Simpson warned

19  users to consider only the framing environments where G90 galvanization "offers plenty of

20  protection as long as you're using dry (less than 19 percent moisture content), ammonia-free

21  ACQ-D lumber, or wood treated with sodium or zinc borate." LippSmith Dec. Exs. 1, pp.

22  162:5-172:12 & 324. Consequently, no reasonable construction professional could or would

23  have known that Simpson's design, manufacturing, and installation instructions for the

24  Products creates a critical zone of inadequate concrete cover on the Products, compromising

25  their sacrificial zinc coating, leading to premature corrosion of their steel. Brown Dec., ¶¶ 3,

26  32, 33. This is the case even when the Products are used as intended, in reasonably foreseeable

27  conditions, and in compliance with Simpson's specifications. *Id*. ¶ 30.

` REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1        After years of marketing the sufficiency of its "Low" G90 galvanization for its HD

2   Straps and MAS Anchors for the interior dry service environment, Simpson's galvanized

3   Products failed in thousands of homes. To date, none of Simpson's service environment

4   information addressed the separate concrete foundation environment that is neither interior nor

5   dry. And none of Simpson's literature ever warned construction professionals to consider

6   concrete service environment conditions. Although Simpson's 2019–2020 catalog belatedly

7   acknowledged that an interior dry *framing* environment could still contain airborne salt

8   (LippSmith Dec. Ex. 325, p. 14), Simpson continues to omit warnings (1) that the Products are

9   in two separate service environments; and (2) that the Products' concrete service environment

10   is where the chloride and oxygen corrosion "mainly occur[]." LippSmith Dec. Ex. 66.

11          **4.**    **Simpson failed to disclose the defect in the products.**

12        Simpson has known of the risks and manifested effects in HD Straps and MAS Anchors

13   since at least 2003 and has failed to disclose them. LippSmith Dec. Exs. 66-67. In fact,

14

15

16

17

18

19

20

21

22

23

24

25

26

27

` REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1 ████████████████████████████████████████

2 ███████████████████████████████████████

3    ██████████████████████████████████████

4 ███████████████████████████████████████

5 ████████████████████████████████████████

6 █████████████████████████████

## III.    THE PROPOSED CLASSES

Plaintiffs assert claims under California law for breach of express warranty and the unfair business practices prong of the UCL. Plaintiffs request certification of three classes:

National Class: All individuals in the United States who own residential structures constructed with Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors embedded in the foundations and all prior owners of residential structures who paid to repair and/or replace Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors.

California Class: All individuals in California who own residential structures constructed with Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors embedded in the foundations and all prior owners of residential structures who paid to repair and/or replace Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors.

Arizona Class: All individuals in Arizona who own residential structures constructed with Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors embedded in the foundations and all prior owners of residential structures who paid to repair and/or replace Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors.

Excluded from all three Classes are Defendants, their legal representatives, assigns and successors, and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Plaintiffs seek certification of the proposed National Class, or in the alternative, the proposed California and Arizona Classes, pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23") for monetary relief and pursuant Rule 23(b)(2) for injunctive relief. Alternatively, Plaintiffs seek issue certification pursuant to Rule 23(c)(4).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   These proposed Class definitions are "precise, objective, and presently ascertainable."

2   *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Here, "[c]lass membership is

3   determined based on a set of objective criteria, making the class easily identifiable and

4   sufficiently ascertainable for certification." *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010

5   WL 5387831, at *2 (N.D. Cal. Dec. 21, 2010).

6   ## IV.   ARGUMENT

7   ### A.   Legal Standards Governing Class Certification

8   A class action provides the best, most efficient means for resolving this matter, which

9   concerns the premature failure of millions of Simpson's Products nationwide.

10   To certify a class action pursuant to Rule 23, Plaintiffs must establish each of the

11   following: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

12   *United Steel, Paper & Forestry v. ConocoPhillips*, 593 F.3d 802, 806 (9th Cir. 2010).

13   Plaintiffs must also satisfy Rule 23(b)(3)'s predominance and superiority requirements

14   to obtain monetary relief and Rule 23(b)(2)'s general applicability requirement to obtain

15   injunctive relief. Class actions for monetary and injunctive relief are not mutually exclusive.

16   *See Nw. Fruit Co. v. A. Levy & J. Zentner Co.*, 116 F.R.D. 384, 389–90 (E.D. Cal. 1986)

17   (certifying a class pursuant to Rule 23(b)(2) and (b)(3)); *Jefferson v. Ingersoll Intern. Inc.*, 195

18   F.3d 894, 898 (7th Cir. 1999) (holding divided certification allows courts "to certify the

19   injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3),

20   achieving both consistent treatment of class-wide equitable relief and an opportunity for each

21   affected person to exercise control over the damages aspects").

22   The Court must conduct a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

23   338, 351 (2011), but has "no license to engage in free-ranging merits inquiries at the

24   certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust*, 568 U.S. 455, 466 (2013).

25   \\\

26   \\\

27   \\\

` REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**B.      Plaintiffs Satisfy the Requirements of Rule 23(a).**

**1.      Plaintiffs satisfy numerosity.**

Simpson sold millions of the Products between 1992 and 2018. Therefore, the numerosity requirement of Rule 23(a)(1) is satisfied for each proposed Class.

**2.      Plaintiffs satisfy commonality.**

Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that "class members have suffered the same injury." *Dukes,* 564 U.S. at 350 (internal quotation marks and citation omitted). Commonality does not mean every class member's claim must stem from identical factual circumstances. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Dukes,* 564 U.S. 338 ("The existence of shared legal issues with divergent factual predicates is sufficient [for commonality], as is a common core of salient facts coupled with disparate legal remedies within the class."). Courts construe commonality "permissively and [a]ll questions of fact and law need not be common." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (internal quotation marks and citation omitted); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009) (holding "common" does not mean "complete congruence") (internal quotation marks and citation omitted).

Here, common issues of law and fact include, among others, the following:

- Whether the Products, when embedded in concrete, are inherently susceptible to premature corrosion;
- Whether the Products are substantially certain to corrode during the reasonable, useful life of the homes in which the Products are installed;
- Whether the Products are defective because they lack adequate concrete cover by design, manufacture, and installation;
- Whether the Products, when embedded in concrete, are suitable for use as long-term structural connectors;
- Whether Simpson knew of the defective nature of the products when

`                   <span style="color:red">**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**</span>

embedded in concrete before making them available for purchase;

- Whether Simpson knew that the Products would prematurely fail when embedded in concrete even when properly selected and installed;

- Whether Simpson failed adequately to disclose to construction professionals the defective nature of the Products when embedded in concrete, even when installed pursuant to Simpson's instructions and specifications;

- Whether the facts Simpson failed to disclose to construction professionals were material safety facts;

- Whether Simpson breached its warranty; and

- The cost of repair and replacement of the Products.

### 3. Plaintiffs satisfy typicality.

Rule 23(a)(3) requires that the proposed Class Representatives claims be typical. The court considers "whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). Typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.,* 231 F.R.D. 391, 396 (N.D. Cal. 2005) (internal quotation marks and citation omitted).

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez,* 591 F.3d at 1124 (internal quotation marks and citation omitted). Plaintiffs' claims are typical: Plaintiffs own or owned homes constructed with the Products; Simpson knew about the Product defects; Simpson failed to disclose the Product defects to construction professionals; Simpson provided a lifetime warranty for the Products; the Products do not perform as warranted; and Class Members have suffered damages as a result.

\\\

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

### 4.    Plaintiffs satisfy adequacy.

When determining adequacy under Rule 23(a)(4), "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (internal quotation marks and citations omitted). Here, Plaintiffs easily meet both prerequisites.

First, Plaintiffs' interests do not conflict with other Class Members' interests. Each Class Member's claims arise under the same legal theories and each Class Member suffered the same harm: prematurely corroding Products in homes they own or owned. All homes Plaintiffs own had one or more Products with corrosion through the thin zinc layer and into the steel. Brown Dec., ¶ 7. A compilation of pictures of those corroded products in each of Plaintiff's homes are attached to the LippSmith Dec. at Exhibits 326–330. Accordingly, Plaintiffs' interests align with the interests of the absent Class Members they seek to represent.

Plaintiffs have also demonstrated their adequacy to represent the class by devoting substantial time and energy to participate in this litigation, including assisting with the initial investigation of the case; providing information for the complaint; gathering documents; working with counsel to respond to written discovery; appearing for depositions; making their homes available for inspection, destructive testing, and put back, which took hours over the course of days; and periodically consulting with counsel about the case. Declaration of Melissa Card in Support of Plaintiffs' Motion for Class Certification ("Card Dec.") ¶¶ 12–13; Declaration of Cory Czarnik in Support of Plaintiffs' Motion for Class Certification ("Cory Czarnik Dec.") ¶¶ 12–13; Declaration of Nola Czarnik in Support of Plaintiffs' Motion for Class Certification ("Nola Czarnik Dec.") ¶¶ 12–13; Declaration of Kevin Sullins in Support of Plaintiffs' Motion for Class Certification ("Sullins Dec.") ¶¶ 12–13. The proposed Class Representatives are committed to looking out for the interests of other Class Members, want to stand up for similarly situated homeowners, understand the duties and responsibilities associated with serving as a Class Representative, and have not been promised anything in

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1 exchange for their efforts in representing the proposed Class. Card Dec. ¶¶ 8–9, 11, 14; Cory

2 Czarnik Dec. ¶¶ 8–9, 11, 14; Nola Czarnik Dec. ¶¶ 8–9, 11, 14; Sullins Dec. ¶¶ 8–9, 11, 14.

3      Second, the law firms serving as proposed Class Counsel are well-suited to continue

4 vigorously representing the interests of the proposed Classes. The attorney declarations

5 demonstrate that proposed Class Counsel have the background, experience, and resources

6 necessary to represent the interests of the Class competently and vigorously.

7      The law firms of Morgan & Morgan, LippSmith LLP, and Kasdan Turner Thomson

8 Booth, LLP have extensive experience successfully prosecuting claims on behalf of consumer

9 classes, particularly in product liability and construction defect cases. Declaration of Michael

10 Ram in Support of Motion for Class Certification ¶¶ 6–8; LippSmith Dec. ¶¶ 8–10; Declaration

11 of Kenneth S. Kasdan in Support of Motion for Class Certification ¶ 7. The law firm of Larson

12 LLP has extensive experience in class action litigation, including representing consumers in

13 nationwide and statewide actions. Declaration of Stephen G. Larson in Support of Motion for

14 Class Certification ¶¶ 9–11. Proposed Class Counsel have worked together, diligently

15 represented the proposed Classes, protected the proposed Classes' interests, reviewed tens of

16 thousands of pages of documents, hired and consulted with experts, conducted inspections and

17 destructive testing, amended the complaint, and engaged in significant law and motion.

18 LippSmith Dec. ¶ 22.

19      **C.**    **Plaintiffs Satisfy the Requirements of Rule 23(b)(3).**

20      Class certification is appropriate when "questions of law or fact common to class

21 members predominate over any questions affecting only individual members," and "a class

22 action is superior to other available methods for fairly and efficiently adjudicating the

23 controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied.

24      **1.**    **Common issues of law and fact predominate.**

25      Federal Rule of Civil Procedure 23(b)(3) requires that "questions of law or fact

26 common to class members predominate over any questions affecting only individual members."

27 The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).

2  Plaintiffs must establish that "questions of law or fact common to class members predominate

3  over any questions affecting only individual members." *Amgen*, 568 U.S. at 459 (internal

4  quotation marks and citation omitted). "Rule 23(b)(3), however, does *not* require a plaintiff

5  seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to

6  classwide proof." *Id.* at 469 (internal quotation marks and citation omitted) (emphasis in

7  original). Rather, "[w]hen common questions present a significant aspect of the case and they

8  can be resolved for all members of the class in a single adjudication, there is clear justification

9  for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150

10  F.3d at 1022 (internal quotation marks and citation omitted).

11      Here, predominating common questions include whether the Defect is covered by the

12  warranty, whether the warranty runs to homeowners, whether Simpson breached that warranty;

13  and for the unfairness claim, whether Simpson knew of the Defect and failed adequately to

14  disclose it to construction professionals.

15      The critical, common questions that will drive the resolution of this litigation include:

16  • Whether the Products, when embedded in concrete, are inherently
17      susceptible to premature corrosion;

18  • Whether the Products are substantially certain to corrode during the
19      reasonable, useful life of the homes in which the Products are installed;

20  • Whether the Products are defective because they lack adequate concrete
21      cover by design, manufacture, and installation;

22  • Whether the Products, when embedded in concrete, are not suitable for use
23      as long-term structural connectors;

24  • Whether Simpson knew of the defective nature of the Products when
25      embedded in concrete before making them available for purchase;

26  • Whether Simpson knew that the Products would prematurely fail when
27      embedded in concrete even when properly selected and installed;

MEMORANDUM IN SUPPORT OF                                    No. 3:19-cv-07901-TSH
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
14

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

- Whether Simpson failed adequately to disclose to construction professionals the defective nature of the Products when embedded in concrete even when installed pursuant to Simpson's instructions and specifications;
- Whether the facts not disclosed by Simpson to construction professionals were and are material;
- Whether the Simpson warranty for the Products runs to the Class Members as third party beneficiaries;
- Whether Simpson breached its warranty for the Products; and
- The cost of repair and replacement of the Products.

All Class Members own or owned homes with similarly defective Products that breach Simpson's express, lifetime warranty, satisfying predominance. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (finding certification appropriate given "a single, central, common issue of liability: whether the Sears washing machine was defective"); *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 WL 2734953, at *20 (N.D. Cal. June 13, 2014) ("[C]ourts routinely certify class actions regarding breaches of form contracts."); *see also Ewert v. eBay, Inc.*, No. C-07-02198 RMW, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 2, 2010) ("[I]n construing the form contract between eBay and class members, the court need not delve into the actual knowledge of individual class members. The court therefore concludes that plaintiffs' breach of contract claim does not raise individual issues likely to be the object of most of the court's and the parties' efforts."); *Baker v. Castle & Cooke Homes Hawaii, Inc.*, No. CIV. 11-00616 SOM, 2014 WL 1669158, at *13 (D. Haw. Apr. 28, 2014) (same); *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CASFMO, 2009 WL 3770668 at *10 (C.D. Cal. Nov. 9, 2009) (same). A trial in this matter will focus primarily on Simpson's conduct and will consist of substantial common evidence, including documents, testimony, and expert analysis relating to the existence of the defect and Simpson's warranty, knowledge of the defect, and warnings.

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F. 3d 1168 (9th Cir. 2010), which

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   involved breach of warranty, is instructive and requires certification here. In *Wolin*, Land Rover

2   argued class vehicles did not suffer from a common defect but "from tire wear due to individual

3   factors such as driving habits and weather." *Id*. at 1173. The Ninth Circuit held that "proof of

4   the manifestation of a defect is not a prerequisite to class certification" and that Land Rover's

5   argument regarding individualized factors inappropriately focused on the merits. *Id*. "For

6   [plaintiffs'] claims regarding the existence of the defect and the defendant's alleged violation of

7   consumer protection laws, this inquiry does not overlap with the predominance test." *Id.*; *see*

8   *also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) ("[N]either the possibility that a

9   plaintiff will be unable to prove his allegations, nor the possibility that the later course of the

10  suit might unforeseeably prove the original decision to certify the class wrong, is a basis for

11  declining to certify a class which apparently satisfies the Rule.")

12      Therefore, "on class certification, Plaintiff does not have to demonstrate a manifestation

13  of a current defect or that there is a substantial certainty of manifestation in the future on a

14  claim for breach of warranty claim." *Victorino v. FCA US LLC*, No. 16CV1617-GPC, 2019

15  WL 5268670, at *5 (S.D. Cal. Oct. 17, 2019) (citing *Wolin*,  617 F.3d at 1173). Following

16  *Wolin*, Plaintiffs need only establish—and have established—that their claim for breach of

17  express warranty is susceptible to common proof.

18      Moreover, class certification is "easily met" in cases "where 'claims of all prospective

19  class members involve the same alleged defect, covered by the same warranty.'" *Alger v. FCA*

20  *US LLC*, 334 F.R.D. 415, 423 (E.D. Cal. 2020) (quoting *Wolin*,  617 F.3d at 1172); *see also*

21  *Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 536 (C.D. Cal. 2012) ("[T]he court cannot

22  discern why, at the class certification stage, plaintiffs must adduce evidence that a defect is

23  substantially certain to arise in all class vehicles during the vehicles' useful life."); *Victorino*,

24  2019 WL 5268670, at *4 (holding the fact "that Plaintiff's vehicle has not yet manifested a

25  defect is not a required showing on class certification and is a merits-based question").

26      In *Baker v. Castle & Cooke Homes Hawaii, Inc*., the Hawaii district court certified a

27  class, finding as follows: "The central common question is not whether particular fittings are in

` **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1   fact corroding prematurely, but whether C & C had fittings installed that *tend to corrode*

2   *prematurely.* Answering this common question will be valuable to resolving all class members'

3   claims, even if some of them do not manifest injury." 2014 WL 1669158, at *6. The court

4   added that "plaintiffs in a product liability suit are not required to show that they are suffering

5   identical harm at an identical rate for their claims to be common. If that were so, classes in

6   product liability suits could rarely be certified." *Id.*

7           Further, in *In re MyFord Touch Consumer Litig.,* Judge Chen held as follows:

8           [T]he same common issues remain in the case, including (a) whether class
            vehicles suffered from a common defect in MFT's base architecture; (b) whether
9           any of Ford's 11 software updates . . . during the class period successfully resolved
            that common defect; and (c) damages per vehicle . . . .  These common issues are
10          central to all class members' claims and continue to predominate.

11  No. 13-CV-03072-EMC, 2018 WL 3646895, at *3 (N.D. Cal. Aug. 1, 2018). Similarly,

12  certification of the express warranty claims is appropriate here.

13          In addition, the Court also should certify Plaintiffs' unfair competition claims pursuant

14  to the UCL Cal. Bus. & Prof. Code § 17200. Focusing on Simpson's conduct, and therefore,

15  common issues, Plaintiffs can show that Simpson's conduct was unfair by proving that "the

16  gravity of the harm" to class members outweighs "the utility of the defendant's conduct."  *See*

17  *In re Google Assistant Privacy Litigation,* No. 19-CV-04286-BLF, 2021 WL 2711747, at *20

18  (N.D. Cal. July 1, 2021) (For the unfair prong of the UCL, the court must "weigh the utility of

19  the defendant's conduct against the gravity of the harm to the alleged victim." (quoting *Davis v.*

20  *HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)).

21          Similar to the claims in *Alger*, "Plaintiff's claim regarding the UCL's unfairness prong

22  is predominated by common questions. That prong requires showing a violation of 'established

23  public policy' or business practices that are 'immoral, unethical, oppressive or unscrupulous

24  and cause injury to consumers, which outweigh its benefits.'" 334 F.R.D. at 426 (quoting

25  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)). Here, as there, "Plaintiff[s]

26  will be able to show a violation of this prong with common evidence, because the claims all

27  stem from the same uniform defect that creates similar safety risks." *Id.* "[D]ifferences in

`<span style="color:red">**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**</span>

1   damage calculations do not defeat class certification[.]" *Pulaski & Middleman, LLC v. Google,*

2   *Inc.*, 802 F.3d 979, 988 (9th Cir. 2015); *accord Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811,

3   817 (9th Cir. 2019).  Even after *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), "[d]amages

4   calculations alone . . . cannot defeat certification." *Id.* (citing *Yokoyama v. Midland National*

5   *Life Insurance Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) and finding that District Court abused

6   its discretion by denying class certification on this basis). "So long as the plaintiffs were

7   harmed by the same conduct, disparities in how or by how much they were harmed [do] not

8   defeat class certification." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014)

9   (citation omitted).

10      Here, because the damages are subject to common proof, the damages Simpson's

11  conduct caused also predominates over individualized issues. The cost of repairs to replace the

12  defective Products is susceptible to class-wide measurement. Declaration of Dana C. Bergeman

13  in Support of Plaintiffs' Motion for Class Certification, ¶ 4. Generally, a repair program in a

14  similar case would involve replacement of the existing Products with new connectors on a one-

15  for-one basis. *Id.* ¶ 18. This kind of repair involves a "uniform, routine work," from start to

16  finish. *Id.* ¶ 22; *see also id.* ¶¶ 20–21. The cost of this work is readily calculable using a unit

17  cost estimating model, a reliable method widely used in the construction industry. *Id.* ¶¶ 23–27.

18  The unit cost estimating model can be used for any city or state, using published data and cost

19  adjustment indexes for each region. *Id.* ¶ 28. Alternatively, damages can be measured by

20  calculating the pricing for Simpson's Products, considering both the price paid for the Products

21  over time and Simpson's revenue for the Products over time. *Id.* ¶¶ 4, 29. Calculations related

22  to Simpson's revenue stream would support a restitution remedy for Plaintiffs' unfair

23  competition claim.

24              **2.        Class treatment is superior.**

25      Courts consider four factors in evaluating superiority: "(A) the class members' interests

26  in individually controlling the prosecution or defense of separate actions; (B) the extent and

27  nature of any litigation concerning the controversy already begun by or against class members;

MEMORANDUM IN SUPPORT OF                                          No. 3:19-cv-07901-TSH
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  (C) the desirability or undesirability of concentrating the litigation of the claims in the

2  particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P.

3  23(b)(3). Here, all four factors support class certification.

4    First, Class Members have little interest in individually controlling the prosecution of

5  these claims because the high cost of the litigation (including discovery costs, destructive and

6  laboratory testing expenses, and expert fees) outweighs Class Members' potential individual

7  recoveries. "Where recovery on an individual basis would be dwarfed by the cost of litigating

8  on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at

9  1175. Moreover, it is "far more efficient" to litigate Plaintiffs' common defect claims "on a

10  classwide basis rather than in thousands of individual and overlapping lawsuits." *Id.* at 1176;

11  *Bibo v. Fed. Exp., Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *9 (N.D. Cal. Apr. 21,

12  2009) (holding "avoiding repetitious suits . . . is a valid factor weighing toward class

13  treatment").

14    Moreover, a class action is a superior method of adjudication when "few class members

15  would have any meaningful redress" against a defendant because few potential class members

16  could afford to undertake individual litigation. *See Chamberlan v. Ford Motor Co.,* 223 F.R.D.

17  524, 527 (N.D. Cal. 2004) ("[I]n the absence of a class action, few class members would have

18  any meaningful redress against [defendant] as a practical matter."); *Leyva v. Medline Indus.,*

19  *Inc.,* 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class

20  members' potential individual monetary recovery, class certification may be the only feasible

21  means for them to adjudicate their claims."). Here, even if Plaintiffs could afford to bring their

22  own claims, it would result in thousands of trials, each relitigating the same legal and factual

23  questions about the Products' defect and Simpson's representations and practices.

24    Finally, the Ninth Circuit has rejected requiring a showing of "administrative

25  feasibility" at the class certification stage. *Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121,

26  1123 (9th Cir. 2017).

27  \\\

`   REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**D.      Plaintiffs Satisfy the Requirements of Rule 23(c)(4).**

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The Ninth Circuit has explained that, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the *entire action* is warranted, Rule 23[(c)(4)] authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (emphasis added). The theory underlying the rule is that "the advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.,* 308 F.R.D. 630, 632 (N.D. Cal. 2015) (quoting Wright *et al.,* Fed. Prac. & Proc. § 1790).

Here, if the Court determines that Plaintiffs have not satisfied the predominance requirement, issue certification would materially advance this litigation by enhancing efficiency and controlling costs. *See McLaughlin v. Tobacco Co.,* 522 F.3d 215, 234 (2d Cir. 2008). Indeed, implicit in the predominance test is the notion that adjudicating common issues will aid judicial economy. *Valentino*, 97 F.3d at 1234 (citing Newberg & Conte, § 4.25 at 4–86). Issues appropriate for certification overlap with those that establish commonality and predominance and include whether the Products are defective, Simpson's liability for breach of express warranty or unfair competition pursuant to the UCL, and Simpson's Product-wide defenses. Accordingly, if this Court determines that class certification is not appropriate pursuant to Rule 23(b)(3), it should certify the common issues pursuant to Rule 23(c)(4).

**E.      The Court Should Apply California Law Because Simpson is Headquartered in California and Made the Key Decisions in California.**

Under California's choice of law rules, Plaintiffs bear the initial burden of showing that California has "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class" such that application "of [the forum's] law is not

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  arbitrary or unfair." *Wash. Mut. Bank v. Superior Court,* 24 Cal. 4th 906, 921 (2001) (internal

2  quotation marks and citations omitted). Once Plaintiffs make this showing, the burden shifts to

3  Simpson to demonstrate "that foreign law, rather than California law, should apply to class

4  claims." *Id.* at 921. Moreover,

5       California UCL statutory remedies are available to non-California residents if they were

6  harmed by wrongful conduct that occurred in California. *In re Toyota Motor Corp. Unintended*

7  *Acceleration Mktg.*, 785 F. Supp. 2d 883, 916 (C.D. Cal. 2011) (citations omitted). *See* MTD

8  Order (ECF 101) at 25 (applying *In re Toyota Motor Corp.* and finding that Plaintiffs have

9  alleged facts sufficient for the non-California Plaintiffs to seek relief under the UCL).

10       "In determining whether the UCL . . . appl[ies] to non-California residents, courts

11  consider where the defendant does business, whether the defendant's principal offices are

12  located in California, where class members are located, and the location from which advertising

13  and other promotional literature decisions were made." *In re Toyota*, 785 F. Supp. at 917

14  (citations omitted); *see also Allen v. Hyland's Inc.*, 300 F.R.D. 643, 656–57 (C.D. Cal. 2014)

15  ("Plaintiffs have sufficiently demonstrated that this action is tied to California, such that the

16  application of California law would not be arbitrary or unfair.") and *Keegan,* 284 F.R.D. at

17  538–39 (finding that "plaintiffs have made a sufficient showing that the application of

18  California law to non-California residents would not offend the class members' due process

19  rights").

20       Here, Simpson's principal place of business is in California, "Simpson's marketing and

21  advertising decisions are made in" California, and Simpson's engineering, product

22  development, and sales departments are all based in California. *See* SAC ¶ 15. Plaintiffs'

23  claims under the UCL, allege that Simpson "failed to adequately warn . . . of the defects" (*id.* ¶

24  169), and that it "engaged in an unfair business practice by failing to disclose material safety

25  facts concerning the Products that they had a duty to disclose." *Id.* ¶ 174. Plaintiffs have alleged

26  with sufficient detail that "Simpson's marketing and advertising decisions are made in"

27  California. *E.g.,* SAC ¶ 15. Accordingly, the Arizona and National Classes may seek relief

MEMORANDUM IN SUPPORT OF                                    No. 3:19-cv-07901-TSH
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  under the UCL.

2  **V.    CONCLUSION**

3      Plaintiffs respectfully request that the Court enter an order certifying the proposed

4  Classes, appointing Plaintiffs as Class Representatives, appointing Morgan & Morgan;

5  LippSmith LLP; Larson LLP; and Kasdan Turner Thomson Booth, LLP as class counsel.

6  Dated: August 20, 2021                By:         */s/ Michael F. Ram*

7                                                    Michael F. Ram

8                                        **MORGAN & MORGAN**
                                         **COMPLEX LITIGATION GROUP**
9                                        Michael F. Ram
                                         Marie N. Appel
10

11                                       **LIPPSMITH LLP**
                                         Graham B. LippSmith
                                         Celene Chan Andrews
12

13                                       **KASDAN TURNER**
                                         **THOMSON BOOTH, LLP**
14                                       Kenneth S. Kasdan
                                         Scott J. Thomson
15

16                                       **LARSON LLP**
                                         Stephen G. Larson
17                                       Paul A. Rigali
                                         Chaitra G. Betageri
18                                       Tyler J. O'Brien

19                                       Attorneys for Plaintiffs and the Putative
                                         Classes
20

21

22

23

24

25

26

27