1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    RAVI SALHOTRA, et al.,                    Case No.  19-cv-07901-TSH

8                      Plaintiffs,
                                               **ORDER DENYING MOTION FOR**
9              v.                              **CLASS CERTIFICATION; GRANTING**
                                               **DEFENDANTS' REQUEST FOR**
10   SIMPSON STRONG-TIE COMPANY,               **JUDICIAL NOTICE; DENYING**
     INC., et al.,                             **DEFENDANTS' OBJECTIONS TO**
11                                             **PLAINTIFFS' NON-EXPERT**
                     Defendants.               **DECLARATIONS; GRANTING**
12                                             **DEFENDANTS' MOTION TO**
                                               **EXCLUDE EXPERT TESTIMONY;**
13                                             **DENYING AS MOOT PLAINTIFFS'**
                                               **MOTION TO STRIKE DEFENDANTS'**
14                                             **OBJECTIONS, DEFENDANTS'**
                                               **MOTION TO STRIKE REPLY**
15                                             **EVIDENCE, AND DEFENDANTS'**
                                               **OBJECTIONS TO NEW REPLY**
16                                             **EVIDENCE; AND GRANTING IN**
                                               **PART AND DENYING IN PART**
17                                             **MOTIONS TO SEAL**

18                                             Re: Dkt. Nos. 132, 133, 134, 144, 145, 146,

19                                             150, 157, 163, 164, 168

20

21                      **I.    INTRODUCTION**

22          Plaintiffs brought this putative class action alleging that Defendants' construction

23   connectors and fasteners prematurely corrode, causing danger to Plaintiffs' properties and

24   requiring costly repairs.  Pending before the Court are Plaintiffs' Motion for Class Certification

25   (ECF No. 133), Defendants' Request for Judicial Notice (ECF No. 144), Defendants' Objections

26   to Plaintiffs' Non-Expert Declarations (ECF No. 145), Defendants' Motion to Exclude Expert

27   Testimony (ECF No. 146), Plaintiffs' Motion to Strike Defendants' Objections to Non-Expert

28   Declarations (ECF No. 157), Defendants' Objections to Plaintiffs' New Reply Evidence (ECF No.

163), Defendants' Motion to Strike New Reply Evidence (ECF. No. 164), and Administrative Motions to Seal (ECF Nos. 132, 134, 150, and 168).

Having considered the parties' positions, relevant legal authority, and oral argument, the Court **DENIES** Plaintiffs' Motion for Class Certification, **GRANTS** Defendants' Request for Judicial Notice, **DENIES** Defendants' Objections to Plaintiffs' Non-Expert Declarations, **GRANTS** Defendants' Motion to Exclude Expert Testimony, **DENIES AS MOOT** Plaintiffs' Motion to Strike Defendants' Objections to Non-Expert Declarations, **DENIES AS MOOT** Defendants' Objections to Reply Evidence, **DENIES AS MOOT** Defendants' Motion to Strike New Reply Evidence, and **GRANTS IN PART and DENIES IN PART** the parties' Administrative Motions to Seal for the following reasons.[1]

## II.   BACKGROUND

### A.   Factual Background

This case concerns HD Strap-tie Holdowns and MAS Mudsil Anchors (collectively, "Products") created, marketed, and sold by defendants Simpson Strong-Tie Company and Simpson Manufacturing Company Inc. (collectively "Simpson").  SAC ¶¶ 18-19, 24, 26, 31, 33, 38, 40, 45, 47, 53.  The Products are embedded in homes' concrete foundations, nailed to structural members, and covered with house wrap or exterior cladding.  *Id*. ¶¶ 19(a)-(b), 25, 32, 39, 46, 52.  The Products are made of steel and coated with a standard "Low" G90 galvanization, a thin layer of zinc, designed to protect the Products from corrosion.  *Id*. ¶ 74.  Between 1992 and 2018, Simpson sold more than 426 million Products.  *Id*. ¶ 76.

Simpson advertises its Products to construction professionals in Simpson's Wood Construction Connector Catalogs (the "Catalogs").  *Id*. ¶ 62.  Simpson's Catalogs provide corrosion information, recommendations, specifications, and warranties that broadly apply to all of Simpson's connectors.  *Id*. ¶ 63.  From 2005 to 2018, Simpson advertised the Products' G90 galvanization was sufficient to protect the Products from corrosion.  *Id*. ¶ 86.  Simpson's express warranty for the Products states:

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 22, 48, 72, 106

United States District Court
Northern District of California

1
2
3
4
5

> Simpson Strong-Tie connectors are designed to enable structures to resist the movement, stress, and loading that results from impact events such as earthquakes and high velocity winds. Other Simpson Strong-Tie products are designed to the load capacities and uses listed in this catalog. Properly-installed Simpson Strong-Tie Products will perform in accordance with the specifications set forth in the applicable Simpson catalog. Additional performance limitations for specific products may be listed on the applicable catalog pages.

6   *Id.* ¶ 99.

7         Plaintiffs are California and Arizona homeowners with homes containing Simpson's

8   Products in the concrete foundations.  *Id.*  ¶¶ 18-19, 24, 26, 31, 33, 38, 40, 45, 47, 53.  Plaintiffs

9   assert Simpson's Products are inherently defective and prone to premature corrosion, thereby

10  beaching Simpson's express warranty.  *Id.*  ¶ 123.

11  **B.**    **Procedural Background**

12        On December 2, 2019, Plaintiffs Cary Cooper, Terri Cooper, and Fernandina Beach LLC

13  filed this suit against Simpson on behalf of themselves and others similarly situated.  ECF No. 1.

14  On February 25, 2020, Plaintiffs Cary Cooper, Terri Cooper, Fernandina Beach LLC, Simon

15  Ngyugen and Thoai Doan filed an amended complaint against Simpson on behalf of themselves

16  and others similarly situated.  ECF No. 28.[2]  On May 19, 2020, the Court granted Simpson's

17  Motion to Dismiss Plaintiffs' First Amended Complaint.  ECF No. 57.

18        On June 16, 2020, Plaintiffs Simon Nguyen, Thoai Doan, Ravi Salhotra, Sandyha Salhotra,

19  Melissa Card, Kevin Sullins, Maurice Can Roekel, Cory Czarnick, and Nola Czarnick

20  (collectively, "Plaintiffs") filed a Second Amended Complaint ("SAC") on behalf of themselves

21  and others similarly situated, alleging Simpson's marketing materials constituted false and

22

23     

24  [2] Both complaints alleged the same nine causes of action: (1) violation of California Consumers Legal Remedies Act, California Civil Code §1770(a)(5) and (a)(7); (2) violation of California Unfair Competition Law—Unlawful Business Practice, California Business and Professions Code §17200 *et seq* for creating and selling an allegedly defective product; (3) violation of California Unfair Competition Law—Unlawful Business Practice, California Business and Professions Code §17200 *et seq* for failing to disclose material safety facts regarding products; (4) violation of Florida's Deceptive and Unfair Trade Practices Act for a material omission regarding Simpson's products; (5) breach of express warranty; (6) breach of implied warranty of fitness; (7) breach of implied warranty of merchantability; (8) negligence; and (9) fraud, nondisclosure, and concealment.  ECF Nos. 1 at ¶¶ 58-127; 28 at ¶¶ 71-141

25
26
27
28

United States District Court
Northern District of California

misleading representations about the Products' design, quality, durability, performance, technical capabilities, and value. *Id*. at ¶ 133. The SAC alleged the following eight causes of action: (1) violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770(a)(5) and (a)(7); (2) violation of the California Unfair Competition Law ("UCL"), Unlawful Business Practice, California Business and Professions Code § 17200 *et seq*.; (3) violation of the UCL, Unfair Business Practice; (4) violation of the UCL, Fraudulent Business Practice; (5) violation of the Arizona Consumer Fraud Act ("CFA"), A.R.S. § 44-1521 et seq.; (6) breach of express warranty; (7) negligent misrepresentation; and (8) fraud.

On September 8, 2020, the Court granted in part and denied in part Simpson's Motion to Dismiss the SAC. ECF No. 101. The Court held that, although Plaintiffs had standing to assert their claims and Plaintiffs suffered an injury in fact, Plaintiffs failed to plead fraud by omission, fraud by misrepresentation, and negligent misrepresentation. *Id*. at 10-23. Accordingly, the Court dismissed with prejudice all of Plaintiffs' claims sounding in fraud and negligent misrepresentation. *Id.* at 23.[3]

On August 20, 2021, Plaintiffs moved to certify the following three classes:

> National Class: All individuals in the United States who own residential structures constructed with Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors embedded in the foundations and all prior owners of residential structures who paid to repair and/or replace Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors.

> California Class: All individuals in California who own residential structures constructed with Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors embedded in the foundations and all prior owners of residential structures who paid to repair and/or replace Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors.

> Arizona Class: All individuals in Arizona who own residential structures constructed with Simpson HD Strap-Tie Holdowns and/or

---

[3]Accordingly, Plaintiffs' remaining claims are as follows: second cause of action for violation of California unfair competition law – unlawful business practice for allegedly creating and selling defective products that have prematurely failed or reasonably will prematurely fail and representing the Products were appropriate for installations where defendants knew were particularly vulnerable to corrode, violations of California unfair competition law – unlawful business practice for failing to disclose material safety facts concerning the products that they have a duty to disclose, breach of express warranty. ECF No. 101.

United States District Court
Northern District of California

> Simpson MAS Mudsill Anchors embedded in the foundations and all prior owners of residential structures who paid to repair and/or replace Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors.

ECF No. 133 at 8.

On September 17, 2021, Simpson filed an opposition to Plaintiffs' Motion for Class Certification. ECF No. 135. On October 1, 2021, Plaintiffs filed a reply and submitted additional declarations and evidence in support of their reply. ECF Nos. 151, 152-1, 153, 154. On October 8, 2021, Simpson filed a Motion to Strike Plaintiffs' New Evidence on Reply. ECF No. 164. On October 12, 2021, Plaintiffs filed an opposition to Simpson's Motion to Strike Plaintiffs' New Reply Evidence. ECF No. 169. On September 17, 2021, Simpson filed a Request for Judicial Notice in Support of Simpson's opposition to Plaintiffs' motion for class certification ("RJN"). ECF No. 144. On October 1, 2021, Plaintiffs filed Objections to Simpson's RJN. ECF No. 155.

On September 17, 2021, Simpson filed Objections to Plaintiffs' Non-Expert Declarations. ECF No. 145. On October 1, 2021, Plaintiffs filed a response, ECF No. 156, and Motion to Strike Simpson's Objections to Plaintiffs' Non-Expert Declarations, ECF No. 157. On September 17, 2021, Simpson filed a Motion to Exclude the Declaration and Testimony of Plaintiff's Expert Witness Paul W. Brown ("Daubert Motion"). ECF No. 146. On October 1, 2021, Plaintiffs filed an opposition to Simpson's Daubert Motion. ECF No. 152. On October 8, 2021, Plaintiffs filed a reply. ECF No. 161.

On August 20, 2021, Plaintiffs filed an Administrative Motion to Seal Portions of Plaintiffs' Motion for Class Certification and Supporting Documents. ECF No. 132. On September 17, 2021, Simpson filed an Administrative Motion to Seal Portions of Simpson's Opposition to Plaintiffs' Motion for Class Certification. ECF No. 134. On October 1, 2021, Plaintiffs filed an Administrative Motion to Seal Portions of Plaintiffs' Reply and Related Documents in Support of Plaintiffs' Motion for Class Certification. ECF No. 150. On October 12, 2021, Plaintiffs filed an Administrative Motion to Seal Portions of Plaintiffs' Opposition to Simpson's Motion to Strike Plaintiffs' New Reply Evidence. ECF No. 168.

On December 16, 2021, the Court heard oral argument. ECF No. 175. At the hearing, the Court instructed the parties to submit appropriate declarations regarding the parties' motions to

seal pursuant to Civil Local Rule 79-5.  On December 17, 2021, Simpson filed declarations in support of Plaintiffs' administrative motions to seal.  ECF Nos. 176, 177.

## III.   LEGAL STANDARD

### A.   Evidentiary Issues

When evaluating class certification, "[a] court may consider whether the plaintiffs' proof is, or will likely lead to, admissible evidence." *Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018).  Moreover, when an expert's testimony in support of class certification is challenged, "a district court should evaluate admissibility under the standard set forth in *Daubert*." *Id*.  However, "[a]dmissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id*.

### B.   Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal citation and quotation omitted).  Plaintiffs must "affirmatively demonstrate" compliance with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiffs "bear the burden of demonstrating that [they] have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b)." *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) has four explicit requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. PRO. 23(a).

If all four Rule 23(a) prerequisites are satisfied, the Court must also find that Plaintiffs "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)" to order class certification. *Comcast*, 569 U.S. at 33.  Rule 23(b)(3) permits certification if the Court finds "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

United States District Court
Northern District of California

1    efficiently adjudicating the controversy."  FED. R. CIV. PRO. 23(b)(3).

2          "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

3    with the merits of the plaintiff's underlying claim.'"  *Amgen Inc. v. Conn. Ret. Plans and Trust*

4    *Funds*, 568 U.S. 455, 465-66 (2013) (internal citation omitted).  Although "Rule 23 grants courts

5    no license to engage in free-ranging merits inquiries at the certification stage . . . . [m]erit

6    questions may be considered to the extent. . . that they are relevant to determining whether the

7    Rule 23 prerequisites for class certification are satisfied." *Id*. at 466.  The Court has broad

8    discretion to certify the class if the Court finds Plaintiffs met their burden of proof.  *Zinser*, 253

9    F.3d at 1186.

## IV.   DISCUSSION

### A.    Motions to Seal

12         Plaintiffs' Motion for Class Certification involves the following motions to seal:

13         (1)    Plaintiffs' August 20, 2021 Motion to File Class Certification Under Seal, ECF No.

14   132;

15         (2)    Simpson's September 17, 2021 Motion to File Portions of Opposition to Plaintiffs'

16   Motion for Class Certification Under Seal, ECF No. 134;

17         (3)    Plaintiffs' October 1, 2021 Motion to File Portions of Reply in Support of

18   Plaintiffs' Motion for Class Certification Under Seal, ECF No. 150; and

19         (4)    Plaintiffs' October 12, 2021 Motion to File Portions of Plaintiffs' Motion to Strike

20   Under Seal, ECF No. 168.

21         "Historically, courts have recognized a 'general right to inspect and copy public records

22   and documents, including judicial records and documents.'"  *Kamakana v. City and Cnty. of*

23   *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435

24   U.S. 589, 597 & n.7 (1978)).  Consequently, filings that are "more than tangentially related to the

25   merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing.  *Ctr. for*

26   *Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016).  The courts of this

27   district apply the "compelling reasons" standard to motions to seal relating to class certification.

28   *See, e.g., Guynn-Neupane v. Mahna Legal Serv.*, *LLC*, No. 19-cv-02652-VKD, 2021 WL 4481661

United States District Court
Northern District of California

at *1 n.3 (N.D. Cal. Sept. 30, 2021) (applying compelling reasons standard to motions to seal documents relating to class certification); *Adtrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 WL 6395513 at *1 (N.D. Cal. Feb. 4, 2020) (same); *Yan Mei Zheng v. Toyota Motor Corp*., No. 17-CV-06591-BLF, 2019 WL 6841324, at *1 (N.D. Cal. Dec. 16, 2019) (same).

The Court will proceed to discuss each motion to seal in turn.

### 1.   Plaintiffs' August 20, 2021 Motion

Plaintiffs' August 20, 2021 motion seeks to seal materials that Plaintiffs believe Simpson designated as either "Confidential" or "Highly Confidential – Attorneys' Eyes Only." ECF No. 132.  Plaintiffs seek to seal (1) lines 17-19 of page 3, lines 4-7 of page 4, lines 9-12 of page 7, lines 14 of page 7 through line 6 of page 8 of Plaintiffs' Motion for Class Certification; (2) paragraphs 30, 31, 32 of Plaintiffs' Lippsmith declaration in support of the Motion for Class Certification; (3) Exhibits 292, 293, and 295 attached to the Lippsmith declaration; and (4) paragraphs 13, 14, and 27 of Dr. Paul W. Brown's Declaration in Support of Plaintiffs' Motion for Class Certification.  ECF. No. 132-1, Exhibit 2.

Under the Local Rules of this District, where a Filing Party seeks to file under seal any material designated as confidential by another party or non-party, "[w]ithin 7 days of the motion's filing, the Designating Party must file a statement and/or declaration as described in [Local Rule 79-5 (c)(1)]."  Civil L.R. 79-5 (f)(3).  The statement or declaration must provide "the applicable legal standard and the reasons for keeping a document under seal, including an explanation of (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient."  Civil L.R. 79-5 (c)(1).  "[O]verly broad requests to seal may result in the denial of the motion."  Civil L.R. 79-1 (f)(6).

On December 17, 2021, Simpson filed a declaration in support of Plaintiffs' August 20, 2021 Motion.  ECF. No. 176.  Simpson argued sealing is warranted because the material involves Simpsons' 2016 "Innovation Project" where Simpson's engineers discussed product improvement and designs.  *Id.* at ¶ 3.  The Innovation project material refers to Simpson's intellectual property, business strategy of product design and development, and research and development strategies.

*Id.* at ¶ 4.  Simpson asserts that, if a competitor were to gain access to the information, disclosure of the material could lead to Simpson's loss of market share.  *Id.* at ¶ 6.

The Court agrees that (1) lines 4-7 of page 4, lines 9-12 of page 6, lines 14 of page 7 through line 6 of page 8 of Plaintiffs' Motion for Class Certification; (2) paragraphs 30, 31, 32 of the Lippsmith declaration; (3) Exhibits 292, 293, and 295 attached to Plaintiffs' Lippsmith declaration; and (4) paragraphs 13, 14, and 27 of Dr. Paul W. Brown's declaration contain confidential business and intellectual property material that could be used by competitors to the harm of defendants.  *See Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006) ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.") (internal citation omitted); *Yan Mei Zheng v. Toyota Motor Corp.*, No. 17-cv-06591-BLF, 2019 WL 6841324 at *3 (N.D. Cal. Dec. 16, 2019) (granting motion to seal at class certification stage because documents contained defendant's confidential sales data, competitor analysis, and internal business practices).  Accordingly, the Court **GRANTS** Plaintiffs' August 20, 2021 motion.  However, the Court **DENIES** Plaintiffs' motion as to lines 17-19 of page 3 of Plaintiffs' Motion for Class Certification.  The information sought to be sealed has already been disclosed in the SAC.  *See* SAC ¶ 111.

### 2.    Simpson's September 17, 2021 Motion

Simpson's September 17, 2021 motion seeks to seal materials Simpson has designated as "Highly Confidential – Attorneys' Eyes Only."  ECF No. 134.  Simpson seeks to seal (1) lines 12-24 of page 4 of Simpson's Opposition to Plaintiffs' Motion for Class Certification; (2) lines 8-26 of page 1 and lines 1-3 of page 2 of Mioduszewski declaration; (3) Exhibit A attached to the Mioduszewski declaration; (4) lines 20-28 of page 1 and lines 1-10 of page 2 of Stauffer Declaration; (5) Exhibit A attached to the Stauffer declaration; and (6) line 19 of page 2 and line 5 of page 3 of the Paterson declaration.  ECF No. 134-1, Mauch Decl. ¶ 9.

The Court **GRANTS** Simpson's September 17, 2021 motion to seal.  The identified portions of the declarations and exhibits contain Simpson's internal findings and strategies from

9

the innovation project.  *See Yan Mei Zheng*, 2019 WL 6841324 at *3 (granting motion to seal at class certification stage because documents contained Defendants' confidential sales data, competitor analysis, and internal business practices); *cf. Doyle v. Galderma*, 19-cv-05678-TSH, 2021 WL 4926999 at *2 (N.D. Cal. Apr. 27, 2021) (granting motion to seal exhibits containing confidential, proprietary and strategic information about sales and marketing relating to party's prescription business sales organization).

### 3. Plaintiffs' October 1, 2021 Motion

Plaintiffs' October 1, 2021 motion seeks to seal materials that Plaintiffs believe Simpson designated as either "Confidential" or "Highly Confidential – Attorneys' Eyes Only."  ECF No. 150.  Plaintiffs seek to seal (1) lines 19-27 of page 2 of Plaintiffs' Reply in Support of their Motion for Class Certification and (2) lines 10-12, 14-16, and 17-19 of page 7 of Plaintiffs' Response to Simpson's Objections to Plaintiffs' Non-Expert Declarations.  ECF. No. 150-7.

On December 17, 2021, Simpson filed a declaration in support of Plaintiffs' October 1, 2021 motion.  ECF. No. 177.  However, Simpson only affirmed (1) lines 22-24 of page 2 of Plaintiffs' reply in support of Plaintiffs' motion for class certification; and (2) lines 10-12 and 14-19 of Plaintiffs' Response to Simpson's Objections to Plaintiffs' Non-Expert Declarations as confidential material relating to Simpson's Innovation project, intellectual property, business strategy of product design and development, research and development strategies.  ECF. No. 177 at ¶ 3.

Review of the documents shows that (1) lines 22-24 of page 2 of Plaintiffs' Reply contain Simpson's internal findings from the Innovation Project and are sealable and (2) lines 10-12 and 14-19 of page 7 of Plaintiffs' Response to Simpson's Objections refer to Exhibits 292, 293, and 295 attached to the LippSmith declaration, which are sealable.  Accordingly, the Court **GRANTS** Plaintiffs' Motion to Seal as to (1) lines 22-24 of page 2 of Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification and (2) lines 10-12 and 14-19 of Plaintiffs' Response to Simpson's Objections to Non-Expert Declarations.  *See Yan Mei Zheng*, 2019 WL 6841324 at *3 (granting motion to seal at class certification stage because documents contained Defendants' confidential sales data, competitor analysis, and internal business practices).

### 4.     Plaintiffs' October 12, 2021 Motion

Plaintiffs' October 12, 2021 motion seeks to seal a portion of Plaintiffs' Opposition to Simpson's Motion to Strike that Plaintiffs believe Simpson designated as either "Confidential" or "Highly Confidential – Attorneys' Eyes Only." ECF No. 168.  Plaintiffs seek to redact lines 1-2 of page 4 of Plaintiffs' opposition to Simpson's motion to strike.  ECF No. 168-1, Graham Lippsmith Decl. ¶ 7.

Simpson has not filed to file a declaration in support of Plaintiffs' October 12, 2021 motion.  Accordingly, Plaintiffs' October 12, 2021 motion is **DENIED**.  *See* Civil Local Rule 79-5(f)(3) ("Within 7 days of the motion's filing, the Designating Party must file a statement and/or declaration as described in subsection (c)(1).  A failure to file a statement or declaration may result in the unsealing of the provisionally sealed document without further notice to the Designating Party.")

### B.     Simpson's Request for Judicial Notice

Simpson requests the Court take judicial notice of three certified deeds of trust belonging to Plaintiffs and a Solano County Superior Court complaint filed plaintiff Card.  ECF. No. 144. While Plaintiffs do not oppose judicial notice of the three deeds of trust, Plaintiffs object to the Court taking judicial notice of the contents of the Solano County complaint.  ECF. No. 155 at 3-4.

The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc*, 899 F.3d 988, 999 (9th Cir. 2018).  The Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201.

The Court **GRANTS** Simpson's request for judicial notice of the three certified deeds of trust and the Solano County Superior Court complaint.  *See Colony Cove Properties, LLC v. City*

*of Carson,* 640 F.3d 948, 954 n.3 (9th Cir. 2011) ("Neither the contents of the City Council of the City of Carson's Resolution nor the existence of the state court proceedings is in dispute. Accordingly, we grant the request in a separate order"); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("it is proper for the district court to "take judicial notice of matters of public record outside the pleadings"); *Nationwide Mutual Ins. Co. v. Ryan*, 36 F. Supp. 3d 930, 935 n.1 (N.D. Cal. 2014) ("The Court takes judicial notice of court documents pertaining to the appraisal-related proceedings in state court because such documents are relevant to the claims at issue and no party questions their authenticity").  The Court does not take judicial notice of the truth of the contents within the Solano County complaint that are subject to reasonable dispute.

## C.    Evidentiary Objections

### 1.    Simpson's Objections to Plaintiffs' Non-Expert Declarations

Simpson objects to Plaintiffs' non-expert declarations as inadmissible evidence.  ECF. No. 145.

However, when evaluating a motion for class certification, "admissibility must not be dispositive" and the Court may not "decline to consider [a non-expert's] declaration solely on the basis of inadmissibility."  *Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018).  Accordingly, the Court **DENIES** Simpson's objections to portions of Plaintiffs' non-expert declarations.  *See id.* at 1004 ("Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification"); *Sarmiento v. Sealy*, No. 18-cv-01990-JST, 2020 WL 4458915, at *2 (N.D. Cal. May 27, 2020) (citing *Sali* and "thus overrul[ing] [defendant's] objections, though [the court] will consider them in evaluating the persuasiveness of the evidence presented.").  Given the Court's ruling, the Court **DENIES AS MOOT** Plaintiffs' Motion to Strike Simpson's Objections to Portions of Plaintiffs' Non-Expert declarations.  ECF No. 157.

### 2.    Simpson's Daubert Motion

Simpson argues the declaration and testimony of Plaintiffs' expert witness, Paul W. Brown, are inadmissible under Rule 702 and *Daubert*.  ECF. No. 146.  Simpson argues (1) Dr. Brown is not a qualified expert, and (2) assuming Dr. Brown is an expert, Dr. Brown's testimony and declaration are unreliable.  *Id.*

"[I]n evaluating challenged expert testimony in support of class certification, a district court should evaluate inadmissibility under the standard set forth in *Daubert*." *Sali*, 909 F.3d at 1006. A qualified expert may testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

### a.  Qualifications

Simpson argues Dr. Brown is not qualified to opine on structural connectors in cement or on the sufficiency of Simpson's disclosures. ECF. No. 146 at 6-9. Plaintiffs argue Dr. Brown's education and experience as a materials engineer, working with metal embedded in concrete, qualify Dr. Brown as an expert in structural connectors in cement. ECF. No. 152 at 3-8, 20.

The Court finds Dr. Brown is qualified to opine on structural connectors in cement. Dr. Brown has a Ph.D. in Materials Science, M.S. in Materials science and metallurgy, and a B.S. in chemistry. ECF. No. 133-6. Dr. Brown is currently the president of Chemhydration LLC, which provides litigation support and technical and consulting services relating to construction materials and defects, has previously served as Editor-in-chief of Cements Research Progress and Journal of Materials Education, and has experience directing research in concrete chemistry, the properties of building materials with an emphasis cement and concrete, and creep behavior of concrete reinforced with steel and epoxy-coated rebar. *Id.*, Exhibit 1. The Court finds Dr. Brown's education and experience sufficient to qualify him as an expert and testify on structural connectors. *See Zeiger v. Wellpet LLC.*, 526 F. Supp. 3d 652, 669 (N.D. Cal. 2021) ("*Daubert* does not require that the expert with the best possible qualifications testify, it requires that the expert be sufficiently qualified and his or her testimony be reliable.")

However, the Court finds Dr. Brown is not qualified to opine on the adequacy of Simpsons' disclosures. Dr. Brown's education and experience with cement and structural connectors do not qualify Dr. Brown to testify on whether Simpson's disclosures adequately disclosed or warned purchasers of corrosion risks. After the Court's Order granting in part and denying in part Simpson's Motion to Dismiss the SAC, ECF. No. 101, Plaintiffs' remaining claims regarding the adequacy of Simpson's disclosures involve issues of whether members of the

United States District Court
Northern District of California

United States District Court
Northern District of California

public are likely to be deceived by the disclosure. *See Bradach v. Pharmavite, LLC.*, 735 Fed. Appx. 251, 254 (9th Cir. 2018) ("UCL actions are not required to prove their individual reliance on the allegedly misleading statements. Instead, the standard in actions under . . . UCL is whether members of the public are likely to be deceived.") (internal citations and quotations omitted). Plaintiffs failed to establish how any of Dr. Brown's education and expertise in cement qualify Dr. Brown to opine on public perception or deception. Although the Court finds Dr. Brown is qualified to testify on cement and structural connectors, the Court will not rely on Dr. Brown's testimony on the adequacy of Simpson's disclosures.

### b.    Reliability

Simpson argues Dr. Brown's opinions regarding Simpson's products[4] are unreliable because Dr. Brown fails to cite sources of scientific information, does not sufficiently explain his findings or methodology, and relies on an invalid assumption that Simpson's products are

---

[4] Simpson objects to the following opinions in Dr. Brown's testimony:

- Because steel corrodes approximately 25 times faster than zinc, and because corrosion of embedded Simpson [Products] is irreversible. [Brown Decl. ¶ 15.]
- As a practical matter concrete slabs-on-grade offer a high humidity environment to embedded metals regardless of the home location's ambient environment. This is why depth of concrete cover for embedded structural hardware, and [the Products] in particular, is so critical. [*Id*. ¶ 16.]
- However, concrete's highly alkaline environment is compromised towards the surface where concrete interacts with atmospheric carbon dioxide. The process is called carbonation. Because concrete is a porous solid into and through which both atmospheric gases and liquid water flow, carbonation occurs in the thin to zero concrete cover regions where [the Products] are installed and that lacks the high alkalinity present deeper in a foundation. [*Id*. ¶ 22.]
- Anchor bolts (installed vertically) and rebar (installed horizontally) are designed and manufactured to, when properly installed, be set in a normally high-alkaline region that adequate concrete cover provides. [*Id*. ¶ 23.]
- During the hardening of concrete, the cement powder dissolves in the water and produces a continuous, but porous, solid called cement paste. Normally, the presence [sic] sand and aggregate in the cement paste make the concrete less porous. [*Id*. ¶ 24.]
- Corrosion of [the Products] initiates independent of specific ambient climates because concrete in contact with the ground has the capacity to draw in moisture from soil, even in arid climates. That moisture then migrates by wicking action towards fronts on exposed concrete surfaces where its evaporation preferentially occurs. [*Id*. ¶ 25.]

Dkt. No. 146 at 10-11.

1    intended to last the life of the home.  ECF. No. 146 at 9-17.  Plaintiffs argue Dr. Brown's opinions

2    are based on industry standards and scientific principles, his education and experience, and his

3    own observations of Plaintiffs' homes.  ECF. No. 152 at 7-18.

4        Under *Daubert*, "the district court judge must ensure that all admitted expert testimony is

5    both relevant and reliable."  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir.

6    2017) (internal citation omitted).  "Scientific evidence is reliable if the principles and methodology

7    used by an expert are grounded in the methods of science."  *Id*.  The Supreme Court has provided

8    non-exhaustive factors courts may consider when determining whether to admit expert testimony:

9    "whether the theory or technique employed by the expert is generally accepted in the scientific

10   community; whether it's been subjected to peer review and publication; whether it can be and has

11   been tested; and whether the known or potential rate of error is acceptable."  *Id*. (citing *Daubert v.*

12   *Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)).  The Court "has broad

13   latitude not only in determining whether an expert's testimony is reliable, but also in deciding how

14   to determine the testimony's reliability."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th

15   Cir. 2011).  As the party moving to admit Dr. Brown's testimony, Plaintiffs bear the burden of

16   establishing its reliability.  *See LustBby and Through Lust v. Merrell Dow Pharmaceuticals*, 89

17   F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving

18   admissibility.")

19       Here, Plaintiffs retained Dr. Brown to analyze Simpson's products and determine whether

20   the Products' alleged inherent defect is subject to common proof.  Brown Decl. ¶ 3.  Dr. Brown

21   opines that Simpson's Products are subject to common proof because the Products suffer from an

22   alleged inherent defect that causes premature corrosion and none of Simpson's materials

23   adequately disclose or warn of the corrosion.  *Id*. at ¶¶ 3, 9-10.  Dr. Brown states the combination

24   of the Products and "vertical foundation form boards" create "wedges" that become "infilled as

25   cement paste-enriched regions with higher porosity and permeability to the movement of gases

26   and water than in the surrounding concrete," which "facilitates corrosion of embedded galvanized

27   steel."  *Id*. ¶ 24.  According to Dr. Brown, the presence of "corrosion-promoting species"

28   accelerates corrosion and corrosion occurs "independent of specific ambient climates because

United States District Court
Northern District of California

1    concrete in contact with the ground has the capacity to draw in moisture from soil, even in arid

2    climates." *Id*. ¶¶ 25-26.

3         The Court finds Plaintiffs failed to establish reliability of Dr. Brown's testimony.  Dr.

4    Brown's education and experience do not establish the reliability of his opinions concerning

5    Simpson's Products.  *See United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020)

6    ("[Expert's] qualifications and experience are relevant, and indeed necessary.  But they cannot

7    establish the reliability and thus the admissibility of the expert testimony at issue.").  Although Dr.

8    Brown relies on ACI citations, Dr. Brown does not explain whether those standards are accepted

9    by the general scientific community or why those standards specifically apply to Simpson's

10   products.  *See Murray v. Southern Route Maritime SA*, 870 F.3d 915, 923 (9th Cir. 2017)

11   ("District judges play an active and important role as gatekeepers examining the full picture of the

12   experts' methodology and preventing shoddy expert testimony and junk science from reaching the

13   jury.").

14        Moreover, Dr. Brown does not explain how he used his "personal observations" to

15   determine whether the "wedges" in Simpson's products had "higher porosity and permeability to

16   the movement of gases and water than in the surrounding concrete," whether "corrosion-

17   promoting species" were present in Plaintiffs' homes, or how he determined corrosion was not

18   caused by "specific ambient climates."  Dr. Brown's opinion is classic ipse dixit.  He proclaims

19   the existence of an inherent defect but discloses no methodology he applied or followed to arrive

20   at that conclusion.  *Compare Hopkins v. Dow Corning Corp*, 33 F.3d 1116 (9th Cir. 1994)

21   ("[Expert] testified that his opinion was based on medical records, his clinical experience,

22   preliminary results of an epidemiological study and medical literature.  Thus, we conclude the

23   reasoning or methodology underlying the testimony is scientifically valid"), *with Lust By and*

24   *Through Lust*, 89 F.3d 594, 598 (9th Cir. 1996) ("[Expert] could have . . . explained how he went

25   about reaching his conclusions and had pointed to an objective source demonstrating that his

26   method and premises were generally accepted by or espoused by a recognized minority of

27   teratologists.  But he failed to do so.").  Finally, Plaintiffs admit Dr. Brown did not inspect any of

28   the samples from Plaintiffs' homes, and Dr. Brown does not explain why his opinions regarding

United States District Court
Northern District of California

16

common proof and defects are reasonable. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing . . . requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *United States v. Hermanek*, 289 F.3d 1076 (9th Cir. 2002) ("As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are adequately explained.").

Accordingly, the Court finds Dr. Brown's testimony, which was developed for the purposes of litigation,[5] is unreliable.  The Court **GRANTS** Simpson's Daubert Motion and finds Dr. Brown's opinion regarding the Products' alleged inherent defect and common proof unreliable.  Given the Court's ruling on Defendant's Daubert motion, the Court **DENIES AS MOOT** Simpson's objections to new reply evidence (ECF. No. 163) and Motion to Strike New Reply Evidence (ECF No. 164).

### D.    Class Certification

Plaintiffs argue they meet the requirements of Rule 23 and seek certification of the proposed national class or, in the alternative, the California and Arizona Classes.  ECF. No. 133.[6]

#### 1.    Rule 23(a) Requirements

##### a.    Numerosity

Plaintiffs argue numerosity is satisfied for each proposed class.  ECF. No. 133 at 10. Simpson does not address Plaintiffs' numerosity argument in its opposition.  *See* ECF. 135

Under Rule 23(a)(1), Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  "In determining whether numerosity is

---

[5] Whether an expert's opinion was developed for the purposes of litigation is a significant factor in evaluating reliability.  *See Murray c. Southern Route Maritime SA*, 870 F.3d 915, 923 (9th Cir. 2017) ("the genesis of the expert opinion . . .[whether the opinion was] developed for purposes of this litigation. . . our cases call this consideration a very significant") (internal citations omitted). The Court considers the fact that Dr. Brown's opinion was created for the purpose of this litigation as significant.  Because the opinion was created for the purpose of this litigation, Dr. Brown's opinion lacks "objective proof that the research comports with the dictates of good science."  *Id.*

[6] The Court rejects Simpson's lack of standing arguments.  The Court explained that the Plaintiffs as third party beneficiaries have sufficiently alleged injury for standing in its September 8, 2020 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the SAC.  ECF No. 101 at 10-12.

United States District Court
Northern District of California

1    satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re*

2    *Yahoo Mail Litig.*, 308 F.R.D. 577, 589-90 (N.D. Cal. 2015).

3           Here, Plaintiffs argue Simpson sold millions of Products between 1992 and 2018. The

4    Court finds the numerosity requirement is satisfied. *See Huynh v. Harasz*, No. 14-cv-02367, 2015

5    WL 7015567, at *5 (N.D. Cal. Nov. 12, 2015) ("As other district courts have noted, 'the

6    numerosity requirement is usually satisfied where the class comprises 40 or more members.'")

7    (internal citation omitted).

8                          **b.      Commonality**

9           Plaintiffs argue commonality is satisfied because common questions of law and fact

10   originate from the Products' installation and use and whether the Products are substantially certain

11   to corrode. ECF. No. 133 at 10-11.

12          FRCP 23(a) requires "questions of law or fact common to the class." Fᴇᴅ. R. Cɪᴠ. P.

13   23(a)(2). Plaintiffs must show the proposed class members have suffered "the same injury,"

14   meaning that their claims "depend upon a common contention" of such a nature that

15   "determination of its truth or falsity will resolve an issue that is central to the validity of each

16   [claim] in one stroke." *Dukes*, 564 U.S. at 350 (internal quotation and citation omitted).

17          The Court finds Plaintiffs failed to establish commonality. Plaintiffs failed to demonstrate

18   an inherent defect in Simpson's products. As previously discussed, Plaintiffs' expert, Dr. Brown,

19   failed to provide reliable evidence and methodology for his conclusions about the Products and

20   Simpson's disclosures. The Court found Dr. Brown was unqualified to opine on Simpson's

21   disclosures and now declines to rely on Dr. Brown's opinions as a basis for establishing an

22   inherent defect. *See Vizcarra v. Unilever United States, Inc.,* 339 F.R.D. 530, 546 (N.D. Cal. Oct.

23   27, 2021) ("Where, as here, there is conflicting evidence presented for and against a requirement

24   for class certification, under Ninth Circuit law, the Court must 'judg[e] the persuasiveness of the

25   evidence presented' and 'resolve any factual disputes necessary to determine whether' the

26   requirements of Rule 23 have been satisfied.") (internal citations omitted). Without evidence

27   supporting Plaintiffs' theory of an inherent defect or of Simpson's disclosures to drive this

28   litigation, the Court finds that the commonality requirement is not satisfied. *See Grodzitsky v.*

United States District Court
Northern District of California

18

*American Honda Motor Co., Inc.,* 957 F.3d 979, 986 (9th Cir. 2020) (affirming district court's finding that commonality is not satisfied because plaintiff's expert "did not and could not provide a reliable opinion demonstrating a common defect for over 4,000 regulators.").

### c.   Typicality and Adequacy

 Because the Court has found a lack of commonality, it need not address the remaining Rule 23(a) requirements.  *See Davidson v. O-Reilly Auto Enterprises, LLC*, 968 F.3d 955, 968 (9th Cir. 2020) ("[W]e conclude that the district court did not abuse its discretion in denying Davidson's motion for class certification because Davidson did not establish commonality."); *Moussouris v. Microsoft Corp.*, 799 Fed.Appx. 459, 461 (9th Cir. 2019) (a "proposed class must satisfy all of the Rule 23(a) requirements").

### 2.   Rule 23(b) Requirements

### a.   Predominance

Plaintiffs argue common questions relating to the alleged defect in Simpson's products and Simpson's express warranty predominate this litigation.  ECF. No. 133 at 15-18. Plaintiffs further argue Plaintiffs have established common proof for their breach of warranty claims and provided the Court with a sufficient damages model.  *Id.* at 17-18.  Simpson argues Plaintiffs failed to establish a defect in Simpson's products, show common proof for their claims, and provide a sufficient damages calculation model.  ECF No. 135 at 16-17.

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast Corp v. Behrend*, 569 U.S. 27, 34 (2013).  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, (1997).  "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen*, 568 U.S. at 459.

The Court rejects Simpson's argument that Plaintiffs' failure to establish a defect precludes a finding of predominance. *See Edwards v. Ford Motor Co.,* 603 F. App'x 538, 540 (9th Cir. 2015) ("In order to satisfy the predominance requirement, the plaintiff need not prove the existence of

United States District Court
Northern District of California

the defect."); *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1173 (9th Cir. Aug. 17, 2010) ("claims regarding the existence of the defect and the defendant's alleged violation of consumer protection laws. . .[do] not overlap with the predominance test.")

However, the Court finds Plaintiffs failed to establish that their evidence is subject to common proof. *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 361 (N.D. Cal. Aug. 10, 2018) ("Plaintiffs' burden is to establish that the existence of the defects is subject to common proof, and that such common questions predominate over individual questions."). Plaintiffs rely on Dr. Brown to establish that the existence of a defect is subject to common proof. Dr. Brown opined Simpson's products are subject to common proof because all of Simpson's products are deficient and none of Simpson's materials adequately disclosed the risks of corrosion. Brown Decl. at ¶ 3.  However, as previously discussed, Dr. Brown is not qualified to testify on the adequacy of Simpson's disclosures and he failed to provide sufficient details about his methodologies for the Court to discern whether his opinions are reliable. *Compare with Cable Modem Consumer Litig*, 327 F.R.D. at 362 (finding common proof established because "Plaintiffs point to Defendant's and Intel's own testing data as common proof of the alleged defects present in all Modems.  Plaintiffs then rely on Newman's report to interpret the testing data and to explain how the results of the testing data would likely manifest in terms of performance issues that users would notice."), *and Wolph v. Acer America Corp.*, 272 FRD 477, 488 (N.D. Cal. Mar. 25, 2011) (finding common proof established because "Plaintiffs' experts have established mechanisms that purport to examine the existence of the alleged defect under out-of-the-box conditions to eliminate individualized user variables. . . Plaintiffs also rely on Acer's benchmarking results, retailer return rates, consumer return surveys, customer inquiry databases and third party recommendations regarding Vista.")[7]

      **b.**    **Ascertainability**

Simpson argues Plaintiffs failed to show the proposed classes are ascertainable because Plaintiffs failed to precisely define a class.  ECF No. 135 at 18-19.  However, the Ninth Circuit

---

[7] Given the Court's ruling on common proof, the Court need not consider Simpson's additional arguments concerning lack of predominance.

United States District Court
Northern District of California

ruled ascertainability is not a requirement under Rule 23.  *See Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1125-26 (9th Cir. 2017) (declining to impose a separate administrability requirement to assess the difficulty of identifying class members, in part, because the superiority criterion already mandates considering "the likely difficulties in managing a class action").  Plaintiffs move to certify classes of individuals who own or previously owned "residential structures constructed with Simpson HD Strap-Tie Holdowns and/or Simpson MAS Mudsill Anchors embedded in the foundations."  ECF No. 133 at 8.  Plaintiffs identified a class for certification.  *See Williams v. Apple*, 338 F.R.D. 629, 645-46 (N.D. Cal. 2021) ("Plaintiffs move to certify a class of purchasers: a subset of persons 'who paid for a subscription to iCloud' . . . . the asserted difficulty of identifying "who paid for a subscription to iCloud" is no bar to predominance.").  The Court declines to impose an ascertainability requirement.

### c.   Superiority

Plaintiffs argue Rule 23(b)'s superiority requirement is established because Plaintiffs have very little interest in individually controlling the prosecution of claims, class wide litigation is more judicially economical, and few class members would have any meaningful redress against Simpson.  ECF. No 135 at 19.  Simpson argues that the existence of other lawsuits involving named Plaintiffs show Plaintiffs do have interest in individually controlling prosecuting prosecution of their claims.  ECF. No. 135 at 20.  Simpson also argues the scope of Plaintiffs' proposed classes precludes class action manageability.  *Id*.

Rule 23(b)(3) requires class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  Four factors guide this determination: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action."  FED. R. CIV. P. 23(b)(3)(A)–(D).  "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."  *Zinser*, 253 F.3d at 1190

United States District Court
Northern District of California

1   (quotation marks and citation omitted).

2   The Court finds superiority is not satisfied.  The existence of other actions related to

3   Plaintiffs' homes and foundations signify a class interest in individually controlling the

4   prosecution of separate actions and indicate litigation concerning Simpsons' products has already

5   begun.  These factors weigh against class actions and a finding of superiority.  *Compare with*

6   *Wolin*, 617 F.3d at 1176 ("Appellants aver that no other prospective class members have filed

7   other related actions, and Land Rover does not dispute this point.").  Moreover, Plaintiffs failed to

8   provide adequate justification for concentrating this litigation in this particular forum.  *See Haley*

9   *v. Medtronic, Inc.,* 169 F.R.D. 643, 653 (N.D. Cal. 1996) ("[W]here the potential Plaintiffs are

10  located across the country and where the witnesses and the particular evidence will also be found

11  across the country, Plaintiffs have failed to establish any particular reason why it would be

12  especially efficient for this Court to hear such a massive class action lawsuit.").  The Court

13  concludes the complexities of class action treatment weigh against class certification.

### V.    CONCLUSION

15  For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Class Certification,

16  **GRANTS** Simpson's Request for Judicial Notice, **DENIES** Simpson's Objections to Non-Expert

17  Declarations, **GRANTS** Simpson's Motion to Exclude Expert, **DENIES AS MOOT** Plaintiffs'

18  Motion to Strike Simpson's Objections to Non-Expert Declarations, **DENIES AS MOOT**

19  Simpson's Objections to New Reply Evidence, **DENIES AS MOOT** Simpson's Motion to Strike

20  New Reply Evidence, and **GRANTS IN PART** and **DENIES IN PART** the parties'

21  Administrative Motions to Seal.

22  **IT IS SO ORDERED.**

24  Dated: March 3, 2022

26  THOMAS S. HIXSON
    United States Magistrate Judge