United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAVI SALHOTRA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SIMPSON STRONG-TIE COMPANY, INC., et al.,<br><br>Defendants. | Case No. 19-cv-07901-TLT<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 258 |

After a series of motions to dismiss, Plaintiffs Ravi Salhotra, Sandhya Salhotra, Melissa Card, Fei Allen, Steven Tumelson, Sabrina Tumelson, and Maurice Van Roekel as Trustee of the Van Roekel Survivor's Trust (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, filed their third amended class action complaint alleging two remaining causes of action as sequenced in their original complaint: (3) violation of California Unfair Competition Law ("UCL") for unfair business practices and (6) breach of express warranty. Third Amended Complaint ("TAC"), ECF 213.

Defendants Simpson Strong-Tie Company, Inc., Simpson Manufacturing Company, Inc., and Does 1 through 200 (collectively, "Defendants") bring their motion for judgment on the pleadings. Motion for Judgment on the Pleadings ("MJOP"), ECF 258. Also currently pending are Plaintiffs' motion to certify class and Defendants' related Daubert motion. ECF 254, 276.

After review and consideration of motions, briefings, attachments and exhibits thereto, Defendant's motion for judgment on the pleadings is **GRANTED** with prejudice.

The Court **DENIES** Plaintiffs' motion for class certification as moot and **DENIES** Defendants' Daubert motion to exclude the declaration and testimony of Dr. Paul W. Brown from consideration in the class certification as moot.

## I. BACKGROUND

### A. Procedural History

On December 2, 2019, Plaintiffs filed their initial class action complaint. ECF 1. On February 25, 2020, prior to the resolution of Defendant's first motion to dismiss, Plaintiffs filed their first amended complaint. ECF 28. After the Court granted Defendant's second motion to dismiss with leave to amend, Plaintiffs filed their second amended complaint on June 16, 2020. ECF 66. The Court granted in part and denied in part Defendant's third motion to dismiss. ECF 101. On August 20, 2021, Plaintiffs filed motion to certify class. ECF 133. The Court denied Plaintiffs' motion to certify class and Plaintiffs appealed to the Ninth Circuit. ECF 180, 194. The Ninth Circuit reversed and remanded, concluding that the Court abused its discretion in excluding Plaintiff's expert's opinions under *Daubert*. ECF 199.

On October 20, 2023, Plaintiffs filed their third amended complaint. *See generally,* TAC. Plaintiffs allege two remaining causes of action as sequenced in their original complaint: (3) violation of California UCL for unfair business practices and (6) breach of express warranty. *Id.* ¶¶ 155-167.

On September 3, 2024, Defendants filed motion for judgment on the pleadings including request for judicial notice. *See generally,* MJOP; ECF 258-2. Plaintiffs filed timely opposition and request for judicial notice. ECF 264 ("Opp'n"), 265. Defendants oppose Plaintiffs' request for judicial notice and Plaintiffs filed a reply in support of their request for judicial notice. ECF 281, 282. Defendants then timely filed reply in support of their motion for judgment on the pleadings. ECF 277 ("Reply").

Also currently pending are Plaintiffs' motion to certify class and Defendants' related Daubert motion. ECF 254, 276. The Court held oral argument on outstanding motions on October 29, 2024. ECF 287 (Defendant's response to Court's inquiries), 288 (Plaintiff's response to Court's inquires), 290 (motion hearing minutes).

### B. Factual History

Simpson Strong-Tie Company, Inc. and Simpson Manufacturing Company, Inc. are Delaware corporations with principal places of business in Pleasanton, California. TAC ¶¶ 18, 19.

1  Defendants developed, manufactured, advertised, distributed, and sold standard G90 galvanized
2  metal hurricane straps. *Id.* ¶ 1. These straps are construction products that are embedded into the
3  concrete foundation edges of residential homes throughout the United States. *Id*. Defendants call
4  these straps HD Strap-Tie Holdowns and MAS Mudsill Anchors (collectively, "the Products"). *Id.*
5  Most of the Simpson Structural Connectors are installed during construction in locations that are
6  inaccessible and hidden from view once homes are built. *Id.* ¶ 68. Defendants market that their
7  Products will protect homes from damage due to external forces such as gravity, wind, and seismic
8  events. *Id.* ¶ 59.

    Plaintiffs Ravi Salhotra and Sandhya Salhotra are California residents who own a home in
10 Vacaville, California. *Id.* ¶ 13. Plaintiff Melissa Card is a California resident who owns a home in
11 Fairfield, California. *Id.* ¶ 14. Plaintiff Fei Allen is a California resident who owns a home in
12 Ontario, California. *Id.* ¶ 15. Plaintiffs Steven Tumelson and Sabrina Tumelson are California
13 residents who own a home in Vacaville, California. *Id.* ¶ 16. Plaintiff Maurice Van Roekel as Trustee
14 of the Van Roekel Survivor's Trust is a California resident and trustee of a California trust that owns
15 a home in Temecula, California. *Id.* ¶ 17. Plaintiffs are California homeowners who had Defendants'
16 Products installed into the foundation of their homes. *Id.* ¶¶ 23, 30, 36, 43, 50.

17    The Simpson HD Strap Tie-Holdowns and Simpson MAS Mudsill Anchors are the two
18 products (collectively, "Products") at issue in this case. *Id.* ¶ 72. Plaintiffs plead that Simpson's HD
19 Strap Tie-Holdowns and MAS Mudsill Anchors are made of steel and coated with its standard
20 "Low" G90 galvanization, which is a very thin zinc layer about half the thickness of a human hair.
21 *Id.* Defendant's design, specification, and installation instructions require embedding the HD Strap-
22 Tie Holdowns and MAS Mudsill Anchors in the original concrete foundation, with their bottom
23 ends as deep as structural rebar, but at an angle so they eventually protrude from and are exposed at
24 the concrete foundation edges. *Id.* ¶ 82. Plaintiffs identify nine models of Strap-Tie Holdowns and
25 four models of Mudsill Anchors sold between 2006 and 2020, and allege that, for all models of the
26 two categories of Products, the designs and methods of installation are substantially the same. *Id.*
27 ¶¶ 74-75.

Plaintiffs contend that Defendants have designed Strap-Tie Holdowns since the mid-1980s and Mudsill Anchors since the mid-1970s. *Id.* ¶ 74. They also contend that Defendants sold more than 426 million of the Products between 1992 and 2018. *Id.* Plaintiffs allege that the construction professionals to whom Simpson markets, sells, and provides specifications and instructions for its Products do not consider Simpson's Structural Connectors to be either homeowner or contractor serviceable components at any time during the life of a home. *Id.* ¶ 69.

Defendants' Wood Construction Connector Catalogs promote and market Simpson's structural connectors to construction professionals for purchasing connectors. *Id.* ¶ 60. Catalogs also serve as the touchstone for guiding construction industry professionals in the selection, specification, and installation of Defendants' connectors. *Id.* ¶ 61. Defendants' product catalogs provide marketing representations, corrosion information, recommendations, specifications, and warranties that broadly apply to all their connectors. *Id.* The catalogs contain a Limited Warranty which is the basis for Plaintiffs' breach of express warranty claim. *Id.* ¶ 97-98. Plaintiffs acknowledge that the Wood Construction Connector Catalogs are not intended for, or directly distributed to, regular homeowners like Plaintiffs. *Id.* ¶ 64.

Plaintiffs claim that the Products have an "inherent" design defect that renders them "substantially certain" to result in failure during the Products' useful life. *Id.* ¶ 26. Plaintiffs allege the Products' design and specified installation are such that the installed Products have inadequate "concrete cover" (*i.e.,* the "distance between the outermost surface of embedded [Product] and the closest outer surface of the concrete") at "foundations perimeters where chloride and oxygen 'mainly' attack." *Id.* ¶¶ 113, 118. Plaintiffs further assert that this defective design and intended installation "make the Products extremely and exceptionally vulnerable to corrosion caused by transmission of salt, moisture, and oxygen by concrete foundations," and leads to the Products failing "before the end of their useful life." *Id.* ¶¶ 119, 121.

Plaintiffs plead that Defendants had knowledge of these issues, along with the "risks and manifestations" of the defects since at least 2003. *Id.* ¶¶ 121, 131. Despite this knowledge, Plaintiffs indicate that Defendants continued to market, sell, and warrant its Products. *Id.* ¶¶ 114–15.

There are three related cases in state court regarding third-party claims against Defendants. ECF 251. In all three related cases, plaintiff homeowners have brought claims against homebuilders and developers who installed Defendants' Products. The related cases are (1) *Saucedo et al, v. Stonefield Home, Inc. and U/C Construction Co.*, Case Number 19-CV-04303, Superior Court of California, County of Merced; (2) *Takushi and Brykcznski Living Trust v. D.R. Horton, et al.*, Case Number 18-1-1748-10, Circuit Court of the First Circuit, State of Hawaii; and (3) *Hardin, et al. v. Joseph Crown Construction and Development, Inc.*, Case Number MCV085747, Superior Court of California, County of Madera. The instant case differs from the related cases in that Plaintiff homeowners in the instant case bring claims directly against Defendants rather than the homebuilders and developers who installed Defendants' Products.

## II.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pleadings are deemed closed for purposes of a Rule 12(c) motion when an answer has been filed and no counterclaim or cross claim has been made. *Doe v. United States*, 419 F.3d 1058, 1061–1062 (9th Cir. 2005). In evaluating a Rule 12(c) motion, the "analysis is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) ("Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion"). This includes the *Iqbal/Twombly* requirement that to survive a judgment on the pleadings, the plaintiff must allege a claim for relief that is "plausible on its face." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).

In evaluating a motion for judgment on the pleadings, the non-moving party's allegations are accepted as true, "while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citing *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984)). Just like under Rule 12(b)(6), under Rule 12(c) a court may consider materials subject to judicial notice in addition to considering the allegations of the complaint. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d

5

971, 981 n.18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, this court may consider facts that 'are contained in materials of which the court may take judicial notice.'") (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

### III. DISCUSSION

#### A. Request for Judicial Notice

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Alternatively, the Court may "consider materials that are submitted with and attached to the Complaint. [The Court] may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *see also In re Diamond Foods, Inc. Sec. Litig.*, No. C 11–05386 WHA, 2012 WL 6000923, at *16 (N.D. Cal. Nov. 30, 2012) ("Under the incorporation by reference doctrine, a court may also consider documents submitted by defendants that were referenced in the complaint and whose authenticity has not been questioned.").

"Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a 'court may consider facts that are contained in materials of which the court may take judicial notice.'" *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145 (N.D. Cal. 2020) (quoting *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)).

#### 1. Defendants' Request for Judicial Notice

In support of their motion for judgment on the pleadings, Defendants seek judicial notice of documents in both their motion and their reply. *See* ECF 258-2, 279. In their motion, Defendants seek judicial notice of nine exhibits—all of which are documents filed in the pending action. The Court **GRANTS** request for judicial notice of all nine exhibits.

Exhibit A is Plaintiffs' Third Amended Complaint filed on October 23, 2023, ECF 213. Exhibit A(1) is Exhibit 1 to Plaintiffs' Third Amended Complaint filed on October 23, 2023, ECF

6

213-1. Exhibit A(2) is Exhibit 2 to Plaintiffs' Third Amended Complaint filed on October 23, 2023, ECF 213-2. Exhibit A(3) is Exhibit 3 to Plaintiffs' Third Amended Complaint filed on October 23, 2023, ECF 213-3. Exhibit A(4) is Exhibit 4 to Plaintiffs' Third Amended Complaint filed on October 23, 2023, ECF 213-4. Exhibit B is this Court's Order Re: Motion to Dismiss as to plaintiffs' First Amended Complaint filed on May 15, 2020, ECF 56. Exhibit C is this Court's Order Re Motion for Sanctions Pursuant to Rule 11 filed on September 2, 2020, ECF 97. Exhibit D is Plaintiffs' Second Amended Class Action Complaint filed on June 16, 2020, ECF 66. Exhibit E is this Court's Order Re: Motion to Dismiss and Request for Judicial Notice filed on September 8, 2020, ECF 101. It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence." *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (collecting cases). Absent objection, the Court **GRANTS** request for judicial notice of these exhibits.

In their reply, Defendants seek judicial notice of one exhibit. Exhibit G contains excerpts of the Corrosion Information warnings from Simpson's Wood Construction Connectors catalogs dated 2006 through 2018. Defendants argue that Exhibit G is subject to judicial notice because it is a compilation of documents referenced in the TAC. *See Gov't Emps. Ins. Co. v. Nadkarni*, 391 F. Supp. 3d 917, 924 (N.D. Cal. 2019) ("[a] court may … consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.") (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The Court previously judicially noticed the 2006 catalog pages in connection with Simpson's Motion to Dismiss the Second Amended Complaint. *See* ECF 101. Because Plaintiffs reference these catalog pages throughout their TAC and absent objection, the Court **GRANTS** request for judicial notice of them. *See* TAC ¶¶ 60-65, 86-87, 90, 92-94, 96, 99-101, 105, 108, 112, 133, 161.

### 2. Plaintiffs' Request for Judicial Notice

In support of their opposition, Plaintiffs seek judicial notice of six exhibits. ECF 265. Defendants filed an opposition to the Plaintiffs' request for judicial notice. ECF 281. Plaintiffs filed a reply in support. ECF 282. The Court **GRANTS** request for judicial notice only as to the existence

7

of Exhibit 6—not for the truth of its contents. The Court **DENIES** request for judicial notice for Exhibits 1, 2, 3, 4(1), 4(2), 4(3), 4(4), 4(5), 4(6), and 5.

Exhibit 1 is a Declaration of Plaintiffs' expert, Daniel R Werdowatz S.E., filed on June 17, 2020, in support of their Supplemental Brief in Opposition to Motion for Rule 11 Sanctions, ECF 70. Exhibit 3 is Plaintiffs' Notice of Motion and Plaintiffs' Motion for Class Certification; Memorandum of Points and Authorities filed on August 27, 2024, ECF 254. Plaintiffs cite both for the purpose of quoting their expert's opinions about the Products' performance and the purported results of destructive testing at the Plaintiffs' homes.

Defendants oppose judicial notice, arguing that "[t]he expert declaration is not suitable for judicial notice, because it does not contain facts that are 'generally known within the trial court's territorial jurisdiction,' nor does it state facts which 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Fed. Home Loan Mortg. Corp. v. Keo*, 2020 WL 4458909, at *1 (N.D. Cal. Jun. 22, 2020). In their reply, Plaintiffs clarify that they seek judicial notice of the existence of the expert opinion and the general contents—not for the truth of his conclusions and opinions. However, if the Plaintiffs do not seek judicial notice of the truth of the exhibits, then the relevance of these exhibits is minimal. Accordingly, the Court **DENIES** Plaintiff's request for judicial notice of Exhibits 1 and 3.

Exhibit 6 is an article written by Chris Paterson, a Simpson engineer, entitled "Metal Connectors and Galvanized Coatings." The article purports to be a "Q&A," with Simpson employee Chris Paterson answering a question about the Products. Plaintiffs seek judicial notice under Fed. R. Evid. 801(d)(2). However, the question of admissibility and judicial notice are separate inquiries. Plaintiffs alternatively seek judicial notice to show that the publication was in the public realm. "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)). Accordingly, the Court **GRANTS** request for judicial notice only as to the existence of Exhibit 6 and not to the truth of its contents.

1    Exhibit 2 consists of excerpts from the September 23, 2021 deposition of Defendants'
2    employee, Scott Fischer, which was filed on October 1, 2021, ECF 153-1. Exhibit 4(1) is excerpts
3    from the deposition of Simpson employee Chris Paterson, taken June 23, 2021. Exhibit 4(2) is
4    excerpts from the deposition of Simpson employee Timothy Waite, taken June 23, 2021 in a
5    different matter then pending in Hawaii. Exhibit 4(3) is excerpts from the deposition of Simpson
6    employee Scott Fischer, taken September 23, 2021. Exhibit 4(4) is excerpts from the deposition of
7    former Simpson employee Tim Stauffer, taken September 15, 2021. Citing to Fed. R. Evid.
8    801(d)(2), Plaintiffs seek judicial notice of the content of these depositions, not simply the fact that
9    the depositions were taken. But again, the question of admissibility and judicial notice are separate
10   inquiries. "[T]he content of a deposition is not a clearly established 'fact' of which [the court] can
11   take notice." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 n.1 (9th Cir. 2010). Accordingly, the
12   Court **DENIES** Plaintiff's request for judicial notice of Exhibits 2, 4(1), 4(2), 4(3), and 4(4).

13   Exhibit 5 is a sealed document produced by Defendants which consists of correspondence
14   regarding Simpson Concrete Embedded Products in Hawaii dated March 7, 2011. Exhibit 5 is relied
15   on by Plaintiffs in their Opposition as support for their argument about what is common knowledge
16   in the construction industry about protecting metal components from corrosion. Opp'n at 5.
17   Plaintiffs seek judicial notice of Exhibit 5 for its truth as a statement by a party opponent under Fed.
18   Rule. Evid. 801(d)(2). Admissibility and judicial notice are separate inquiries. Plaintiffs do not
19   provide any caselaw in support of the judicial notice for business records. Accordingly, the Court
20   **DENIES** Plaintiffs' request for judicial notice of Exhibit 5.

21   Exhibits 4(5) and 4(6) are sealed documents produced by Defendants. Neither exhibit is cited
22   by Plaintiffs in their Opposition. In Reply, Plaintiffs do not address for what purpose they seek
23   judicial notice of these documents. Accordingly, the Court **DENIES** Plaintiffs' request for judicial
24   notice of Exhibits 4(5) and 4(6).

25   **B.     Breach of Express Warranty Claim**

26   Defendants assert that Plaintiffs' breach of express warranty claim fails because (1) all
27   Plaintiffs fail to adequately plead that Defendants breached the Limited Warranty; and (2) Plaintiffs
28   Salhotra, Salhotra, Card, Tumelson, and Tumelson are barred by the statute of limitations. The Court

1  **GRANTS** Defendants' motion for judgment on the pleading as to the breach of express warranty
2  claim because Plaintiffs have failed to allege that Defendants breached the Limited Warranty.

### 1. Plaintiffs Have Failed to Adequately Plead that Defendants Breached the Limited Warranty.

"The terms of an express warranty govern whether a breach has occurred*." Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 973 (N.D. Cal. 2018). "In relation to express warranties, the rules for interpreting them do not differ from those applied to other contracts. Where a contract provision is clear and unambiguous, it is not subject to questions of construction or interpretation." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) (quotations omitted).

The only warranty at issue in this case is the Limited Warranty provided in Defendants' marketing catalogs to construction professionals for purchasing connectors. TAC ¶ 161. The Court previously found that Plaintiffs had sufficiently alleged a breach of express warranty claim because Plaintiffs received the warranty information and Plaintiffs had sufficiently alleged that they were intended third party beneficiaries of Defendant's express, written warranties. ECF 101 at 24-25.

Here, Defendants provide three arguments: (1) Plaintiffs fail to allege that they satisfy the conditions of the Limited Warranty; (2) Plaintiffs fail to allege that the Products failed to perform as determined by the Limited Warranty; and (3) Plaintiffs fail to allege that the Limited Warranty promises that the Products will "last the life of a home," that they will not experience corrosion before the end of their "useful life," or that Defendants provide a lifetime warranty. The at-issue language of the Limited Warranty is as follows:

> Simpson Strong-Tie Co., Inc. warrants catalog products to be free from defects in material or manufacturing. Simpson Strong-Tie Co., Inc. products are further warranted for adequacy of design when used in accordance with design limits in this catalog, and properly specified and installed. This warranty does not apply to uses not in compliance with specific applications and installations procedures set forth in this catalog, or to non-catalog or modified products, or to deterioration due to environmental conditions.
>
> Simpson Strong-Tie connectors are designed to enable structures to resist the movement, stress, and loading that results from impact events such as earthquakes and high velocity winds. Other Simpson Strong-Tie products are designed to the load capacities and uses listed in this catalog. Properly-installed Simpson Strong-Tie products will perform in accordance with the specification set forth in the

10

> applicable Simpson catalog. Additional performance limitations for specific products may be listed on the applicable catalog pages. . . .

ECF 213-1, Ex. A(1).

Defendants argue that while the Limited Warranty warrants that catalog products are free from defects in material or manufacturing, Plaintiffs do not allege a manufacturing defect. *Id.* Plaintiffs allege that the Products are inherently prone to premature failure "before the end of their useful life," and that these inherent defects exist even under the Products' "normal, designed, and intended use;" "in reasonably foreseeable conditions;" and "when construction professionals follow Simpson's warnings, specifications, and instructions," regardless of a home's environment. TAC ¶ 107. Because the alleged defects are inherent, Plaintiffs allege a design defect.

Defendants assert that the Limited Warranty creates clear and unambiguous conditions for design defects. The clear and unambiguous language of the Limited Warranty warrants only "for adequacy of design when used in accordance with design limits in [the relevant] catalog, and properly specified and installed." ECF 213-1, Ex. A(1). Defendants' Limited Warranty specifically describes the performance standard the Products are warranted to meet. It provides that the Products "are designed to enable structures to resist the movement, stress, and loading that result from impact events such as earthquakes and high velocity winds." *Id.* Since 2006, the catalogs containing the Limited Warranty also disclose that corrosion may occur. ECF 279, Ex. G. Further, Limited Warranty discloses and excludes risks of deterioration due to environmental conditions.

Defendants argue that Plaintiffs have not alleged that they have satisfied the conditions of the Limited Warranty. Plaintiffs have not alleged that the Products were properly specified, properly installed, or properly maintained. Plaintiffs have not alleged that the areas where the Products were installed were designed to ensure that condensation and other sources of moisture would not develop. Defendants also claim that Plaintiffs have not alleged that the Products failed to perform as determined by the Limited Warranty. The TAC contains no allegations that the Products failed to enable structures to resist the movement, stress, and loading that result from impact events such as earthquakes and high velocity winds.

11

Plaintiffs allege the inherent defect of premature failure exists even under "normal, designed, and intended use;" "in reasonably foreseeable conditions;" and "when construction professionals follow Simpson's warnings, specifications, and instructions." TAC ¶ 107. But Plaintiffs' allegations are conclusory. The Court agrees with Defendants that Plaintiffs have not alleged that they have satisfied the conditions of the Limited Warranty or that the Products failed to perform as determined by the Limited Warranty. While Plaintiffs argue that these issues touch the merits, Plaintiffs must at least meet their pleading burden.

In addition, Defendants argue that Plaintiffs have not alleged any well-plead allegations that the Limited Warranty promises that the Products will "last the life of a home," that they will not experience corrosion before the end of their "useful life," or that Defendants provide a lifetime warranty. The Limited Warranty also offers no support to Plaintiffs' definitions of "premature" or "failure." Defendants claim that none of these assertions derive from the clear and unambiguous language of the Limited Warranty. In its previous order, the Court found that it was "plainly false" that Defendants lead buyers to expect that the Products would last the entire life of the home. ECF 56 at 13.

Plaintiffs allege that they have a lifetime warranty because the Products are embedded in the concrete foundation and "[a] foundation's useful life is indefinite." *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 923 (Cal. App. Ct. 2001). However, this logic is disconnected from the actual language of the catalogs and the Limited Warranty. The Court finds that the catalogs and the Limited Warranty contradict Plaintiffs' assertion that Defendants provide lifetime warranty or that Products will not corrode. ECF 213-1, Ex. A(1) ("Due to the many variables involved, Simpson Strong-Tie cannot provide estimates of service life of connectors and fasteners."); ECF 279, Ex. G (providing corrosion warnings).

The Court finds that Plaintiffs have failed to adequately plead that Defendants breached the Limited Warranty. Plaintiffs have had four attempts at pleading their breach of express warranty claim. At this time, the Court finds that amendment would be futile. Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleading as to the breach of express warranty claim with prejudice.

### 2. The Court Need Not Decide Whether Plaintiffs are Barred by the Statute of Limitations.

Defendants argue that Plaintiffs Salhotra, Salhotra, Card, Tumelson, and Tumelson failed to bring their breach of express warranty claims within the four-year statute of limitations period. Because Plaintiffs allege that are third-party beneficiaries of their homebuilders' express agreements with Defendants, Plaintiffs are subject to the same statute of limitations as their homebuilders. *Skylawn v. Superior Court*, 88 Cal. App. 3d 316, 319 (Cal. App. Ct. 1979). Commercial Code Section 2725 provides a 4-year statute of limitations for breach of warranty associated with the sale of goods. Cal. Com. Code § 2725; *Mills v. Forestex Co.*, 108 Cal.App.4th 625, 642 (Cal. App. Ct. 2003) (applying Section 2725 statute of limitations to hardboard siding installed in a new home construction).

Plaintiffs counter that they are subject to the future performance exception in Section 2725. Section 2725 provides an exception for the four-year statute of limitation where the warranty ""explicitly extends to future performance of the goods and discovery must await the time of such performance." Cal. Com. Code § 2725.

Because the Court finds that Plaintiffs have not adequately pleaded that Defendants breached the Limited Warranty, the Court need not address whether Plaintiffs Salhotra, Salhotra, Card, Tumelson, and Tumelson are barred from bringing their breach of express warranty claims by the statute of limitations.

### C. UCL Unfair Prong Claim

Defendants assert that Plaintiffs' claim under the unfair prong of the UCL fails because (1) Plaintiffs lack standing under the UCL to bring the claim; and (2) Plaintiffs fail to adequately allege all elements of the UCL unfair prong claim. While Plaintiffs have alleged economic injury sufficient to establish standing for their UCL claim, they have not adequately pled substantial injury, a required element of the UCL unfair prong claim. The Court **GRANTS** Defendants' motion for judgment on the pleading because Plaintiffs have failed to allege a substantial injury as required for their UCL unfair prong claim.

### 1. Plaintiffs Have Alleged an Economic Injury Sufficient to Establish Standing for Their UCL Claim.

"A plaintiff cannot proceed in federal court absent Article III standing, and 'must demonstrate standing for each claim he seeks to press.'" *Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 643 (9th Cir. 2020) (citation omitted); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To establish standing, plaintiffs must show that they have "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

In addition to the Article III constitutional standing requirements, to establish statutory standing for a UCL claim, a plaintiff must have "lost money or property as a result of . . . unfair competition." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019) (quoting Cal. Bus. & Prof. Code § 17204). Thus, "to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition." *Id.* (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (Cal. 2011)). In *Wilson v. Colourpop Cosmetics, LLC*, the court held that "to establish standing for a UCL claim, plaintiffs must plead both an injury in fact and that they have lost money or property as a result of the unfair competition, meaning actual reliance on the unfair competition is necessary for standing." No. 22-CV-05198-TLT, 2023 WL 6787986, at *6 (N.D. Cal. Sept. 7, 2023) (citations omitted); *Kwikset*, 51 Cal. 4th at 326 (finding that the UCL language "as a result of" means "actual reliance").

After review of the parties' arguments, the Court finds that Plaintiffs do not need to show reliance to establish standing for their UCL unfair prong claim. Plaintiffs have established standing for their UCL unfair prong claim based on their allegations that that they purchased defective products which resulted "in economic loss from property damage and diminution in home value." TAC ¶ 158.

//

//

### a. Plaintiffs Do Not Need to Show Proof of Reliance to Establish Standing for Their UCL Unfair Prong Claim.

Defendants first argue that Plaintiffs lack standing because they have failed to show proof of actual reliance as required under the UCL unfair prong. In its previous order, the Court found that "Plaintiffs cannot show reliance and cannot proceed with their claims sounding in fraud" because "Plaintiffs do not plausibly allege that they personally would have seen any disclosures" of the Products' alleged defects. ECF 101 at 17, 23. Citing *Durell v. Sharp Healthcare*, Defendants contend that the requirement of proof of reliance under the unfair prong of the UCL extends beyond claims based on fraud. In *Durell*, plaintiff argued that it need not plead reliance under the unfair prong. 183 Cal. App. 4th 1350, 1366 (Cal. App. Ct. 2010). The Court dismissed plaintiff's unfair prong claim regarding "unfair competition" finding that plaintiff had not alleged that the conduct was "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." *Id.*

Plaintiffs concede that they cannot show actual reliance. Rather, Plaintiffs assert that they do not need to show reliance to establish standing for their UCL unfair prong claim because the predicate unlawful conduct is not based on misrepresentation. Plaintiffs argue that the predicate unlawful conduct is based on inherent defects. "When a plaintiff alleges a different type of unfair competition not based on a misrepresentation, however, courts have dispensed with the actual reliance requirement." *Cappello*, 394 F. Supp. 3d at 1019–20 (citing *Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *9-10 (N.D. Cal. April 1, 2015)). Plaintiffs contend that they pursue claims based on the Products' inherent design, manufacturing, specification, and installation defects—not based on Defendants' alleged misrepresentations.

Plaintiffs cite to two cases to stand for the proposition that they do not need to show actual reliance. In *Cappello*, plaintiffs grounded their argument for UCL standing on a breach of the contractual privacy protections. *Id.* at 1020. Plaintiffs argued that they suffered an economic injury because they did not receive the benefit of the bargain when defendant failed to fulfill its contractual obligations under its Privacy Policy. *Id.* at 1019. The Court found that this constituted "a non-misrepresentation-based argument that does not require a showing of reliance." *Id.* at 1020. So long

15

as plaintiffs adequately alleged that defendant breached the terms of its privacy agreement, Plaintiffs have standing under the UCL. *Id.*

In *McVicar v. Goodman Glob., Inc.*, the court dismissed plaintiff's UCL fraud-based claims but permitted the plaintiff's UCL unfair prong claim to proceed beyond the motion to dismiss stage. *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014). The court found that plaintiff alleged that defendant sold them defective air conditioners, which were warranted to be "free from defects in materials and workmanship," and then refused to honor that warranty. *Id.* The court found that the UCL unfairness claim was tethered to the breach of express warranty claim. *Id.*

The Court agrees with Plaintiffs that that they do not need to show reliance to establish standing for their UCL unfair prong claim if their predicate unlawful conduct is not based on misrepresentations. Further, the Court does not find that *Durell* extended the reliance requirement for UCL fraud claims to UCL unfairness claims not based on fraud. The *Durell* Court's dismissal of the UCL unfairness claim did not have to do with whether plaintiff alleged reliance. *Durell*, 183 Cal. App. 4th at 1366.

### b. Plaintiffs Have Established Economic Injury Based on Purchase of Defective Product.

Plaintiffs argue two non-misrepresentation bases for their economic injury. First, Plaintiffs base their economic injury for UCL unfair prong standing on a breach of express warranty. However, the Court found that Plaintiffs had not adequately pled their breach of express warranty claim. *See supra,* Section II.B.1. Thus, unlike in *Cappello* and *McVicar*, Plaintiffs cannot argue that that they suffered an economic injury because they did not receive the benefit of the bargain when Defendants allegedly breached their express warranty.

Second, Plaintiffs argue that their UCL unfair prong claim is based on a standalone UCL benefit-of-the-bargain economic injury. ECF 288 at 2-3. Plaintiffs argue that they have standing to assert a UCL unfairness claim independent of their warranty claim because they have "suffered economic loss from property damage and diminution in home value." *Id.* at 2 (citing TAC ¶ 158). Plaintiffs cite to *Cappello* for the proposition that benefit of the bargain injury may be found even when there is no breach of express warranty claim. But *Cappello* does not help Plaintiffs in support

16

1   of their standalone UCL benefit of the bargain economic injury. *Cappello* found standing based on
2   a breach of the contractual privacy protections. *Cappello*, 394 F. Supp. 3d at 1020.

3   Plaintiffs then cite to *Backus v. General Mills*. In *Backus*, the court found that plaintiff had standing for his UCL unfair prong claim because he had sufficiently alleged "economic injury by spending money on an illegal product." *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 925 (N.D. Cal. 2015). Plaintiff purchased defendant's baking mixes which contained trans fat. *Id.* at 919. The court held that because plaintiff had alleged that the sale of the products was illegal and he would not have been able to purchase them if defendant had complied with California law, plaintiff had sufficiently alleged an economic injury as a result of unfair competition. *Id.* at 921.

"Plausible allegations that a plaintiff purchased a defective or unsafe product are sufficient to make out an economic injury." *Id.* at 920 (collecting cases). Plaintiffs have alleged that they purchased defective products which resulted "in economic loss from property damage and diminution in home value." Plaintiffs have alleged that the defective Products require "Plaintiffs to pay to repair damage to concrete foundations . . . , to install different, new structural connectors to replace the defective Products, and to repair locations damaged in the process of installing replacement structural connectors before the expiration of the Products' useful life that consumers reasonably expect." TAC ¶ 158. The Court finds that such allegations are sufficient to establish standing for UCL unfair prong claim.

### 2. Plaintiffs Have Failed to Adequately Allege All Elements of the UCL Unfair Prong Claim.

California courts have developed several tests for unfairness within the meaning of UCL. Plaintiffs provide arguments for two of these tests: "(1) the tethering test, which requires that the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions and (2) the balancing test, which examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1045 (N.D. Cal. 2021), *aff'd*, No. 21-16282, 2022 WL 1577802

(9th Cir. May 19, 2022) (citing *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013)) (internal quotations omitted).

With respect to the tethering test, Plaintiffs cannot tether their UCL claim to any "specific constitutional, statutory, or regulatory provisions" because the Court found that Plaintiffs failed to adequately plead their breach of express warranty claim.

Under the balancing test, a business act or practice is "unfair" for purposes of a consumer UCL action where "(1) the consumer injury is substantial, (2) is not outweighed by any countervailing benefits to consumers or to competition, and (3) is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 839 (Cal. App. Ct. 2006). In the previous section, the Court determined that for standing purposes, Plaintiffs had alleged an economic injury based on the purchase of a defective product. Here, the Court looks to whether Plaintiffs have alleged a substantial consumer injury as required for a consumer UCL action.

Defendants argue that Plaintiffs do not adequately plead that they have suffered a substantial injury because they do not allege that the Products have failed to do what they were designed to do. Courts have repeatedly held that "[f]ailure to disclose a defect that might shorten the effective life span of a component part to a consumer product does not constitute a 'substantial injury' under the unfair practices prong of the UCL where the product functions as warranted throughout the term of its Express Warranty." *In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010)*; see also Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1045 (N.D. Cal. 2021), *aff'd*, No. 21-16282, 2022 WL 1577802 (9th Cir. May 19, 2022); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008); *Daugherty*, 144 Cal. App. 4th at 838–39.

Defendants argue that Plaintiffs have not alleged that the Products did not function as warranted by the Limited Warranty. Defendants further argue that Plaintiffs have not pled that the Products in their homes have actually failed to enable their homes to "resist the movement, stress, and loading that results from impact events such as earthquakes and high velocity winds." Rather, Plaintiffs' allegations of grave substantial injury are purely speculative.

18

1       Plaintiffs argue that they have alleged that "Products all have the same specific undisclosed defects and have prematurely failed, will prematurely fail, and/or are reasonably certain to prematurely fail due to their poor design, poor manufacture, poor intended installation, and lack of suitability for their intended purpose," and that the defects cause irreversible corrosion. TAC ¶¶ 139, 166, 163–68. Plaintiffs also allege that the defect will occur within the term of the Limited Warranty—which Plaintiffs assert to be a lifetime term. Plaintiffs contend that these allegations are sufficient to establish that the consumer injury is substantial.

As discussed earlier, the Court agrees with Defendants that Plaintiffs have not alleged that the Products did not function as warranted by the Limited Warranty or that the Limited Warranty is a lifetime warranty. *See supra* Section III.B.1. Plaintiffs' allegations that Products contain a defect that will cause them to prematurely fail are conclusory. The Court finds that Plaintiffs have not adequately pled a substantial consumer injury. Like their breach of express warranty claim, Plaintiffs have had four attempts at pleading their UCL unfair prong claim. At this time, the Court find that further amendment would be futile. Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleading as to the UCL claim with prejudice.

## IV. CONCLUSION

After review and consideration of the motion, the briefings, and all attachments and exhibits thereto, the Court finds that (1) Plaintiffs failed to allege that Defendants breached the Limited Warranty as to their breach of express warranty claim, and (2) Plaintiffs failed to allege a substantial consumer injury as to their UCL unfair prong claim. Further amendment is futile. Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleading as to all claims with prejudice.

//

//

//

The Court **DENIES** Plaintiffs' motion for class certification as moot and **DENIES** Defendants' Daubert motion to exclude the declaration and testimony of Dr. Paul W. Brown on class certification as moot.

This Order resolves ECF 254, 258, and 276.

**IT IS SO ORDERED.**

Dated: November 4, 2024

_____
TRINA L. THOMPSON
United States District Judge